United States District Court
Southern District of Texas
**ENTERED**
June 21, 2024
Nathan Ochsner, Clerk

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| LANDON PERRY, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:23-cv-4441 |
| | § | |
| HALLIBURTON ENERGY | § | |
| SERVICES, INC., | § | |
| | § | |
| Defendant. | | |

## <u>MEMORANDUM AND RECOMMENDATION</u>

Pending before the Court is Plaintiff Landon Perry's Motion to Remand (ECF No. 5).[1]  Based on a review of the motion, the submissions of the parties, and the applicable law, the Court **RECOMMENDS** Plaintiff's Motion be **GRANTED IN PART** and **DENIED IN PART**.[2]

## I.    Background

Plaintiff Landon Perry ("Plaintiff") filed this action on October 20, 2023, in the 127th Judicial District Court of Harris County, Texas, asserting claims against Defendant Halliburton Energy Services, Inc. ("Defendant") for

---

[1] On June 5, 2024, this case was referred to the Undersigned for all purposes pursuant to 28 U.S.C. § 636(b)(1)(A) and (B) and Federal Rule of Civil Procedure 72.  (ECF No. 14).

[2] Pursuant to Local Rule 7.8, the Court finds this matter suitable for disposition without a hearing.  S.D. TEX. LOC. R. 7.8.

1

negligence and failure to pay maintenance and cure,[3] stemming from injuries Plaintiff sustained while working as a Jones Act seaman assigned to the *M/V Stim Star III*. (ECF No. 1-4 at ¶¶ 15–24). Plaintiff argues jurisdiction is proper under the Jones Act, general maritime law, and Texas law. (ECF No. 1-4 at ¶ 5). According to the Petition, "[o]n or about April 22, 2023, Plaintiff was working as a Jones Act seaman, employed by Halliburton aboard the *M/V Stim Star III*." (*Id*. at ¶ 9). Plaintiff claims he was permanently assigned to work on this vessel, which was operated and managed by Defendant and engaged in maritime commerce by transporting chemicals to offshore rigs. (*Id*.). Plaintiff states he was injured after Defendant ordered him to mix chemicals needed for a maritime voyage, which resulted in an explosion causing burns, because Defendant failed to provide proper safety protection and warn him about the dangers associated with the two chemicals. (*Id*. at ¶¶ 11-12).

On November 24, 2023, Defendant filed its notice of removal contending this Court has jurisdiction over this action under Title 43 U.S.C. § 1331, *et seq*., because "it arises under the Outer Continental Shelf Lands Act ('OCSLA'), a law of the United States." (ECF No. 1 at ¶ 6). Defendant avers "this Court has

---

[3] A claim for maintenance and cure is one where the plaintiff is entitled to maintenance, a per diem allowance for food and lodging, and cure, a payment of medical expenses, from his employer for injuries sustained in service of the vessel. *Vaughn v. Am. Com. Barge Line, LLC*, 672 F. Supp. 3d 184, 189 (E.D. La. 2023).

original jurisdiction over matters, such as this one, that arise out of or in connection with operations conducted on the outer Continental Shelf involving exploration, development, or production of the minerals of the subsoil and seabed of the outer Continental Shelf" under 43 U.S.C. § 1349.   (*Id*.). Defendant states that jurisdiction is appropriate pursuant to 28 U.S.C. § 1331 (federal jurisdiction) and 28 U.S.C. § 1333 (admiralty).  (*Id.* at ¶ 7).  Defendant denies Plaintiff is a Jones Act seaman and alleges that such claim was only brought to "frustrate federal jurisdiction."  (*Id*. at ¶ 12).  On December 26, 2023, Plaintiff filed a motion to remand asserting the Court lacks jurisdiction because this is a single Jones Act action for negligence and maintenance and cure and is not removable to federal court.  (ECF No. 5 at 8).

## II.   Legal Standards

### A.   Remand

Federal courts are courts of limited jurisdiction "possessing 'only the power authorized by Constitution and statute.'"  *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (quoting *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994)).   A defendant may only remove a case over which the district court has original jurisdiction.   28 U.S.C. § 1441(a); *Halmekangas v. State Farm Fire & Cas. Co.*, 603 F.3d 290, 295 (5th Cir. 2010) ("Where . . . the plaintiff files an action in state court with no federal question or complete

diversity, the original jurisdiction necessary for removal under § 1441 does not exist.").

On a motion to remand, the removing party bears the burden of establishing jurisdiction exists. *Shearer v. Sw. Serv. Life Ins. Co.*, 516 F.3d 276, 278 (5th Cir. 2008). In assessing whether removal is appropriate, courts are guided by the principle that "removal statute[s] should be strictly construed in favor of remand." *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002). The Court considers the claims in the state court petition as they existed at the time of removal to determine whether jurisdiction is present. *Louisiana v. Am. Nat'l Prop. Cas. Co.*, 746 F.3d 633, 636-37 (5th Cir. 2014). "When evaluating a motion to remand, all factual allegations are considered in the light most favorable to the plaintiff, and any contested fact issues are resolved in the plaintiff's favor." *Santee v. Oceaneering Int'l, Inc.*, No. 4:21-cv-3489, 2022 WL 20742519, at *1 (S.D. Tex. Jan. 27, 2022), *aff'd* 95 F.4th 917 (5th Cir. 2024) (citing *Guillory v. PPG Indus., Inc.*, 434 F.3d 303, 308 (5th Cir. 2005)). Ultimately, remand is appropriate if the Court lacks jurisdiction and "doubts regarding whether removal jurisdiction is proper should be resolved against federal jurisdiction." *Acuna v. Brown & Root Inc.*, 200 F.3d 335, 339 (5th Cir. 2000) (citing *Willy v. Coastal Corp.*, 855 F.2d 1160, 1164 (5th Cir. 1988)).

**B.     Jones Act**

A Jones Act case states that a "seaman" may bring a cause of action for negligence against his employer.  *Santee v. Oceaneering Int'l, Inc.*, 95 F.4th 917, 925 (5th Cir. 2024) (citing 46 U.S.C. § 30104)).  Only seamen can bring a Jones Act claim.  *Id.*  Jones Act cases are brought in state court and are not subject to removal to federal court.  *Hufnagel v. Omega Serv. Indus., Inc.*, 182 F.3d 340, 345 (5th Cir. 1999) (citing *Lewis v. Lewis & Clark Marine, Inc.*, 531 U.S. 438, 455 (2001)); *Santee*, 95 F.4th at 925.  However, where a Jones Act claim is "'fraudulently pleaded', or pleaded where there is a strong likelihood that the plaintiff will not be able to prove seaman status, [it] may be removed if there is an independent basis of federal jurisdiction." *Santee*, 95 F.4th at 925 (citing *Hufnagel*, 182 F.3d at 345).  Remand may be denied only where, resolving all factual disputes and legal ambiguities in plaintiff's favor, the court determines that the plaintiff has no possibility of establishing a Jones Act claim on the merits.  *Id.*; *see Hufnagel*, 182 F.3d at 346.

**C.     OCSLA**

Pursuant to the Outer Continental Shelf Lands Acts ("OCSLA"):

. . . the district courts of the United States shall have jurisdiction of cases and controversies **arising out of, or in connection with** . . . **any operation** conducted on the outer Continental Shelf which involves exploration, development, or production of the minerals, of the subsoil and seabed of the outer Continental Shelf, or which involves rights to such minerals . . . .

5

*In re Deepwater Horizon*, 745 F.3d 157, 163 (5th Cir. 2014) (citing OCSLA § 23(b)(1) (emphasis added)); *see* 43 U.S.C. § 1349(b)(1).  "The Fifth Circuit has interpreted this language as straightforward and broad."  *In re Deepwater Horizon*, 745 F.3d at 163 (citing *Tennessee Gas Pipeline v. Houston Cas. Ins. Co.*, 87 F.3d 150, 154 (5th Cir. 1996); *EP Operating Ltd. P'ship v. Placid Oil Co.*, 26 F.3d 563, 569 (5th Cir. 1994) ("[A] broad reading of the jurisdictional grant of section 1349 is supported by the expansive substantive reach of the OCSLA.")).  OCSLA jurisdiction was "intended to govern the full range of potential legal problems that might arise in connection with operations on the Outer Continental Shelf."  *Laredo Offshore Const., Inc. v. Hunt Oil Co.*, 754 F.2d 1223, 1228 (5th Cir. 1985) (citing *Rodrigue v. Aetna Cas. & Sur. Co.*, 395 U.S. 352, 357 (1969)).  Further, as this statute invests the district courts with jurisdiction, a plaintiff need not expressly invoke OCSLA for it to apply.  *In re Deepwater Horizon*, 745 F.3d at 163 (citing *Barker v. Hercules Offshore Inc.*, 713 F.3d 208, 213 (5th Cir. 2013)); *see also Mannifield v. Talos Energy LLC.*, No. 4:22-cv-1831, 2023 WL 1965996, at *2 (S.D. Tex. Feb. 13, 2023).  Jurisdiction is evaluated using a two-prong test based on "whether (1) the activities that caused the injury constituted an 'operation' 'conducted on the outer Continental Shelf' that involved the exploration and production of minerals, and (2) the case 'arises out of, or in connection with' the operation."

*In re Deepwater Horizon*, 745 F.3d at 163 (citing *EP Operating Ltd. P'ship*, 26 F.3d at 568–69).

## III.   Discussion

Plaintiff contends the entire case should be remanded because this is a single Jones Act claim, is not removable, and OCSLA provides no basis for federal jurisdiction.  (ECF No. 5 at 8–9).  Plaintiff argues there is no OCSLA jurisdiction because "(1) . . . [Plaintiff] is a Jones Act seaman and he filed in state court, rendering this action *per se* nonremovable even were OCSLA otherwise to apply; (2) the injury-causing activities did not arise from an operation on the [Outer Continental Shelf ('OCS')]; and (3) there is no 'but-for' connection or causative nexus between an OCS operation and [Plaintiff's] injuries."  (*Id.* at 16).

Conversely, Defendant opposes remand in its entirety and argues this Court has subject matter jurisdiction under OCSLA and Plaintiff is not a Jones Act seaman and has fraudulently pled seaman status.  (ECF No. 7 at 6).  Defendant asserts jurisdiction is proper under the broad scope of OCSLA's jurisdictional provision because this is a claim that arises out of, or in connection, with any operation on the OCS involving exploration, development or production of oil and gas.  (*Id.* at 8-9).

Alternatively, Defendant argues Plaintiff's maintenance and cure claims, alleged under general maritime law, should be severed from the Jones

7

Act negligence claim and not remanded because this is a "hybrid" case involving properly removable claims under OCSLA.  (*Id*. at 6).

As Defendant bears the burden of establishing facts necessary to show federal subject matter jurisdiction when faced with a motion to remand, the Court first considers whether jurisdiction exists.  *See Ashcraft v. Cantium, LLC*, No. 22-cv-329, 2022 WL 4581053, at *2 (M.D. La. Sept. 7, 2022), *report and recommendation adopted*, 2022 WL 4543187 (M.D. La. Sept. 28, 2022) (citing *Allen v. R&H Oil & Gas Co.*, 63 F.3d 1326, 1335 (5th Cir. 1995)).

## A.    OCSLA Jurisdiction

Defendant asserts this Court has subject-matter jurisdiction under the broad jurisdictional grant of OCSLA.  (ECF No. 7 at 8–9).  Plaintiff claims this is a single Jones Act claim and thus removal is barred.  (ECF Nos. 5, 10).  Plaintiff relies on *Sanchez v. Enterprise Offshore Drilling LLC*, a case where a plaintiff, who was injured while on the OCS, filed a Jones Act negligence and unseaworthiness claim.  (ECF No. 5 at 17); *see* 376 F. Supp. 3d 726, 728 (S.D. Tex. 2019).  In that case, removal was premised on OCSLA jurisdiction with respect to Defendant Enterprise Offshore Drilling LLC. ("Enterprise").  (Cause No. 4:19-cv-00110, ECF No. 1 at 2-3).  The *Sanchez* plaintiff later moved to dismiss Enterprise, which was granted.  (*Id*. at ECF Nos. 8, 11).  In its response, the remaining *Sanchez* defendant primarily focused on whether the *Sanchez* plaintiff was a Jones Act seaman, but also alleged the *Sanchez*

plaintiff dismissed Enterprise to frustrate the court's jurisdiction since "it was Enterprise's rig that provided the OCS situs." (*Id.* at ECF No. 14 at 17).  The *Sanchez* defendant argued "[the *Sanchez* plaintiff's] dismissal of Enterprise [], whose rig provided the OCS situs, is an apparent attempt to manipulate the forum and improperly divest the Court of its subject-matter jurisdiction." (*Id.*). As a result, while the *Sanchez* defendant mentioned OCSLA jurisdiction should still exist because jurisdiction is determined at the time of removal, the *Sanchez* defendant did not argue OCSLA continued to apply to itself under the *Deepwater Horizon* test – thus distinguishing *Sanchez* from the instant case. (*Id.*).

As previously stated, a Jones Act claim is not removable and subject to remand absent evidence where it is fraudulently pleaded.  *See Santee*, 95 F.4th at 925; *McDonald v. Enermech Mech. Serv's, Inc.*, No. 4:23-cv-0126, 2023 WL 4109786, at *2 (S.D. Tex. May 20, 2023), *report and recommendation adopted*, 2023 WL 4110090 (S.D. Tex. June 20, 2023).  However, a nonremovable Jones Act claim may be removed to federal court if the action includes a claim that would have been removable absent the nonremovable claim.  *See McDonald*, 2023 4109786, at *2 (citing Title 28 U.S.C. § 1441; *Landerman v. Tarpon Operating & Dev., L.L.C.*, 19 F. Supp. 3d 678, 684 (E.D. La. 2014)).

Plaintiff's Petition states "the claims asserted arise under the Jones Act, general maritime law, and Texas law." (ECF No. 1-4 at ¶5).  "Claims for

unseaworthiness and maintenance and cure are traditional admiralty remedies governed by general maritime law." *McDonald*, 2023 WL 4109786, at *2 (citing *Barker*, 713 F.3d at 220). While federal courts "have original jurisdiction over maritime claims under 28 U.S.C. § 1333, they do not have removal jurisdiction over maritime claims which are brought in state court." *Barker*, 713 F. 3d at 219. "[S]uch lawsuits are exempt from removal by the 'savings-to-suitors' clause of the jurisdictional statute governing admiralty claims . . ., and therefore may only be removed when original jurisdiction is based on another jurisdictional grant." *Id.* OCSLA provides such a basis for federal jurisdiction other than admiralty. *Id.* at 220 (citing *Morris v. T E Marine Corp.*, 344 F.3d 439, 444 (5th Cir. 2003); *Dahlen v. Gulf Crews, Inc.*, 281 F.3d 487, 492 (5th Cir. 2002)). Thus, "application of maritime law as the rule of decision does not displace OCSLA's grant of federal question jurisdiction; 28 U.S.C. § 1331 provides original federal question jurisdiction over this [OCSLA] claim because 'it aris[es] under the . . . laws of the United States.'" *Id.* at 221.

Accordingly, Plaintiff's argument that this case is not removable *per se* because it is a single Jones Act case fails. Plaintiff's Petition includes maritime claims for maintenance and cure,[4] which are subject to removal where an

---

[4] "'Maintenance and cure is a contractual form of compensation afforded by the general maritime law to seamen who fall ill or are injured while in the service of a vessel.'" *Meche v.*

independent basis for federal jurisdiction exists, such as the OCSLA.

The Court next evaluates whether the broad grant of OCSLA jurisdiction applies in this case under the two-prong test established in *In re Deepwater Horizon*. *See* 745 F.3d at 163.

### 1. Situs Requirement

The first prong asks whether the activities that caused the injury constituted an "operation" "conducted on the outer Continental Shelf" that involved exploration and production of minerals. *See id.* Plaintiff claims this first prong requires that some physical act, involving the exploration, development, or production of minerals, be conducted on the OCS – "not on land or in territorial waters." (ECF No. 5 at 18). Plaintiff alleges this prong "is effectively a situs requirement." (*Id.*). He argues jurisdiction fails because no physical act which injured Plaintiff took place on the OCS. (*Id.*). He states he was injured by an explosion that occurred while mixing two chemicals on a dock near the vessel, not on the OCS. (*Id.*). He further claims the injurious acts do not qualify as an "operation" because "they were not part of exploration, development, or production of minerals on the OCS." (*Id.* at 19). Plaintiff states he was mixing chemicals to deliver to a customer, not engaged in the

---

*Doucet*, 777 F.3d 237, 244 (5th Cir.)*, cert. denied*, 577 U.S. 823 (2015) (quoting *Jauch v. Nautical Servs., Inc.*, 470 F.3d 207, 212 (5th Cir. 2006) (citing *McCorpen v. Cent. Gulf S.S. Corp.*, 396 F.2d 547, 548 (5th Cir. 1968))).

search or discovery of minerals, nor has he ever been involved in detecting minerals while working for Defendant.  (*Id.*).  He also claims that his assignment on the vessel had "nothing to do with any drilling activities that may have been conducted by their customers." (*Id.* at 20).  He claims he "was a Jones Act seaman engaged in maritime activities – not in any OCS operation." (*Id.* at 21).

As an initial matter, there is no situs requirement in determining jurisdiction under OCSLA.  *See Hammer v. Phi*, No. 6:16-cv-1048, 2016 WL 7029354, at *6 (W.D. La. Oct. 14, 2016), *report and recommendation adopted*, 2016 WL 7031774 (W.D. La. Dec. 1, 2016) (quoting *In re BP P.L.C. Sec. Litig.*, No. 4:12-cv-1836, 2012 WL 4739673, at *5 (S.D. Tex. Oct. 1, 2012) ("Plaintiff's argument ignores or minimizes the actual language of section 1349(b)(1), which does not contain a situs requirement.  The fact that section 1333 contains situs requirements only underscores that, if Congress meant for section 1349(b)(1) to contain a situs requirement, it knew how to include it.")); *see In re Deepwater Horizon*, 745 F.3d at 164; *Sam v. Laborde Marine*, Civil Action No. 4:19-cv-4041, 2020 WL 59633, at *2 (S.D. Tex. Jan. 6, 2020) ("[T]he Fifth Circuit has explicitly rejected the argument that OCSLA jurisdiction includes a situs requirement.").  Thus, the location where Plaintiff sustained his injuries does not determine whether OCSLA jurisdiction applies.  OCSLA jurisdiction requires only a "but-for" connection, applying to cases not only

arising "geographically on the OCS but also over cases arising 'in connection with' operations thereon." *Sam*, 2020 WL 59633, at *2 (citing 43 U.S.C. § 1349(b)(1)).

###     2.     Activities Requirement

According to the record, there is no dispute that Plaintiff is employed by Defendant as a "Svc Operator I – Sand Control" whose responsibilities included mixing, loading and transferring chemicals while onboard the vessel to deliver them to rigs.  (ECF Nos. 5-2, 7-1, and 7-2).  Plaintiff states he would travel the world to deliver chemicals to rigs, would normally mix the chemicals onboard the vessel, but at the time of the injury, he was "assigned to go on the dock to mix chemicals, because the tank was double-stacked."  (ECF No. 5-2 at ¶ 4). Plaintiff's job description states that he is to:

> perform[] or assist[] in all phases of the rigging up and down of Sand Control service line equipment on work locations for the purpose of providing Sand Control pumping services at the well site.  Prepare[] materials and equipment (rig up) on job site (blending materials, packaging to ship to location).  Rigs up on location and prepares equipment for installation and service.

(ECF No. 7-2).

Defendant submits an affidavit from a regional manager ("Manager") who is familiar with Plaintiff's duties and responsibilities including the operation he was carrying out on the date of the incident.  (ECF No. 7-1 at ¶¶ 1-2).  The  Manager confirmed Plaintiff's duties as a Service Operation I – Sand

Control, which include "mixing fluids, including acid and additive chemicals for use in hydraulic fracturing, i.e., fracking, operations, and assisting with the pumping of those fluids downhole." (*Id.* at ¶ 4). According to Manager:

> Hydraulic fracturing is a process by which liquids, usually consisting of water, sand, acid, and chemicals are pumped downhole at high pressure to help dissolve and open fissures in underground rock formations. This helps with the capture of oil and gas from beneath the surface. It is a commonly used method in the exploration, production, and development of oil and gas.

(*Id.* at ¶ 5). At the time of the incident, Plaintiff was mixing chemicals to be used in fracking operations "at an active offshore rig owned and operated by Hess Corporation, which had contracted with [Defendant] for fracking services." (*Id.* at ¶ 6). "The offshore rig was located approximately 125 miles off the coast of Louisiana, in the Gulf of Mexico, on the outer Continental Shelf." (*Id.*). "The purpose of these operations was the exploration, production, and development of oil and gas from the outer Continental Shelf." (*Id.*). To get the fracking equipment and fracking fluid to the offshore rig, Defendant contracted with Edison Chouest Offshore, LLC, to use a vessel, the *Stim Star III* to deliver them. (*Id.* at ¶ 9).

Plaintiff claims neither he nor his vessel was involved in any OCS activities and that there "was no operation involving any exploration, development, or production of minerals taking place at the time of the incident or that in any way contributed to [his] injuries. The physical acts and resulting

14

injury to [Plaintiff] took place far away from the OCS.  This precludes OSCLA jurisdiction." (ECF No. 5 at 21).  However, under a plain reading of the statute, there is no such textual requirement "that an [OCS] 'operation' cause the injury at issue."  *See* Brandon Duke, *Inland Litigation Under the Outer Continental Shelf Lands Act*, 19 TEX. J. OIL GAS & ENERGY 40, 53-55 (2024) (citing *EPL Oil & Gas, LLC v. Trimont Energy (NOW), LLC*, 640 F. Supp. 3d 687, 693 (E.D. Tex. 2022); *Ross v. Blake*, 578 U.S. 632, 638 (2016) ("Statutory interpretation, as we always say, begins with the text.")).   "Rather, the case or controversy must only arise out of or in connection with any operation conducted on the OCS, which involves exploration or production of the minerals . . . ."  *Hammer*, 2016 WL 7029354 at *7 (internal quotations omitted).  "There is no indication of Congressional intent that the 'operation' be restricted to the activities of the tortfeasor that caused the accident."  *Id.*

In evaluating the first prong of the *In re Deepwater Horizon* test, the Court "should determine 'whether the underlying activity' in this case constitutes an 'operation' conducted on the Outer Continental Shelf."  Duke, *Inland Litigation Under the Outer Continental Shelf Lands Act*, *supra*, at 55 (citing *EP Operating Ltd. P'ship*, 26 F.3d at 569).  "Operation" is not defined in the statute, but is a broad term that 'does not stand alone.'"  *Id.* (citing *Amoco Prod. Co. v. Sea Robin Pipeline Co.*, 844 F.2d 1202, 1207 (5th Cir. 1988)).  As stated by the court in *EP Operating Ltd. P'ship*,

15

> We find this broad view of the term "operation" amply supported
> by the statute.  That term does not stand alone, but rather it is
> used in conjunction with terms "exploration," "development," and
> "production."  *Sea Robin*, 844 F.2d at 1207.  Those terms are
> defined broadly in the statutes[5] to encompass the full range of oil
> and gas activity from locating mineral sources through the
> construction, operation, servicing, and maintenance of facilities to
> produce those resources.  We find that the term "operation" should
> be read equally as broadly.

26 F.3d at 56. Under this broad interpretation of "operation," numerous courts

have found OCSLA jurisdiction in commercial disputes where the activity

causing the injury occurred inland.  *See EPL Oil & Gas, LLC*, 640 F. Supp. 3d

at 693–94 (citing *Sea Robin*, 844 F.2d at 1204 (upholding OCSLA jurisdiction

in breach of contract dispute regarding the purchase of natural gas produced

on the OCS); *United Offshore v. S. Deepwater Pipeline Co.*, 899 F.2d 405, 407

(5th Cir. 1990) (upholding OCSLA jurisdiction in breach of contract dispute

regarding the management of on-OCS assets); *Cox Operating, L.L.C. v.

Expeditors & Prod. Servs. Co.*, No. 21-cv-725, 2021 WL 2853060, at *2–4 (E.D.

La. July 8, 2021) (upholding OCSLA jurisdiction in breach of contract dispute

relating to liens filed against property on the OCS)).  All these cases involve

inland injurious activities directly related to activities on the OCS.  "Further,

the Court is unpersuaded that there is a difference between federal court

jurisdiction over tort claims and contract claims under OCSLA."  *Plains Gas*

---

[5] Citing 43 U.S.C. § 1331, which provides definitions of "exploration," "development," and "production."

*Sols, LLC v. Tenn. Gas Pipeline Co., LLC*, 46 F. Supp. 3d 701, 704 (S.D. Tex. 2014).  "The statutory language draws no distinction between the types of 'cases and controversies' it governs."  *Id*.

In this case, the mixing of the fracking chemicals for use on an OCS rig, which is part of Plaintiff's job duties, is the underlying injurious activity and is directly related and integral to the hydraulic fracturing process on the OCS rig.  Defendant contracted with Hess Operations ("Hess") to provide fracking services, including fracking fluid, to use on Hess's offshore rig on the OCS to capture oil and gas from beneath the surface.  After mixing, the chemicals would then have been transferred by Defendant's contracted vessel to the OCS Hess rig for use.  Considering OCSLA's purpose to govern the full range of potential legal problems that might arise in connection with operations on the OCS, the broad definition of "operation," the lack of a situs requirement, and prior case law upholding OCSLA jurisdiction for injuries occurring inland, it is clear that mixing fracking chemicals for use on an OCS rig constitutes an integral part of an operation that involves the exploration, development, and production of mineral sources.  Thus, the first prong of the test is satisfied.

### 3.    "But-For" Causation

Next, with the relevant operation identified, the Court needs to determine whether Plaintiff's injuries "arose out of" or are "in connection with" the operation.  Duke, *Inland Litigation Under the Outer Continental Shelf*

*Lands Act*, *supra*, at 56 (citing 43 U.S.C. § 1349(b)(1)). The Fifth Circuit interprets this jurisdictional grant broadly, using a "but-for" test to determine if a cause of action arises out of or in connection to the operation. *See Ronquille v. Aminoil Inc.*, No. 14-cv-164, 2014 WL 4387337, at *2 (E.D. La. Sept. 4, 2014) (citing *In re Deepwater Horizon*, 745 F.3d at 163–64)).

Plaintiff asserts that, if an OCS operation is found in the first prong, there is no "but-for" causation or causative nexus between an OCS operation and his injuries. (ECF No. 5 at 21). He claims there is no causal link between an OCS operation and his injuries sustained on land, even if the chemicals he was mixing were going to an OCS facility. (*Id*. at 23). Plaintiff further alleges that, because his work involved deliveries to multiple non-OCS sites, he would have been required to mix chemicals on the date of the incident without regard to any OCS operations. (*Id*.). Thus, there is no possibility of a but-for connection or causative nexus between the OCS operations and his injuries. (*Id*.).

In support of his argument, Plaintiff cites to *Landry v. Island Operating Co., Inc.*, which found that "proximity to the actual extractive operations is paramount" in the but-for test. No. 09-cv-1051, 2009 WL 3241560, at *5 (W.D. La. Sept. 30, 2009). However, this case was prior to *In re Deepwater Horizon*, where the Fifth Circuit explicitly disclaimed the "mere connection" argument -- where one could claim the connection between the OCS and the cause of

action was too remote to establish federal jurisdiction.  *See In re Deepwater Horizon*, 745 F.3d at 163.  "Even though one can hypothesize a 'mere connection' between the cause of action and the OCS operation too remote to establish federal jurisdiction, [the Fifth Circuit] deem[ed] § 1349 to require only a 'but-for' connection."  *Id.* (citing *Hufnagel*, 182 F.3d at 350).

At the time of his injury, Plaintiff was mixing chemicals, pursuant to a contract between Defendant and Hess, specifically to be used on fracking operations on the Hess rig on the OCS.  (ECF No. 7-1 at ¶¶ 6-7).  If not for the Hess OCS operation, Plaintiff, at that time, would not have been mixing chemicals to be used in the fracking operation on the OCS.  As a result, there would have been no injury "but-for" Defendant's contract with Hess to send fracking equipment and fluid to be used in an OCS rig.  *See id.*; *In re Deepwater Horizon*,745 F.3d at 163.  The only reasonable inference is that Plaintiff's injuries are related to an operation conducted on the OCS which involved the exploration for and development of minerals, and there would have been no accident causing his injuries "but-for" Defendant contracting with the Hess OCS rig to send chemicals in furtherance of such exploration and development of minerals.  *See Ashcraft*, 2022 WL 4581053, at *3; *see also Ronquille*, 2014 WL 4387337, at *2 (upholding OCSLA jurisdiction where a plaintiff, who was injured by exposure to asbestos, was not employed and working on the OCS itself, but "his work on and in support of the OCS structures and materials

19

coming into the Venice land base provides a sufficient connection to the operations on the OCS"). Accordingly, the second prong for OSCLA jurisdiction is satisfied as Plaintiff's claims arise out of or are in connection with the OCS fracking operation.

Based on the record, Defendant has met its burden of establishing that Plaintiff's maritime claims for maintenance and cure are governed by OSCLA and that this Court has jurisdiction under OSCLA. *See Ashcraft*, 2022 WL 4581053, at *3. As federal jurisdiction has been established under OSCLA, the Court need not determine Defendant's alternative claims for jurisdiction. *See id*. Thus, the Court **RECOMMENDS** Plaintiff's Motion to Remand be **DENIED** with respect to his maritime claims for maintenance and cure.

### B.    Jones Act Claim

Jones Act claims, which provide a negligence cause of action for seamen who are injured during their employment, are not removable to federal court. *See Ashcraft*, 2022 WL 4581053, at *6 (M.D. La. Sept. 7, 2022) (citing *Pate v. Standard Dredging Corp.*, 193 F.2d 498, 501 (5th Cir. 1952); 28 U.S.C. § 1445(a); *Lewis v. Lewis & Clark Marine, Inc.*, 531 U.S. 438, 455 (2001)).

Plaintiff claims he is a seaman and his Jones Act claim is not removable to federal court. (ECF No. 5-1 at ¶ 6). Defendant claims Plaintiff's Jones Act claim fails to meet the requirements of seaman status and "are brought only to frustrate federal jurisdiction." (ECF No. 1 at ¶ 12).

20

Courts may exercise jurisdiction over Jones Act claims where they are "'fraudulently pleaded to prevent removal.'" *Ashcraft*, 2022 WL 4581053, at *6 (quoting *Lackey v. Atlantic Richfield Co.*, 990 F.2d 202, 207 (5th Cir. 1993)) (citing *Hufnagel*, 182 F.3d at 346 (affirming denial of motion to remand on basis that fraudulently pled Jones Act claim did not preclude removal and the Court had federal questions jurisdiction in light of an OCSLA claim.)).

> The removal statute allows for removal of an 'entire action' where it includes '(A) a claim arising under the Constitution, law, or treaties of the United States (within the meaning of [28 U.S.C. § 1331], and (B) a claim not within the original or Supplemental jurisdiction of the district court, or a claim that has been made nonremovable by statute.'

*Id*. (quoting 28 U.S.C. § 1441(c)(1)). However, upon removal of such claim, the district court "'shall' sever and remand the claims in the latter category back to the State court from which the action was removed." *Id*. (quoting 28 U.S.C. § 1441(c)(2)); *see McDonald*, 2023 WL 4109786, at *4. Where an action involves an OCSLA and Jones Act claim, it is a "hybrid" case that requires severance and remand of the Jones Act claim. *Ashcraft*, 2022 WL 4581053, at *6 (citing *Hsieh v. Apache Deepwater, LLC*, No. 19-408, 2019 WL 9899512, at *4 (M.D. La. Aug. 23, 2019) (noting that where the defendant met its burden of showing federal jurisdiction under OCSLA, and that removal was proper in a "hybrid" case involving OCSLA claims and Jones Act claims, the Court was required to sever and remand the Jones Act claims to State court under 28 U.S.C. §

1441(c)(2)).   In such case, it is not necessary to evaluate the merits of a plaintiff's Jones Act claim.   *McDonald*, 2023 WL 4109786, at *4 (citing *Landerman*, 29 F. Supp. 3d at 678) (noting that the "rationale for the rule allowing a court to pierce the pleadings to determine whether a nonremovable claim is fraudulently pleaded is that baseless claims should not be allowed to frustrate federal jurisdiction").   Here, federal jurisdiction has not been defeated because OCSLA provides for federal subject matter jurisdiction.   Thus, the Court declines to "conduct a summary inquiry into the viability of the Jones Act claim because it is unnecessary for the exercise of federal jurisdiction in this case."   *Id.* (citing *Ashcraft*, 2022 WL 4581053, at *6).   As such, the Court finds this is a "hybrid" case and the Court is required to sever and remand the Jones Act claim to state court under 28 U.S.C. § 1442(c)(2).   *See Ashcraft*, 2022 WL 4581053, at *6.

To the extent Plaintiff claims this entire action must be tried to a single jury, Plaintiff "could waive his right to remand the Jones Act claim and it could be heard by the same jury that will hear the OCSLA and any other remaining claims."   *McDonald*, 2023 WL 4109786, at *5.   Nevertheless, Plaintiff is permitted to seek and has sought remand of his Jones Act claim.   *See id*.   Accordingly, the Court **RECOMMENDS** that Plaintiff's Jones Act claim be **SEVERED** from this action and **REMANDED** to state court.   *Id*.

22

## IV.   Conclusion

Based on the foregoing, the Court **RECOMMENDS** Plaintiff's Motion (ECF No. 5) be **GRANTED IN PART** and **DENIED IN PART**.  Specifically, the Court **RECOMMENDS** that Plaintiff's Motion be **GRANTED** to the extent that his Jones Act claim should be severed from this case and remanded to the state court from which it was removed.   Further, the Court **RECOMMENDS** that Plaintiff's Motion be **DENIED** with respect to his maritime claims for maintenance and cure, and any other requested relief, as Defendant has met its burden to establish the existence of federal subject matter jurisdiction under OCSLA.

The Clerk shall send copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections thereto pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002-13.  Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

**SIGNED** in Houston, Texas on June 21, 2024.

Richard W. Bennett
United States Magistrate Judge

23