# Exhibit 5

Case 4:23-cv-04441   Document 30-5   Filed on 02/07/25 in TXSD   Page 2 of 15

CV59261

Filed 5/8/2024 2:02 PM
Alex Archuleta
District Clerk
Midland County, Texas
/s/ Roxanna Galindo

CAUSE NO CV59261

| | | |
|---|---|---|
| JAMES STEVERDING, | § | IN THE DISTRICT COURT |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | OF MIDLAND COUNTY, TEXAS |
| | § | |
| GEO DRILLING FLUIDS, INC. | § | |
| AND ERNEST SERENA, | § | |
| | § | |
| *Defendants,* | § | 142ND JUDICIAL DISTRICT |

### DEFENDANT'S MOTION TO COMPEL DISCOVERY FROM PLAINTIFF

Plaintiff and Defendant Serena were involved in a car accident in Midland, Texas. Plaintiff's airbags did not deploy. Plaintiff's vehicle only sustained damage on the right side. Neither Plaintiff nor Mr. Serena reported any injuries at the scene.

Nonetheless, Plaintiff has since accumulated more than $350,000 in medical bills from seventeen different medical providers to date, and this number continues to grow. The providers with the largest bills are working under referral and funding agreements with interested third parties with Plaintiff's counsel as an intermediary.

Plaintiff also alleges, through his retained life care planner and economist, that his future medical needs will total more than $284,000, and the life care planner is preparing to increase that figure.

Additionally, Plaintiff claims the purported injuries allegedly related to the incident will prevent him from ever again returning to work. Accordingly, Plaintiff alleges, through his retained economist, that his lost earning capacity amounts to more than $2 million.

Despite these claims, Plaintiff has refused to produce documents and information necessary

to defend against these damages numbers. As a result, Defendant Geo Drilling Fluids, Inc. must now file this motion to compel seeking the following categories of materials, as discussed in detail below:

- Documents and communications reflecting the identity of any person or entity providing financing, funding, or factoring for Plaintiff's medical treatment in this case.

- The contracts and agreements with any such persons or entities.

- Records of payments made by any such persons or entities relating to Plaintiff's medical treatment in this case.

- The full case files of Plaintiff's retained experts.

## I.     LEGAL STANDARD

Discovery allows the parties to obtain full knowledge of the issues and facts before trial, with the goal being "to seek the truth, so that disputes are decided by what the facts reveal, not by what facts are concealed." *In re Colonial Pipeline Co.*, 968 S.W.2d 938, 941 (Tex. 1989)(citations omitted). Generally, "a party may obtain discovery regarding any matter that is not privileged and is relevant to the subject matter of the pending action, whether it relates to the claim or defense of the party seeking discovery or the claim or defense of any other party." Tex. R. Civ. P. 192.3(a).

A party is required to produce documents within its "possession, custody, or control." Tex. R. Civ. P. 192.3(b). Possession, custody, or control of an item means "that the person either has physical possession of the item or has a right to possession of the item that is equal or superior to the person who has physical possession of the item." Tex. R. Civ. P. 192.7(a). Notably, possession, custody, and control "includes not only actual physical possession, but constructive possession, and the right to obtain possession from a third party, such as an agent or representative... [it is] a legal right based upon the relationship between the party from whom a document is sought and the

2

person who has actual possession." *GTE Commc'ns Sys. Corp. v. Tanner*, 856 S.W.2d 725, 729 (Tex. 1993) (internal citations omitted); *see also Jurgens v. Martin*, 631 S.W.3d 385, 409 (Tex. App. 2021).

## II.   ARGUMENT AND AUTHORITIES

Defendant served interrogatories on Plaintiff on April 5, 2023, and requests for production on April 5, 2023, February 2, 2024, and February 7, 2024. Ex. I. Plaintiff has failed or refused to produce numerous documents and items of information as discussed below:

**A. Documents reflecting the compensation scheme concocted to incentivize Plaintiff's medical providers to grossly inflate his medical costs.**

**1. Plaintiff was steered to medical providers who charged exorbitant amounts to drive up Plaintiff's damages numbers.**

Most of Plaintiff's medical costs come from charges he accrued with medical providers to which he was referred by Plaintiff's counsel or their agent, Ace Physicians Management ("Ace Physicians").[1] Exs. A, pp. 55, 56, 63, and 69; C, pp. 10-16; E, pp. 7-9; and, Ex. F, pp. 28, 64, and 71. The two conspired to send Plaintiff to a host of medical providers that would participate in their scheme by charging Plaintiff outrageous rates under contractual lien agreements, letters of protection, and medical funding, factoring, and financing agreements. *Id.*

Plaintiff and Plaintiff's counsel refer to these medical providers as non-retained experts or "treating physicians" to try to pass them off as unbiased doctors with no interest in this case other than Plaintiff's medical care. Ex. B, pp. 5-7. In reality, Plaintiff's counsel, the medical providers, and the funding companies are part of a scheme to perform unnecessary medical procedures at

---

[1] Ace Physicians Management also holds itself out as Ace Physicians Services. *See* https://www.acephysicianservices.com/, last visited on April 30, 2024.

3

outrageous prices to inflate the Plaintiff's medical costs. The higher the medical costs, after all, the more they all stand to recover.

For example, Dr. Francisco Batlle performed Plaintiff's lower back surgery at Crescent Medical Center ("Crescent"), which charged more than 22 times their Minimum Negotiated Rate, 16 times their usual cash charge, 13 times their Maximum Negotiated Rate, and almost 5 times their standard gross charge for the surgery. Exs. C and D.

Crescent has produced a small handful of documents indicating that Plaintiff's medical treatment is being financed by medical funding companies including, but not necessarily limited to, Ace Physicians and Argenta Legal Funding.

---

29. Please fill in the following blanks with the requested information concerning medical treatment provided to JAMES STEVERDING FROM 06/03/1978 TO THE PRESENT:

    A. TOTAL AMOUNT FOR ALL MEDICAL BILLED:
       Answer: $160,219.44
    B. TOTAL AMOUNT PAID BY PRIVATE INSURER:
       Answer: $0.00
    C. TOTAL AMOUNT PAID BY MEDICARE/MEDICAID:
       Answer: $0.00
    D. TOTAL AMOUNT PAID BY JAMES STEVERDING:
       Answer: $0.00
    E. TOTAL AMOUNT WRITTEN OR CHARGED OFF:
       Answer: $0.00
    F. TOTAL AMOUNT STILL OWED AND BY WHOM:
       Answer: $160,219.44    ACE Physicians

_____
WITNESS CUSTODIAN OF RECORDS



Ex. C.

Similarly, Dr. Batlle's clinic (Wellspine) has produced information indicating that Ace Physicians is compensating Dr. Batlle's for his surgeon's fees.

> 18. Has any amount of the charges for services rendered for the time period from 12/07/2022 TO PRESENT to JAMES STEVERDING been paid by private insurance, or by any person or entity other than JAMES STEVERDING?
>
> Answer: **Yes**
>
> 19. If your answer to the preceding question was "yes," please write the name of the private insurer, person, or entity, and the total amount paid by each for services rendered to JAMES STEVERDING during the time period asked.
>
> Answer: **Ace Physicans Management $8500.00**

Ex. E.

Indeed, in his recent deposition, Dr. Batlle admitted that Ace Physicians refers personal injury plaintiffs to him for treatment, and that Ace Physicians is responsible for paying for the medical services he provided to Plaintiff in this case, including the lower back surgery. Ex. F, pp. 28, 64, and 71. In fact, Wellspine has Ace Physicians listed as Plaintiff's insurer in this case:

> Q. Okay. And here for WellSpine, you-all have Ace Physicians Management as the insurance company for Mr. Steverding.
>         Does that -- that means that you-all will only get paid depending -- from Ace Physicians Management, right?
>         MS. SCHINDLER: Object to form.
>     A. I don't know the specifics there, but that's -- that's what it says.

> And do you see that Ace Physicians Management here covered a part of Mr. Steverding's debt at WellSpine? Do you see that?
>     A. Yes.
>     Q. Specifically, they covered $8,500 of it, right?
>     A. Correct.

*Id.*

Not surprisingly, Dr. Batlle charged more than 6 times the Medicare-approved rate, almost 3 times the approved Texas Workers' Compensation rate, and twice the average charge across Texas for the same medical procedure. Ex. A, p. 63.

**2. Plaintiff has refused to produce any documents or communications relating to the financing, funding, or factoring of his medical treatment.**

Despite clear indications of gross, litigation-driven overcharging, Plaintiff has refused to produce any documents or communications whatsoever regarding the arrangements between himself, his lawyers, Ace Physicians, Argenta Legal Funding, and any other financiers, funding companies, and factoring companies involved in the selection and payment of his medical providers in this case.

> **REQUEST FOR PRODUCTION NO. 1:** Produce all Documents and Communications reflecting the name of any medical funding company that has provided funding relating to medical services or medical equipment you have received resulting from the Incident.
>
> **RESPONSE:** Plaintiff objects on the grounds this request is irrelevant, not reasonably calculated to lead to the discovery of admissible evidence, and violative of the collateral source rule. Finally, Plaintiff objects to the extent this request seeks disclosure of documentation exempt from discovery by the attorney-client privilege, is overly broad, and constitutes a fishing expedition.

**REQUEST FOR PRODUCTION NO. 2:** Produce all Documents and Communications reflecting any contracts and agreements with any medical funding company that has provided funding relating to medical services or medical equipment you have received resulting from the Incident.

**RESPONSE:** Plaintiff objects on the grounds this request is irrelevant, not reasonably calculated to lead to the discovery of admissible evidence, and violative of the collateral source rule. Finally, Plaintiff objects to the extent this request seeks disclosure of documentation exempt from discovery by the attorney-client privilege, is overly broad, and constitutes a fishing expedition.

**REQUEST FOR PRODUCTION NO. 3:** Produce all Documents and Communications reflecting any payments made by any medical funding company relating to medical services or medical equipment you have received resulting from the Incident.

**RESPONSE:** Plaintiff objects on the grounds this request is irrelevant, not reasonably calculated to lead to the discovery of admissible evidence, and violative of the collateral source rule. Finally, Plaintiff objects to the extent this request seeks disclosure of documentation exempt from discovery by the attorney-client privilege, is overly broad, and constitutes a fishing expedition.

**REQUEST FOR PRODUCTION NO. 4:** Produce all Documents and Communications reflecting the name of any factoring company that has made any payments relating to medical services or medical equipment you have received resulting from the Incident.

**RESPONSE:** Plaintiff objects on the grounds this request is irrelevant, not reasonably calculated to lead to the discovery of admissible evidence, and violative of the collateral source rule. Finally, Plaintiff objects to the extent this request seeks disclosure of documentation exempt from discovery by the attorney-client privilege, is overly broad, and constitutes a fishing expedition.

**REQUEST FOR PRODUCTION NO. 5:** Produce all Documents and Communications reflecting any contracts and agreements with any factoring company that has made any payments relating to medical services or medical equipment you have received resulting from the Incident.

**RESPONSE:** Plaintiff objects on the grounds this request is irrelevant, not reasonably calculated to lead to the discovery of admissible evidence, and violative of the collateral source rule. Finally, Plaintiff objects to the extent this request seeks disclosure of documentation exempt from discovery by the attorney-client privilege, is overly broad, and constitutes a fishing expedition.

> **REQUEST FOR PRODUCTION NO. 6:** Produce all Documents and Communications reflecting any payments made by any factoring company relating to medical services or medical equipment you have received resulting from the Incident.
>
> **RESPONSE:** Plaintiff objects on the grounds this request is irrelevant, not reasonably calculated to lead to the discovery of admissible evidence, and violative of the collateral source rule. Finally, Plaintiff objects to the extent this request seeks disclosure of documentation exempt from discovery by the attorney-client privilege, is overly broad, and constitutes a fishing expedition.

> **REQUEST FOR PRODUCTION NO. 7:** Produce all Documents and Communications reflecting the name of any company, person, or entity that has provided financing for any medical services or medical equipment you have received resulting from the Incident.
>
> **RESPONSE:** Plaintiff objects on the grounds this request is irrelevant, not reasonably calculated to lead to the discovery of admissible evidence, and violative of the collateral source rule. Finally, Plaintiff objects to the extent this request seeks disclosure of documentation exempt from discovery by the attorney-client privilege, is overly broad, and constitutes a fishing expedition.

> **REQUEST FOR PRODUCTION NO. 8:** Produce all Documents and Communications reflecting any contracts and agreements with any company, person, or entity for financing relating to medical services or medical equipment you have received resulting from the Incident.
>
> **RESPONSE:** Plaintiff objects on the grounds this request is irrelevant, not reasonably calculated to lead to the discovery of admissible evidence, and violative of the collateral source rule. Finally, Plaintiff objects to the extent this request seeks disclosure of documentation exempt from discovery by the attorney-client privilege, is overly broad, and constitutes a fishing expedition.

> **REQUEST FOR PRODUCTION NO. 9:** Produce all Documents and Communications reflecting any payments made by any company, person, or entity that has provided financing for medical services or medical equipment you have received resulting from the Incident.
>
> **RESPONSE:** Plaintiff objects on the grounds this request is irrelevant, not reasonably calculated to lead to the discovery of admissible evidence, and violative of the collateral source rule. Finally, Plaintiff objects to the extent this request seeks disclosure of documentation exempt from discovery by the attorney-client privilege, is overly broad, and constitutes a fishing expedition.

Ex. G.

> 63. Any and all correspondence or notices relating to any lien, reimbursement interest, or subrogation interest asserted against you or against any potential recovery by you.
>
> **RESPONSE:** Plaintiff objects to this request as overly broad, unduly burdensome and on grounds that it is not limited in scope or time expected to lead to the discovery of admissible evidence. Subject to said objection but without waiving the same, Plaintiff has no responsive documents at this time.
>
> **SUPPLEMENTAL RESPONSE:** None known to Plaintiff. Plaintiff has no responsive information in his possession.

Ex. H.

**3. Texas law entitles the Defendants to examine the financial incentives and bias of Plaintiff's medical providers and to obtain evidence reflecting the unreasonable amount of Plaintiff's claimed medical costs.**

Texas law expressly allows parties to (1) examine witnesses regarding their bias and present evidence regarding such; and, (2) seek evidence that is probative of the reasonableness of a medical provider's charges in assessing a defendant's liability for medical costs. *See* TEX. R. CIV. P. 613(b) ("Witness's Bias or Interest"); *In re Plains Marketing, L.P.*, 195 S.W.3d 780, 782 (Tex. App.—Beaumont 2006, orig. proceeding) ("proof of bias may be offered to impeach the credibility of a witness"); *In re K&L Auto Crushers, LLC*, 627 S.W.3d 239, 251, and 254 (Tex. 2021) (citing and discussing In re North Cypress Med. Ctr. Operating Co., Ltd., 559 S.W.3d 128, 129 (Tex. 2018)); *In re ExxonMobil Corp.*, 635 S.W.3d 631, 633 (Tex. 2021)(same).

By charging hundreds of thousands of dollars under undisclosed referral and funding agreements with, at minimum, Ace Physicians and Argenta Legal Funding, Plaintiff's medical providers have "invested themselves in the outcome of this case and the amount of damages recovered." *In re K&L Auto Crushers, LLC, 627 S.W.3d* at 254.

This financial stake in the outcome of Plaintiff's lawsuit creates a clear incentive for his

10

medical providers to inflate the amounts they charge for medical services and equipment provided to Plaintiff. The more the medical providers charge, the higher Plaintiff's purported damages, and the more Plaintiff, Plaintiff's counsel, Plaintiff's medical providers, Argenta Legal Funding, and Ace Physicians stand to recover. Defendants are entitled to examine and expose this bias. *See e.g.*, *In re Plains Marketing, L.P.*, 195 S.W.3d at 782 ("proof of bias may be offered to impeach the credibility of a witness").

Furthermore, as the Texas Supreme Court has made abundantly clear, a defendant's liability for medical costs is "limited to a reasonable amount." *In re K&L Auto Crushers, LLC*, 627 S.W.3d at 254 (Tex. 2021); *In re ExxonMobil Corp.*, 636 S.W.3d at 634-35 (Tex. 2021) ("reasonableness is a well-settled common-law limitation on recoverable expenses"). And "proof of the amount charged does not itself constitute evidence of reasonableness." *Id.* at 250.

Here, for example, Crescent's charge of $160,528.94 is more than 24 times the approved Medicare rate, more than 12 times the approved Texas Workers' Compensation rate, and more than 8 times the midpoint value accounting for typical statewide charges for the same procedure. Ex. A, p. 63. Moreover, when compared to Crescent's usual charge for the same procedure, Crescent's charge in this case is almost 5 times its usual gross charge and approximately 16 times its usual charge to cash-paying patients. *See* Ex. D.

The evidence Defendants seek is necessary to counter Plaintiff's contention that his medical providers' charges are nonetheless usual, reasonable, and customary charges, and that the providers themselves are unbiased "treating physicians" interested only in his medical care. This is precisely the type of evidence the Texas Supreme Court has held is discoverable. *See e.g.*, *In re K&L Auto Crushers, LLC*, 627 S.W.3d at 250 ("the requested information, though not dispositive, is relevant and important to a fair, just, and fact-based resolution of this case"); *In re Exxon Mobil*

11

*Corp.*, 636 S.W. 3d at 635 ("The denied discovery was necessary to develop a defense that goes to the heart of [defendant's] case—that the providers' rates were unreasonable.").

Discovery regarding the compensation scheme concocted to finance Plaintiff's medical treatment, and to refer Plaintiff to providers who were willing to charge exorbitant amounts, is key to allowing Defendants to "rebut the alleged damages at trial by offering concrete evidence – rather than speculative evidence in the form of affidavits and cross examination based on generalized data – of the amounts [the medical providers] usually charge and accept as payment and the cost to [the medical providers] for the services and devices provided to [Plaintiff]." *In re K & L Auto Crushers, LLC*, 627 S.W.3d at 255.

### B. Full case files of Plaintiff's retained experts.

Rule 195.5 of the Texas Rules of Civil Procedure requires Plaintiff to produce "all documents, tangible things, reports, models, or data compilations that have been provided to, reviewed by, or prepared by or for the expert in anticipation of the expert's testimony" for each retained testifying expert. *See* TEX. R. CIV. P. 195.5(a).

Plaintiff has designated the following retained experts:

- Jason Marchetti, MD – life care planner.
- Jon (Paul) Dillard – fleet safety.
- Harold Asher and Jeffrey Meyers – economic damages calculation.
- Daniel "Danny" R. Phillips – accident reconstructionist.
- Mariusz Ziejewski, Ph.D., Inz. – biomechanist.

Nonetheless, Plaintiff has failed to produce these retained experts' full case files despite his clear and unequivocal obligation to do so under the rules of procedure and Defendants' multiple requests for production of the same.

### III.   PRAYER

In light of the foregoing, Defendants respectfully request that the Court compel Plaintiff to produce the referenced discovery within 10 calendar days of the date of this Order.

Respectfully submitted,

**AHMAD, ZAVITSANOS & MENSING PLLC**

*/s/ Rey Flores*
Todd W. Mensing
State Bar No. 24013156
tmensing@azalaw.com
Rey Flores
Texas Bar No. 24068777
rflores@azalaw.com
Jarmonique C. Smith
Texas Bar No. 24110374
jsmith@azalaw.com
Carl J. Gustafson
Texas Bar No. 24125261
cgustafson@azalaw.com
1221 McKinney, Suite 2500
Houston, Texas 77010
Phone: 713.655.1101
Fax: 713.655.0062

**ATTORNEYS FOR DEFENDANTS
GEO DRILLING FLUIDS, INC.
AND ERNEST SERENA**

### CERTIFICATE OF CONFERENCE

I certify that Defendant has conferred with Plaintiff's counsel regarding the aforementioned issues, and Plaintiff's counsel is opposed to the requested relief.

*/s/ Carl Gustafson*
Carl Gustafson

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing document was served on the following counsel in accordance with the Texas Rules of Civil Procedure on May 8, 2024.

Kurt Arnold
Caj Boatright
Roland Christensen
Claire Schindler
Arnold & Itkin LLP
6009 Memorial Drive
Houston, Texas 77007
*Attorneys for Plaintiff*

Brian Carney
Carney Law Firm
1202 W. Texas Ave.
Midland, Texas 79701
*Attorneys for Plaintiff*

/s/ Jarmonique C. Smith
Jarmonique C. Smith