**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **LANDON PERRY,** | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 4:23-CV-04441** |
| | § | |
| **HALLIBURTON ENERGY SERVICES,** | § | |
| **INC.,** | § | |
| | § | |
| | § | |
| *Defendant.* | § | |
| | § | |

---

**HALLIBURTON'S RESPONSE TO PLAINTIFF'S MOTION TO QUASH**
**AND FOR PROTECTION**

---

Defendant Halliburton Energy Services, Inc. ("Halliburton") respectfully submits the following response to Plaintiff's motion to quash and for protection from a deposition subpoena served on non-party Elite Medical Wellness, LLC ("Elite").

# TABLE OF CONTENTS

I. SUMMARY OF THE ARGUMENT ........................................................................................ 1

Ii. NATURE AND STAGE OF THIS DISCOVERY DISPUTE ................................................. 2

iiI. STATEMENT OF THE ISSUES TO BE RULED ON BY THE COURT .............................. 2

    1. Should the Court in the Western District of Louisiana adjudicate this issue, given that
    Elite is located there, Elite has filed a similar motion for protection there, Halliburton has
    filed a response as well as a motion to compel compliance with Halliburton's document
    subpoena to Elite there, and a hearing is set on those motions on March 26, 2025? .............. 2

    2. Is Halliburton entitled to discovery relevant to the bias of a testifying expert for the
    plaintiff?......................................................................................................................................... 2

    3. Is Halliburton entitled to discovery relevant to the reasonable value of medical services
    provided to Plaintiff, as opposed to simply the amounts charged for those services? ........... 2

IV. FACTUAL BACKGROUND ................................................................................................. 3

    A.    Medical funding arrangements, like the one in this case, create financial incentives for
    medical providers to give diagnoses and testimony favorable to plaintiffs and to inflate their
    charges........................................................................................................................................... 3

    B.    Elite, Access, and A&I have a long-standing and ongoing financial relationship.............. 4

        1.    Elite regularly treats personal injury plaintiffs represented by A&I and testifies
        favorably on their behalf.............................................................................................................. 4

        2.    A&I refers plaintiffs to Access who refers them to Elite then purchases Elite's accounts
        receivable at contractually agreed amounts................................................................................ 4

    C.    Elite's biased diagnoses and opinions permeate the entirety of Plaintiff's damages claims
    and are the cornerstone of those claims. ...................................................................................... 6

    D.    Plaintiff is trying to pass off Elite's providers, including Dr. Hayes, as neutral and
    disinterested "treating physicians."............................................................................................. 7

    E.    Halliburton's corporate representative topics focus on the nature and scope of the
    relationship between Elite, Access, and A&I and on the bias of Elite's providers. ................... 7

v. ARGUMENT & AUTHORITIES ............................................................................................. 8

    A.    The discovery Halliburton seeks is relevant to both the bias of Elite's testifying experts
    and the reasonable value of the services they provided. ............................................................ 8

    B.    Texas law expressly permits discovery into the bias of witnesses and factors bearing on
    the reasonable value of medical services provided to plaintiffs.................................................11

        1. Evidence of Dr. Hayes' relationship with Access and A&I is relevant to his bias. ............11

        2. Evidence of Access's payments to Elite is relevant to the reasonable value of the services
        Elite provided Plaintiff. ............................................................................................................. 12

C.    Dr. Hayes was unable or unwilling to provide responsive information during his individual deposition. ..................................................................................................... 13

D.    The court in the Western District of Louisiana previously compelled discovery from Elite relevant to same issues presented here. ......................................................................... 15

E.    Plaintiff's attempts to preclude Halliburton from discovery that goes to the heart of its defense are unpersuasive. ........................................................................................ 16

   1. General litigation funding agreements are distinguishable from the medical funding arrangement at issue in this case. ...................................................................... 16

   2. Plaintiff's conclusory allegations of undue burden are insufficient. .................. 17

   3. The discovery at issue is not privileged or work product. ................................ 18

   4. The Court should simply modify the subpoena if it finds the topics overbroad. ............. 20

VI. CONCLUSION AND PRAYER .......................................................................... 20

CERTIFICATE OF SERVICE ............................................................................ 21

## CASES

*Barnes v. Dolgencorp, LLC.*,
   No. CV 22-2179, 2023 WL 7403450, at *5 (E.D. La. Nov. 9, 2023) ........................ 9

*Boutte v. Elite Medical Wellness, et al*, No. 2:24-mc-00011 ........................................ 4

*Houston v. Publix Supermarkets, Inc.*,
   No. 1:13-CV-206, 2015 WL 4581541, at *1 (N.D. Ga. Jul. 29, 2015) .................... 2, 10

*In re: American Medical Systems, Inc.*, ..............................................................
   MDL No. 2325, 2016 WL 3077904, at * (S.D.W. Va. May 31, 2016) ...................... 9

*Louisiana Corral Mgmt., LLC v. Axis Surplus Ins. Co.*,
   650 F.Supp.3de 49, 499 (E.D. La. 2023) .......................................................... 14, 16

*McClain v. Sysco New Orleans, et al.*,
   No. 19-1801 C/W 19-3283, 2020 WL 11028497, at *10 (E.D. La. Jul. 17, 2020). ............ 3, 7, 9

*Michael Johnson, et al v. Packaging Corp. of America, et al.*,
   No. 3:18-613-SDD ............................................................................................ 4

*ML Healthcare Services, LLC v. Publix Super Markets, Inc.*,
   881 F.3d 1293, 1296 (11th Cir. 2018). ............................................................. 10

*Rangel v. Anderson*,
   No. 2:15-cv-81, 202 F.Supp.3d 1361, 1373 (S.D. Ga. Aug. 23, 2016) ...................... 2, 10

*Tarleton v. DG Louisiana LLC*,

    No. 6:20-CV-00294, 2022 WL 2347346, at *4–5 (W.D. La. June 29, 2022)............................. 9

*Thomas v. Chambers*,

    No. CV 18-4373, 2019 WL 8888169, at *3–4 (E. D. La. Apr. 26, 2019) .................................. 9

**Statutes:**

Fed. R. Civ. P. 45................................................................................................................. 16

Fed. R. Evid. 401(a))............................................................................................................11

Fed. R. Evid. 403 ................................................................................................................ 12

## I.  SUMMARY OF THE ARGUMENT

Plaintiff is represented by the law firm of Arnold & Itkin, LLP ("A&I").  The evidence in that case indicates that A&I referred Plaintiff to a medical funding company called Access Healthcare Management ("Access") with whom it has a longstanding financial relationship. Similarly, Access referred Plaintiff to Elite with whom it has a longstanding financial relationship. Elite provided medical services to Plaintiff at inflated rates then sold its accounts receivable to Access at highly discounted, contracted rates.  Elite issued favorable diagnoses for Plaintiff and is poised to give those same opinions at trial, where A&I will present the inflated rates Elite charged as a part of Plaintiff's damages claim.  A&I will then pay Access at some lower amount out of any settlement or judgment in the case.

Plaintiff has designated Elite's owner, Dr. Patrick Hayes, as a testifying expert.  Halliburton contends Dr. Hayes is a biased witness with a financial interest in a favorable resolution for Plaintiff in the underlying case, rather than the neutral and disinterested "treating physician" Plaintiff is attempting to portray him as.  Dr. Hayes has a financial motive to provide favorable diagnoses and testify favorably for Plaintiff to continue securing a steady stream of personal injury plaintiffs as patients from Access, and, by extension, from A&I.

During his individual deposition, Dr. Hayes claimed ignorance of the topics at issue in the corporate representative deposition Plaintiff now seeks to prevent.  The information is relevant to Dr. Hayes' credibility, or lack thereof, and to the reasonable value of the medical services Elite rendered to Plaintiff.

## II.  NATURE AND STAGE OF THIS DISCOVERY DISPUTE

Elite is located in Lake Charles, Louisiana, which falls under the purview of the Western District of Louisiana.  Halliburton served Elite with the deposition subpoena at issue in this motion and with a separate document subpoena.  On December 20, 2024, with respect to Halliburton's document subpoena, Elite's counsel informed the undersigned counsel that "Elite will not agree to have any discovery motions heard by the USDC for the SD Texas, but instead, will stand on its right to have any issues adjudicated by the USDC for the WD Louisiana…"  *See* Ex. 15.

As a result, Halliburton filed a motion to compel compliance with its document subpoena in the Western District of Louisiana.  *See In re: Motion to Compel Compliance with Subpoena Directed to Elite Medical Wellness, LLC*, No. 2:25-mc-00015 (W.D. La. Jan. 31, 2025) (Doc. 1). The court has set Elite's deadline to respond on March 7, 2025, Halliburton's deadline to reply on March 14, 2024, and a hearing on March 26, 2025.  *Id*. (Doc. 7).

Additionally, Elite filed a motion for protection from Halliburton's deposition subpoena—the same subpoena at issue in this motion—in the same court in the Western District of Louisiana. The court set the same response and reply deadline and hearing date.  *Id*.

## III.  STATEMENT OF THE ISSUES TO BE RULED ON BY THE COURT

The Court is presented with the following issues:

1. Should the Court in the Western District of Louisiana adjudicate this issue, given that Elite is located there, Elite has filed a similar motion for protection there, Halliburton has filed a response as well as a motion to compel compliance with Halliburton's document subpoena to Elite there, and a hearing is set on those motions on March 26, 2025?

2. Is Halliburton entitled to discovery relevant to the bias of a testifying expert for the plaintiff?

3. Is Halliburton entitled to discovery relevant to the reasonable value of medical services provided to Plaintiff, as opposed to simply the amounts charged for those services?

## IV. FACTUAL BACKGROUND

**A.    Medical funding arrangements, like the one in this case, create financial incentives for medical providers to give diagnoses and testimony favorable to plaintiffs and to inflate their charges.**

A medical funding company "serves as an investor in the lawsuit…" *Rangel v. Anderson*, 202 F.Supp.3d 1361, 1373 (S.D. Ga. 2016) (citing *Houston Publix Supermarkets, Inc.*, No. 1:13-CV-206,  2015 WL 4581541, at *2 (N.D. Ga. Jul. 29, 2015)).  While slight variations exist, the typical funding and factoring scheme works like this:



Personal injury firms refer plaintiffs to medical funding companies who refer plaintiffs to selected doctors who provide treatment and sell their accounts receivable to the funding companies. The plaintiffs' lawyers then designate those doctors as non-retained testifying experts to try to pass them off as neutral and disinterested treating physicians. The doctors then testify favorably for the plaintiffs in the hope of securing additional plaintiffs from the funding companies. The plaintiffs, the lawyers, and the funding companies then get paid out of any settlement or judgment, and the cycle begins anew with the next case. Needless to say, this creates significant financial incentives for doctors.

**B.    Elite, Access, and A&I have a long-standing and ongoing financial relationship.**

**1.    Elite regularly treats personal injury plaintiffs represented by A&I and testifies favorably on their behalf.**

Dr. Hayes testified on behalf of plaintiffs represented by A&I approximately 50 times between 2016 and 2024. *See* Ex. 1. This is almost four times more than the next most frequent law firm. *Id*. In multidistrict litigation pending in Harris County, A&I sent 21 of its 23 plaintiffs—from all over the country—to see Dr. Hayes at Elite. *See* Ex. 3, at p. 2; Attachment A ("Most Seen Medical Providers"); Attachment B ("Plaintiffs' Residences"). Dr. Hayes likewise testified for an A&I plaintiff in April 2024 in the Middle District of Louisiana. *See Michael Johnson, et al v. Packaging Corp. of America, et al.*, No. 3:18-613-SDD, in the U.S. District Court for the Middle District of Louisiana.

Defendant is aware of at least one other case pending in the Southern District of Texas in which Dr. Hayes has seen a plaintiff represented by A&I (there are likely more). *See Boutte, Jr. v. Jackson Offshore Operators, LLC et al*, No. 4:22-cv-00948, in the U.S. District Court for the Southern District of Texas. Elite and Dr. Hayes are attempting to resist discovery in that case, much as they are attempting to do in this case. *See Boutte v. Elite Medical Wellness, et al*, No. 2:24-mc-00011, in the U.S. District Court for the Western District of Louisiana; *Boutte v. Elite Medical Wellness, et al*, No. 4:25-cv-00138, in the U.S. District Court for the Southern District of Texas.

Defense counsel in the *Boutte* case identified 37 plaintiffs "involved in multiple lawsuits spanning six (6) different incidents or events," who are being treated by Elite and Dr. Hayes while simultaneously being represented by A&I. *See* Ex. 4.

**2.    A&I refers plaintiffs to Access who refers them to Elite then purchases Elite's accounts receivable at contractually agreed amounts.**

Dr. Hayes testified regarding the nature of his relationship with Access:

> Q: What is Access Healthcare Management?

4

> A: They're a case management service that we work with who refers us patients that need behavioral health treatment.
>
> Q: Okay. And when you say case management company, what do you mean by that?
>
> A: … Access very much behaves like a private workers' comp where, if an individual has [a] behavioral health condition, they will find [a] behavioral health provider. We are one of those that Access works with. And then, when I need to place medication orders, when I need to schedule visits, those go through Access Healthcare Management for the scheduling. They will do all of that.

*See* Ex. 2 at 36:23-37:17.

> Q: Okay. And how long have you worked with Access Healthcare Management?
>
> A: Probably about 10 years at this point.
>
> Q: Okay. So they sent Mr. Perry to you in August of 2023, correct?
>
> A: That's correct.

*Id*. at 37:25-38:5.

Not coincidentally, Dr. Hayes has been working with Access for about the last 10 years, and Dr. Hayes has been testifying for plaintiffs represented by A&I for the past 9 or 10 years. *Id*. at 37:25-38-2; 147:6-20. Access referred Plaintiff to Elite on August 28, 2023. *See* Ex. 7. Dr. Hayes testified to this fact during his deposition. *See* Ex. 2 at 25:21-22 ("…there's the triggering referral from Access Healthcare Management.").

Dr. Hayes also gave deposition testimony in the multidistrict litigation refenced above and described the relationship between A&I, Access, and Elite. *See* Ex. 5. "My particular relationship in this case… is with Access Healthcare Management," Dr. Hayes noted. *Id*. at 44:20-23. "I think they have a relationship with Arnold & Itkin," he continued. *Id*. at 44:25-45:1. "And then if there's a case that Access needs to send to a psychiatrist or an addictions or a cognitive doc, Access sends them to me," he explained." *Id*. at 45:1-3. When asked whether Access would pay his office

5

directly, Dr. Hayes responded: "That's correct, yes, sir." *Id*. at 57: 14-16. And, when asked about the method of compensation, Dr. Hayes testified that "we have a contracted rate for their case management, which is a percentage of the fees, consistent with any of the case managers that I've worked with over the years, but that's going to be defined in the contract." *Id*. at 57:21-25.

The contract between Access and Elite, titled a "Lien and Receivables Purchase and Assignment Agreement," reflects that Access has agreed to purchase Plaintiff's accounts receivable for fifty cents on the dollar for services involving clinical care. *See* Ex. 6, Sec. 3.

## C.    Elite's biased diagnoses and opinions permeate the entirety of Plaintiff's damages claims and are the cornerstone of those claims.

Not surprisingly, Elite and Dr. Hayes have issued diagnoses favorable to Plaintiff, and Dr. Hayes has provided testimony favorable to Plaintiff at his deposition (and will do the same at trial). Dr. Hayes testified that Plaintiff's diagnoses include post-traumatic stress disorder, clinical insomnia, erectile dysfunction, and post-burn pain and itch related to burns of the genital area. *See* Ex. 2 at 60:9-19.

Plaintiff has designated a retained Life Care Planner and economic damages experts. *See* Ex. 8, Plaintiff's Expert Designations. The Life Care Planner relies heavily on Dr. Hayes' opinions regarding allegedly necessary future medical care to arrive at the conclusion that Plaintiff will require between $570,813.12 and $599,563.12 in such care. *See* Ex. 9, at Summary Page; Pages 1-6 (repeatedly citing Dr. Hayes); Memo re: Hayes Conferral. Indeed, A&I coordinated with Elite to provide the Life Care Planner with information she needed for her plan. *See* Ex. 10.

Likewise, Plaintiff's lost past and future earning capacity (and the amount of future maintenance payments to which he might be entitled) are also impacted by Dr. Hayes' opinion that Plaintiff is unable to reliably show up for work and complete a full workday. *See* Ex. 2 at 85:22-86:1. The longer Plaintiff is out of work as a result of the accident, after all, the higher the sum of

maintenance payments to which he is presumably entitled.  If a jury were to conclude, as a result of Dr. Hayes' testimony, that Plaintiff will never again be able to hold down a job, Plaintiff's lost future earning capacity damages would total $2,452,181.  *See* Ex. 11.

**D.  Plaintiff is trying to pass off Elite's providers, including Dr. Hayes, as neutral and disinterested "treating physicians."**

Rather than designate Dr. Hayes and the other Elite providers as retained experts, Plaintiff has designated them as non-retained experts in an attempt to pass them off as neutral and disinterested "treating physicians." *See* Ex. 8. Designating them as such also has the added benefit, from Plaintiff's perspective, of complicating the obtaining of documentary discovery and depositions from Elite.  This designation as purported non-retained experts, and the attempted presentation of Dr. Hayes as a disinterested "treating physician" make Halliburton's discovery into his bias all the more important to the defense of its case.

**E.  Halliburton's corporate representative topics focus on the nature and scope of the relationship between Elite, Access, and A&I and on the bias of Elite's providers.**

Halliburton first served a subpoena, with deposition topics, on Elite on January 24, 2025. *See* Ex. 12.  Halliburton again served a subpoena, with deposition topics, and notice of deposition on Elite on January 27, 2025.  *See* Ex. 13.

- Topics 1 through 3 related to the terms of any agreement, whether written or oral, relevant to Plaintiff's medical treatment or payment therefor.

- Topics 4 and 5 related to amounts charged by Elite for treatment rendered to Plaintiff and amounts actually paid to Elite for said treatment.

- Topic 6 asked for the identity and contact information of any person or entity that had agreed to pay for Plaintiff's treatment.

- Topics 7 and 8 sought the number of patients treated by Elite who were represented by A&I at the time of said treatment for the 4 years prior to Plaintiff's accident, and the amounts paid to Elite in relation to those patients.

- Topic 9 asked for the identity and contact information of any person or entity that made a payment responsive to Topic 8.

- Topic 10 sought the historical amounts Elite has accepted as payment for services rendered to A&I clients.

- Topic 11 sought the number of referrals to Elite and Dr. Hayes by Access and A&I during the 4 years prior to Plaintiff's accident.

- Topic 12 sought the amounts paid to Elite and Dr. Hayes by Access during the 4 years prior to Plaintiff's accident.

- Topic 13 related to communications relating to Plaintiff between Elite, Access, and A&I.

*Id*. at Ex. A.

## V. ARGUMENT & AUTHORITIES

**A.    The discovery Halliburton seeks is relevant to both the bias of Elite's testifying experts and the reasonable value of the services they provided.**

"Proof of bias is almost always relevant because the jury, as finder of fact and weigher of credibility, has historically been entitled to assess all evidence which might bear on the accuracy and truth of a witness' testimony."  *United States v. Abel*, 469 U.S. 45, 52 (1984).  The term "bias" refers to "the relationship between a party and a witness which might lead the witness to slant, unconsciously or otherwise, his testimony in favor of or against a party."  *Id*.  Among other grounds, "[b]ias may be induced by a witness'… self-interest."  *Id*.

Courts across the country have consistently held that evidence of medical funding arrangements, and the relationships between the plaintiffs' lawyers, funding companies, and doctors, is relevant and discoverable because it goes both to the bias of the plaintiff's testifying medical providers and the reasonableness of their charges—both of which are in dispute in this case.  *See e.g.*, *Barnes v. Dolgencorp, LLC.*, No. CV 22-2179, 2023 WL 7403450, at *5 (E.D. La. Nov. 9, 2023) (finding records reflecting purchase of plaintiff's medical accounts receivable from his doctor by a factoring company relevant to the doctor's potential bias); *Tarleton v. DG Louisiana*

8

*LLC*, No. 6:20-CV-00294, 2022 WL 2347346, at *4–5 (W.D. La. June 29, 2022) (holding medical factoring records "relevant to bias, credibility, and the reasonableness of Plaintiff's medical bills"); *McClain v. Sysco New Orleans*, No. CV 19-1801, 2020 WL 11028497, at *7–8, 10–11 (E.D. La. July 17, 2020) (finding that "accounts receivable by factoring companies are one of the most lucrative of the options" to cover "the cost of plaintiff's treatment"); *Thomas v. Chambers*, No. CV 18-4373, 2019 WL 8888169, at *3–4 (E. D. La. Apr. 26, 2019) (finding records relating to medical funding agreement relevant because "[t]he financial arrangement between plaintiffs' healthcare providers and the third-party funding companies could create an incentive for plaintiffs' treating physicians to want plaintiffs to win their case, because a victory could result in more referrals… [and] [t]hat incentive could lead a jury to question the treating physicians' testimony regarding causation"); *In re: American Medical Systems, Inc.*, MDL No. 2325, 2016 WL 3077904, at *5 (S.D.W. Va. May 31, 2016)  (finding document and deposition subpoenas to third-party factoring companies sought relevant information relating to financial motive, credibility, and damages); *Houston v. Publix Supermarkets, Inc.*, No. 1:13-CV-206, 2015 WL 4581541, at *1 (N.D. Ga. Jul. 29, 2015) ("Testimony about [the medical factoring company's] relationship with [the plaintiff's] doctors is admissible for the purpose of attacking the credibility of their opinions"); *Rangel v. Anderson*, No. 2:15-cv-81, 202 F.Supp.3d 1361, 1373 (S.D. Ga. Aug. 23, 2016) ("the medical funding company's] involvement in Plaintiff's treatment is highly relevant to the issue of Plaintiff's treating physician's credibility and potential bias").

Perhaps the most direct and comprehensive treatment Halliburton has found comes from the United States Court of Appeals for the 11th Circuit, which examined the precise issue presented here and affirmed the same arguments Halliburton makes in this response. *See **ML Healthcare Services, LLC v. Publix Super Markets, Inc.**, 881 F.3d 1293, 1296 (11th Cir. 2018).*

9

During discovery, the defendants in that case learned that ML Healthcare Services would contract with doctors to provide medical care for personal injury plaintiffs with viable tort claims, refer plaintiffs to those doctors, purchase the accounts receivable from the doctors for that medical care, then seek payment for those accounts receivable from any settlement or judgment. *Id*. Furthermore, the doctors would testify at the plaintiff's trial concerning the extent and cause of her medical injuries. *Id*. The defendant sought to introduce evidence at trial of the relationship between the doctors and ML Healthcare Services (a medical funding company) "to show that Plaintiff's doctors were biased in their testimony and that Plaintiff's claimed medical expenses were unreasonable." *Id*.

As a starting point, **the district court "concluded that the business model used by ML Healthcare, which included the fronting of medical expenses for plaintiffs to the treating doctors that ML Healthcare had selected, was 'highly relevant and probative' as to the bias of those doctors, as well as the reasonableness of the medical bills."** *Id*. at 1299. The trial court therefore allowed the defendant to introduce evidence at trial of the relationship between the doctors, ML Healthcare Services, and the plaintiffs ML Healthcare Services had referred to those doctors. *Id*. Following an eight-day trial, the jury returned a verdict for the defendant, and the plaintiff and ML Healthcare Services appealed, claiming the trial court erred in initially requiring them to produce evidence regarding their relationship, then allowing that evidence to be introduced at trial. *Id*. at 1296.

**The defendant's theory of bias in *ML Healthcare Services* is identical to Defendants' theory of bias in this case**—that the agreements between a plaintiff, his or her lawyers, and the medical funding and factoring companies "creates the risk of bias on the part of doctors who receive referrals from [the funding and factoring companies] and who subsequently testify on

behalf of the plaintiffs they have treated pursuant to those referrals." *Id*. at 1301. The risk of bias exists "because if a doctor did not provide a favorable causation analysis—which is necessary to win a tort action—[the funding and factoring companies] likely would find other doctors who would." *Id*. Therefore, "in order to continue to receive referrals from [the medical funding and factoring companies]—and the guaranteed income stream they generate—the treating doctors have an incentive to provide analyses that help these patients—and, by extension, [the medical funding and factoring companies]—win their case." *Id*.

Finding that the trial court did not err in permitting evidence of the payment arrangement to be admitted at trial to show the testifying doctors' bias, the 11th Circuit held that:

- **"[T]he evidence was relevant," as "[i]ndeed, proof of bias will typically be relevant."** *Id*. at 1302 (citing *Abel*, 469 U.S. at 52 ("Proof of bias is almost always relevant because, the jury, as finder of fact and weigher of credibility, has historically been entitled to assess all evidence which might bear on the accuracy and truth of the witness' testimony.")).

- In order to probe potential bias, **the defendant "needed only to show that [the medical funding and factoring company's] payment arrangement had 'any tendency' to make bias more probable than it would be without the evidence,"** and finding that requirement "easily satisfied here." *Id*. (citing Fed. R. Evid. 401(a)).

- While the plaintiff argued that none of her doctors admitted to bias while testifying, the Court of Appeals noted that was "hardly a surprising revelation," and, in any event, "[a] witness's refusal to admit bias does not bar the opposing party from introducing evidence that might contradict such a protestation." *Id*.

- The trial court's determination that the probative value of the evidence of the agreements at issue outweighed any potential for prejudice to the plaintiff was not in error. *Id*. at 1303 (citing Fed. R. Evid. 403).

**B.    Texas law expressly permits discovery into the bias of witnesses and factors bearing on the reasonable value of medical services provided to plaintiffs.**

**1. Evidence of Dr. Hayes' relationship with Access and A&I is relevant to his bias.**

"A party may discover the following information regarding a testifying expert… any bias of the witness." Tex. R. Civ. P. 192.3(e)(5). Texas specifically allows the examination of a witness about his or her bias or interest. *See* Tex. R. Evid. 613(b). Unless the witness unequivocally admits

11

that bias or interest, the examining party may introduce extrinsic evidence of the witness's bias. *Id*. at (4) ("Extrinsic evidence of a witness's bias or interest is not admissible unless the witness is first examined about the bias or interest and fails to unequivocally admit it."). Like the United States Supreme Court, the Texas Supreme Court has held that "[e]vidence of bias of a witness is relevant and admissible." *Walker v. Packer*, 827 S.W.2d 833, 839 (Tex. 1992) (citing Tex. R. Evid. 613(b)). Because Texas law allows Halliburton to examine Dr. Hayes about his bias at trial, it also allows Halliburton to develop evidence of that bias through discovery before trial.

### 2. Evidence of Access's payments to Elite is relevant to the reasonable value of the services Elite provided Plaintiff.

The Texas Supreme Court has discussed the modern health care industry's "two-tiered billing structure consisting of higher 'chargemaster' (or 'full' or 'list') rates for uninsured patients and lower rates charged to private and public insurers," and has highlighted the fact that "chargemaster rates are both 'increasingly arbitrary' and 'frequently uncollected.'" *In re K&L Auto Crushers, LLC*, 627 S.W.3d 239, 248 (Tex. 2021). "[C]hargemaster rates 'are not dispositive of what is reasonable.'" *Id*. at 248-49 (citing *In re North Cypress*, 559 S.W.3d at 133). The Texas Supreme Court has found evidence regarding numerous alternatives to "chargemaster" or "full" rates to be relevant to the determination of the reasonable value of medical services. *See e.g.*, *Daughters of Charity Health Services of Waco v. Linnstaedter*, 226 S.W.3d 409, 411 (Tex. 2007) (amounts paid by workers compensation carrier); *Haygood*, 356 S.W.3d at 398-99 (Medicare rates); *In re North Cypress*, 559 S.W.3d at 129 ("reimbursement rates from private insurers and public payers"); *In re K&L Auto Crushers*, 627 S.W.3d at 248-49 (providers' negotiated rates and costs); *In re ExxonMobil*, 635 S.W.3d at 634 (rates providers accepted from majority of patients for same procedures performed around the same time); *In re Central Oregon Truck Co., Inc.*, 644 S.W.3d 668, 669 (Tex. 2022) (agreeing with *In re K&L Auto Crushers*).

Section 41.0105 of the Texas Civil Practice and Remedies Code limits a claimant's recovery to the amount of medical expenses actually "paid or incurred." Tex. Civ. Prac. & Rem. Code § 41.0105. "But section 41.0105 is not the only limit on a claimant's recovery of medical expenses." *Id*. Another such limitation "is the common law requirement that the amount of recoverable expenses be reasonable." *Id*. Indeed, "even if [the plaintiff] were legally bound to pay the providers an unreasonable amount for their services, [the defendant's] liability to [the plaintiff] would still be limited to a reasonable amount." *Id*. at 250.

Plaintiff seeks to limit Halliburton's discovery to the amounts Dr. Hayes and Elite billed, *i.e.*, charged. The Texas Supreme Court, however, has looked approvingly at discovery requests seeking information similar to the information Halliburton seeks here: the amount of billed charges; the amount of any adjustments or write-offs; the amount paid to the provider and by whom it was paid; the amount of any outstanding balances; the terms of any contracts for services with [the plaintiff's] health-insurance carrier; and, any letters of protection, contracts, liens, or other guarantees of payment. *See e.g.*, *In re Central Oregon Truck Co., Inc.*, 644 S.W.3d at n. 1, 670.

### C.  Dr. Hayes was unable or unwilling to provide responsive information during his individual deposition.

Dr. Hayes previously testified in his individual capacity, not as Elite's corporate representative. *See* Ex. 2. During that deposition, Dr. Hayes repeatedly claimed ignorance of the topics at issue in the corporate representative deposition and deferred to others in his clinic—in particular, his practice manager, Caitlin McGroarty—on many of those topics.

> Q: …So this date down here, is that the date of payment?
>
> A: That's how I appreciate that.  Again, I don't do billing…

*Id*. at 44:5-8.

> Q: Okay.  And do you believe that Access Healthcare Management has made all these payments reflected on these – this billing invoice or billing summary?

A: Again, I – I don't do billing. I don't have any reason to dispute that. But, yeah, I don't really know.

Q: And the one caveat I would – I would insert there would be that, you know, our firm made the payment for your video deposition, correct?

A: … Again, I – really, Mr. Flores, I don't do billing.

Q: Yeah. Who does do billing for you?

A: That would be Caitlin McGroarty, and I'm not sure who she delegates out additional billing actions. You – you'd have to ask her.

Q: And she's primarily in Lake Charles?

A: She's the overarching practice manager. So most of her physical time is in Lake Charles, but she does go to the Houston office as well.

Q: Okay. And Elite Medical Wellness would have the copies of the checks themselves, right, in its – in its billing file?

A: I have no idea.

Q: Okay. Would Caitlin be the person to ask that question to?

A: Correct. Yes, sir.

*Id*. at 51:4-52:8.

When asked about the contract in place between Elite and Access, Dr. Hayes responded as follows:

Q: Is this the agreement that is currently in effect between Elite Medical Wellness and Access Healthcare Management?

A: Presumably, it is. You know how contracts go. You don't rely on them or really mess with them until and unless something goes sour or needs some leverage. So Access sends us patients. We provide the services that we're requested to provide. Access pays for those services in a timely fashion. I just don't muck around with the contract a lot. I don't need to.

*Id*. At 128:3-13.

When asked about the retention of payment records, again, Dr. Hayes deferred to others at Elite:

Q: How long does your office retain payment records and checks and so on from individuals or entities paying for treatments?

A: I don't know. I would defer (sic) you to Ms. Rougeau or Ms. McGroarty…

14

*Id*. at 137:23-138:3.

Dr. Hayes also denied knowing how many of his patients were referred to Elite by Access and what percentage of his patients that represents. *Id*. at 142:7-9 ("I don't know how many of my patients are referred to me from Access Healthcare Management"); 143:9-17 ("Q:… what percentage of Elite Medical Wellness's patients are referred by Access Healthcare Management or some – other case management? A: Yeah. I don't know.")

**D.    The court in the Western District of Louisiana previously compelled discovery from Elite relevant to same issues presented here.**

In the *Boutte* case, the federal district court compelled discovery from the 37 non-party patients to allow the plaintiffs to examine the relationship between Elite/Dr. Hayes and A&I.  *See* Ex. 14 at p. 1, n. 2.  To safeguard any privacy interests, the court ordered compelled "appropriately redacted documents reflecting or describing the total amount of payments received by [Elite] from January 2019 through the present for medical services provided to the A&I Client/Patients." *Id*. at p.1.  The Court also ordered Elite to produce documentary discovery on the following issues:

- "[A]ppropriately redacted invoices for the A&I Client/Patients who paid in cash or as self-pay from January 2019 through the present."

- "[A]ny document (including texts, emails, or other correspondence) reflective of any arrangement or agreement between [Elite] and A&I concerning what [Elite] charges for its services."

- [A]ny appropriately redacted invoice from any Client/Patient referred by A&I, as identified in the list provided by Movant, from January 2019 to present."

- [A]ny communications with any employee or representative of A&I about this subpoena."

- "Any correspondence or communication of any kind with any attorney, agent, representative, or an individual or entity associated with a party in the above referenced lawsuit, regarding this discovery request, subpoena, any document or record related to or responsive to this discovery, this lawsuit, or plaintiff in this lawsuit, either individually, collectively, or generally."

*Id*. at p. 7-17.

In denying certain discovery requests in *Boutte*, the court noted those requests did not "relate to the relationship between [Elite] and A&I or any bias on [Elite's] part. *Id*. at p. 10-12. Here, however, <u>the topics set out in Halliburton's notice of deposition are entirely focused on the nature and scope of its relationship with Access and A&I and on the bias of Elite's providers (Dr. Hayes, in particular)</u>.

**E.    Plaintiff's attempts to preclude Halliburton from discovery that goes to the heart of its defense are unpersuasive.**

**1. General litigation funding agreements are distinguishable from the medical funding arrangement at issue in this case.**

Medical funding agreements, like the one in this case, are significantly different than general litigation funding agreements.  First, under general litigation funding agreements, the funding company pays the plaintiff's lawyers, whereas under a medical funding agreement, the funding company pays the plaintiff's doctors.  Significantly, the lawyers do not testify at trial, whereas the doctors do.  As a result, the specter of witness bias looms much larger over medical funding agreements than it does over general litigation funding agreements.  This is particularly true when a plaintiff attempts to portray a doctor with whom his lawyers have a longstanding financial relationship, as is the case with Dr. Hayes and A&I, as a neutral and disinterested "treating physician."

Second, under general litigation funding agreements, the lawyers, rather than the funding companies, make litigation-related decisions.  Under medical funding agreements, however, the funding companies make litigation-related decisions such as which doctors to send a plaintiff to, what treatment to approve, and how much to pay for that treatment.

Indeed, as Plaintiff's own cited cases make clear, when general litigation funding companies cross the line and begin making litigation-related decisions, even general litigation

funding agreements become relevant. *See* Pla. Mot. at 11 (citing *VHT, Inc. v. Zillow Group, Inc.*, C15-1096JLR, 2016 WL 7077235, at *1 (W.D. Wash. Sep. 8, 2016)) (denying litigation funding discovery "*[w]ithout some objective evidence that any of [defendant's] theories of relevance apply to [the] case*") (emphasis added); *see also MLC Intellectual Prop., LLC v. Micron Tech, Inc.*, 14-CV-03657-SI, 2019 WL 118595, at *2 (N.D. Cal. Jan. 7, 2019) (denying litigation funding discovery on relevance grounds without a "*specific, articulated reason to suspect bias or conflicts of interest*") (emphasis added). Here, Halliburton has provided a clear theory of relevance along with evidence supporting that theory.

### 2. Plaintiff's conclusory allegations of undue burden are insufficient.

"The burden is on the party seeking the protective order to demonstrate good cause, which contemplates a particular and specific demonstration of fact as distinguished form stereotyped and conclusory statements." *Buc-ee's, LTD v. Bucks, Inc.*, No. H-17-818, 2017 WL 6398340, at * 1 (S.D. Tex. Oct. 12, 2017) (internal quotes omitted); *see also e.g.*, *Carnaby v. City of Houston*, No. 4:08-cv-1366, 2008 WL 4546606, at *1 (S.D. Tex. Oct. 10, 2008).

Plaintiff raises a claim of undue burden, not on his own behalf, but on behalf of Elite.  In doing so, Plaintiff relies on the type of conclusory statements this Court has previously stated would be insufficient to sustain the burden of a party moving for a protective order.  *See* Pla. Mot. at 11 (citing to Dr. Hayes' statements that the information at issue is allegedly not "practically knowable" or "not practically answerable"); *cf.*, *In re K&L Auto Crushers, LLC*, 627 S.W.3d at 253 (where a party's "own conscious, discretionary decision, such as how it chooses to store and organize its materials, causes discovery to be burdensome, the burden is not considered 'undue'").

Notably, under Texas law, Dr. Hayes and Elite have sacrificed protections from discovery to which they might otherwise be entitled as non-parties because of the financial stake they have

undertaken in the case. *See In re K&L Auto Crushers, LLC*, 627 S.W.3d at 254 (""[u]nlike most non-parties, the providers who treated [plaintiff] pursuant to letters of protection invested themselves in the outcome of this case and the amount of damages recovered, and because of that, they forfeit a degree of the protection our rules afford disinterested third parties who are subjected to third-party discovery.")

### 3. The discovery at issue is not privileged or work product.

Plaintiff argues that the court must quash Halliburton's subpoena because it "seeks information, documents, and communications... that are protected by the work-product doctrine and/or attorney-client privilege." *See* Pla. Mot. at 1. If that were correct, the numerous courts across the country referenced above would not have compelled the production of discovery related to medical funding arrangements. *See* Sec. V.A., *supra*.

Furthermore, the *Boutte* court, would not have compelled Elite to produce the documentary discovery it did. *See* Sec. V.D., *supra*. Indeed, among other things, the court compelled the production of communications that Plaintiff presumably argues are privileged: "Any correspondence or communication of any kind with any attorney, agent, representative, or an individual or entity associated with a party in the above referenced lawsuit, regarding this discovery request, subpoena, any document or record related to or responsive to this discovery, this lawsuit, or plaintiff in this lawsuit, either individually, collectively, or generally." *Id*.

Notably, neither Dr. Hayes nor Plaintiff's counsel raised concerns over attorney-client privilege or work product during Dr. Hayes' deposition. Likewise, neither Plaintiff nor Elite have produced a privilege log. Furthermore, Dr. Hayes' testimony negates any claim of work product. He describes Access as a mere "case management service that we work with who refers us patients that need behavioral health treatment." *See* Ex. 2 at 36:23-37:2. And, he denies any sort of

relationship at all with A&I.  *Id*. at 146 ("Q: Okay. How would you describe the relationship with Arnold & Itkin, between Elite Medical Wellness and Arnold & Itkin? A: There is no relationship between Elite Medical Wellness and Arnold & Itkin.).  According to Dr. Hayes, "Access very much behaves like a private workers' comp…"  *Id*. at 37:9.  As Dr. Hayes describes it, his relationship with Access is an ordinary course of business relationship, not one that would give rise to work product protection.

Even if the information at issue was considered work product, however, Halliburton has shown a substantial need for the information and undue hardship in obtaining it from another source.  Plaintiff cites the *Ocwen Loan Servicing* case in support of his claim of work product.  As a starting point, the *Ocwen* opinion dealt with general litigation funding agreements, rather than the medical funding agreements at issue here.  *United States v. Ocwen Loan Servicing, LLC*, No. 4:12-cv-543, 2016 WL 1031157, at *3 (E.D. Tex. Mar. 15, 2016).  The important distinction between the two is discussed above.

Additionally, the *Ocwen* court found the defendants had not shown substantial need "at this time" because "Defendants have not stated that they plan on calling or deposing any of the litigation funders, or that they plan to make an issue of the litigation funding agreements at trial." *Id*. at 7.  Here, on the other hand, Defendants have made clear that they intend to make an issue of the medical funding agreement at trial and have served both a document and deposition subpoena on the medical funding company.  *See* Exs. 16-17.

Regarding undue hardship, Halliburton tried to obtain the pertinent information from Dr. Hayes during his individual deposition, but Dr. Hayes repeatedly claimed ignorance and referred Halliburton to others in his office.  *See* Sec. V.C., *supra*.

**4. The Court should simply modify the subpoena if it finds the topics overbroad.**

"Generally, modification of a subpoena is preferable to quashing it outright." *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir. 2004); *see also e.g.*, *In re Metal Process International, L.P.*, No. M-13-036, 2013 WL 12155025, at *2 (S.D. Tex. May 13, 2013) (same); *Glibreath v. Brookshire Grocery Co.*, No. 6:17-CV-618-JDK, 2019 WL 13146720, at *1 (E.D. Tex. Jan. 2, 2019). Should the Court find the topics in the deposition subpoena to Elite to be overbroad, the Court should simply modify them accordingly rather than quash the subpoena entirely.

## VI. CONCLUSION AND PRAYER

Elite and Dr. Hayes have a vested interest in a favorable result for Plaintiff in this case. A&I refers personal injury plaintiffs to Access who then refers to them to Elite. The providers at Elite, including Dr. Hayes, then issue favorable diagnoses at inflated rates, and Access then purchases Elite's accounts receivable at a discount. Elite's providers, including Dr. Hayes, then testify favorably for plaintiffs at depositions and at trials on issues such as causation, necessity of treatment, and the reasonableness of charges. They do so to secure a continued stream of personal injury plaintiffs as clients from A&I through Access. A&I then presents Plaintiff's inflated medical costs as part of its damages number and settles up with Access at some lower amount after a judgment or settlement.

The discovery Halliburton seeks is relevant to the bias of Elite's providers, including Dr. Hayes, who will be testifying at trial, and to the reasonable value of the medical services Elite provided. For the reasons set forth herein, Halliburton Energy Services, Inc. respectfully requests that the Court (1) allow the Western District of Louisiana to adjudicate this dispute, as related discovery matters are already pending there, or (2) deny Plaintiff's motion for protection.

Dated: February 28, 2025

Respectfully submitted,

**AHMAD, ZAVITSANOS &
MENSING, PLLC**

BY: _/s/ Rey Flores_
Joseph Y. Ahmad (attorney-in-charge)
Texas State Bar No. 00941100
Federal I.D. No. 11604
joeahmad@azalaw.com
Rey Flores
Texas State Bar No. 24068777
Federal I.D. No. 3351160
rflores@azalaw.com
Sammy Ford
Texas State Bar No. 24061331
Federal I.D. No. 950682
sford@azalaw.com
Kevin Leyendecker
Federal I.D. No. 28415
State Bar No. 00784472
1221 McKinney, Suite 2500
Houston, Texas 77010
Telephone: 713-665-1101
Facsimile: 713-655-0062

**ATTORNEYS FOR DEFENDANT
HALLIBURTON ENERGY
SERVICES, INC.**

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned certifies that on February 28, 2025, a true and correct copy of the foregoing document was served on all counsel of record by electronic service.

_/s/ Rey Flores_
Rey Flores