9/3/2024 9:31 PM
Marilyn Burgess - District Clerk Harris County
Envelope No. 91606913
By: DAVIA FORD
Filed: 9/3/2024 9:31 PM

**Exhibit**

**3**

MASTER FILE NO. 2022-36264

| | | |
|---|---|---|
| IN RE HURRICANE ZETA LITIGATION | § | |
| | § | IN THE DISTRICT COURT |
| MDL NO. 22-0300 | § | |
| | § | 113TH JUDICIAL DISTRICT |
| THIS DOCUMENT RELATES TO ALL | § | |
| CASES | § | HARRIS COUNTY, TEXAS |

---

### TRANSOCEAN'S SUBMISSION OF EVIDENCE AND AUTHORITIES IN SUPPORT OF PERMITTING THE INTRODUCTION OF EVIDENCE CONCERNING PLAINTIFFS' HEALTHCARE BILLING AND FUNDING ENTITIES

---

Defendants Transocean Offshore Deepwater Drilling Inc., Triton Voyager Asset Leasing GmbH, and Triton Voyager asset Leasing GmbH, Asgard US (collectively "Transocean") submit this brief on the introduction of evidence concerning Plaintiffs' healthcare billing-and-funding entities, as set forth below.

### I.    Introduction

By law, Plaintiffs may only recover medical expenses they have "actually incurred." *Manderson v. Chet Morrison Contractors, Inc.*, 666 F.3d 373, 382 (5th Cir. 2012). Those expenses must also be reasonable and necessary. *In re K&L Auto Crushers, LLC*, 627 S.W.3d 239, 254 (Tex. 2021); *In re ExxonMobil Corp.*, 636 S.W.3d 631, 634-35 (Tex. 2021). And among other things, evidence of a medical provider's financial interest in the litigation is probative of the "reasonableness" of their charges. *See K&L Auto Crushers*, 627 S.W.3d at 254.

Each of the Plaintiffs in this case is represented by the same counsel ("A&I"). Through their joint counsel, Plaintiffs have orchestrated at least two cleverly designed-for-litigation billing schemes with alleged medical providers in Houston and Lake Charles. These schemes are

fundamentally designed to achieve two things: (1) artificially inflate Plaintiffs' alleged medical costs (while Plaintiffs themselves pay nothing); and (2) obscure the providers' interests and incentives by routing payments and stakes in the outcome of this litigation through middleman entities.

Plaintiffs have achieved the first half of this scheme, securing outlandish "bills," diagnoses, and treatments from the interested medical providers handpicked by A&I. Plaintiffs' motions *in limine* seek to capitalize on the rest by preventing Defendants from showing the motives behind the manufactured evidence.

Because these funding schemes bear weight on the credibility of expected witnesses, and the reasonableness and necessity of Plaintiffs' alleged medical expenses, the evidence of these financial interests is relevant and admissible.

## II.    <u>Factual Background</u>

After the first plaintiff filed suit in this case, Plaintiffs' attorneys sent solicitation letters to many of that plaintiff's 100+ shipmates on the Deepwater Asgard. Those letters claimed there is "strength in numbers" and invited the recipients to "join our fight."[1] For some, the letters worked; with A&I filing lawsuits on behalf of the 23 current Plaintiffs. In these lawsuits, Plaintiffs claim various physical and mental injuries prevent them from working, even though none had reported

---

[1] *See, e.g.*, Exhibits 1-2, Letters from Arnold & Itkin, February 23, 2021 and June 1, 2021.

any injury;[2] none had stopped working;[3] and none had sought medical attention for the alleged injuries[4] until receiving the solicitation letters.

After the lawsuits were filed, Plaintiffs began seeing the same medical providers as each another, despite the Plaintiffs themselves living many cities or states away.[5] Among others:

- At least 19 Plaintiffs see three providers associated with Elite Medical Wellness ("Elite Medical") in Lake Charles, Louisiana.[6] None of those Plaintiffs live in Lake Charles.[7]
- At least 13 Plaintiffs see four providers associated with Advanced Diagnostics in Houston, Texas.[8] None of those Plaintiffs live in Houston.[9]

These provider groups—Elite Medical in Lake Charles and Advanced Diagnostics in Houston— along with their middleman affiliates (Access Healthcare and CareCapital, respectively) are central to the funding scheme underlying Plaintiffs' medical claims.

---

[2] *See,* e.g., Deposition of Jerry Branton 41:10-14 (excerpts attached as Exhibit 3) ("Q. And of course the departure log asked whether or not you had an injury. Correct? A. Yes, sir. Q. And what did you put on the departure log? A. As you can see, I put "No."").

[3] *See*, e.g., Deposition of Drew Hudson 80:20-25 (excerpts attached as Exhibit 4) ("Q. How many more hitches did you work on the Asgard after the storm? A. I don't remember how many hitches it was. Q. Four? A. I don't remember. I guess it was till May, maybe, June, maybe. Somewhere around there.").

[4] *See,* e.g., Deposition of Kent Bates 38:8-11 (excerpts attached as Exhibit 5) ("Q. Did you hire an attorney before you sought medical attention? A. Yes, sir.").

[5] See Attachment A (chart of Plaintiffs' most common medical providers); Attachment B (chart of Plaintiffs' residences).

[6] See Attachment A p.1.

[7] See Attachment B.

[8] See Attachment A p.1.

[9] See Attachment B. *See also generally* Attachment A (noting additional examples).

To be sure, because the Plaintiffs live hundreds and sometimes thousands of miles away from these providers, many must drive long hours or take plane trips just to see them,[10] even when that trip itself makes their alleged "injuries" worse.[11] This includes, for example, the Plaintiffs from New England, who drive to Boston, fly to Houston, and then drive to Lake Charles for routine psychiatric treatment.[12] Plaintiffs also make these cross country trips **even though none of the providers take insurance**.[13] Essentially, the insured Plaintiffs refuse to use their insurance and instead travel across the country to see the providers hand-picked by their lawyers.[14]

---

[10] See, e.g., Deposition of Stefan Mulyca 88:9-15 (excerpts attached as Exhibit 6); Deposition of Timothy Baker 47:2-4 (excerpts attached as Exhibit 7); Deposition of Kent Bates 38:16-20 (excerpts attached as Exhibit 5); Deposition of Drew Hudson 111:12-14 (excerpts attached as Exhibit 4); Deposition of Joshua Stefanic 187:23-25 (excerpts attached as Exhibit 8); Deposition of Montie Watkins, Jr. 119:7-11 (excerpts attached as Exhibit 9); Deposition of Richard Rhodes 158:20-21 (excerpts attached as Exhibit 10); Deposition of Bradford Glass 155:14-156:2 (excerpts attached as Exhibit 11).

[11] See, e.g., Deposition of Stefan Mulyca 88:9-15 (excerpts attached as Exhibit 6) ("Q. Okay. So Sunday, you drove to Houston from Rayville? A. Yes. Q. All right. And as you described – discussed with your doctors, prolonged sitting and driving in cars can make it a little bit worse? A. Yes.").

[12] See Deposition of Daniel Flink 132:5-133:6 (excerpts attached as Exhibit 12); Deposition of Justin Nichols 45:17-20 (excerpts attached as Exhibit 13).

[13] Deposition of Dr. Hayes 30:19-22 (excerpts attached as Exhibit 14) ("Q. So you don't -- you don't bill to any third-party payors at all, no Medicare, Medicaid, private insurance, nothing? A Not insurances."). Deposition of CareCapital Corporate Representative 69:22-70:1 (from Cause No. 2021-17614 in 129th District Court of Harris County, Texas) (excerpts attached as Exhibit 15) ("Q. Okay. Let's get at it this way. Does CareCapital work with any patients who have health insurance? A. Not to my understanding.").

[14] See, e.g., Deposition of Timothy Baker 126:9-18 (excerpts attached as Exhibit 7) ("Q. Okay. Do you send, or does your wife to your knowledge, send a check to Transocean to pay your portion of the premiums? A. I believe she does. Q. Have you used that, to your knowledge, to get any other kind of medical care since -- since October of 2020? A. I haven't. Q. Has your wife used it for her care? A. Yes."); Deposition of Craig Graham 53:18-20 (excerpts attached as Exhibit 16) (" Q. You didn't submit your medical bills to Cigna, did you? A. I did not."); Deposition of Joshua Stefanic 138:10-16 (excerpts attached as Exhibit 8) (" Q. For any of the medical bills that you have incurred from the time of Hurricane Zeta to present, have you submitted any of those to your healthcare insurance? A. No."); Deposition of Jeffrey Wright 149:15-21 (excerpts attached as Exhibit 17) (" Q. So only since October 28, 2020, are you pursuing medical treatment without making use of your health care insurance? A. That would be correct. Q. The health care insurance that you get, that is an employment benefit from Transocean? A. Yes.").

Plaintiffs freely admit that A&I directs which providers they see for their alleged care.[15] Plaintiffs' attorneys even schedule the doctor appointments and arrange for transportation.[16] For example, Plaintiff Nichols had an MRI the day after his deposition but did not know where it was or even what it was for. Instead, a driver had been arranged to take him.[17]

Yet, while Plaintiffs receive regular treatments from these cross-country providers, Plaintiffs do not pay a penny of the charges.[18] In fact, Plaintiffs never even see the bills from these

---

[15] *See, e.g.*, Depositions of Kent Bates 37:18-25 (excerpts attached as Exhibit 4) ("Q. When was the first time you went to see a doctor? A. My first time seeing a doctor, I want to say I was -- I was recommended a doctor. Put it like that. Q. Yes, sir. Did you -- who made a recommendation? A. My attorney. My lawyer."); Deposition of Ethan Lambert part II 196:5-10 (excerpts attached as Exhibit 18) (" Q. Let me ask you about Dr. Calindy. I take it the reference you got was from your attorneys? A. Well, they gave me a reference to a good doctor because I didn't know of anybody or what direction I needed to go."); Deposition of Joshua Stefanic 93:14-17 (excerpts attached as Exhibit 8) (" Q. How did you get to see Dr. Kalidindi? A. I was given some referrals – not referrals -- references after speaking with attorneys of potential people."); Deposition of Jeffrey Wright 9:25-10:4 (excerpts attached as Exhibit 17) ("Q. Understood. Okay. Have you sought medical attention since Hurricane Zeta with anyone other than a medical professional provided to you by your attorneys? A. My attorneys, basically what they have given to me is recommendations for doctors."); Deposition of Timothy Baker 47:23-25 (excerpts attached as Exhibit 7) (" Q. So some of the guys on the rig, on the Asgard, recommended that you talk to these doctors? A. No. Some of the guys from the lawsuit.")

[16] *See, e.g.*, Deposition of Justin Nichols 49:2-23 (excerpts attached as Exhibit 13); *see also generally All Coast, LLC v. Shore Offshore Servs., LLC,* No. CV 21-258, 2023 WL 4996551, at *13 (E.D. La. July 11, 2023), report and recommendation adopted, No. CV 21-258, 2023 WL 6994180 (E.D. La. Oct. 24, 2023) ("[T]he Court issued a follow-up order inquiring as to who paid for his travel to Texas for his surgery. In Burnett's supplemental response, he stated that the flights were purchased for him by **a scheduling coordinator at his counsel's firm of Arnold and Itkin**.")

[17] Deposition of Justin Nichols 49:2-23 (excerpts attached as Exhibit 13).

[18] *See, e.g.*, Deposition of Kent Bates 107:15-19 (excerpts attached as Exhibit 5) ("Q. Okay. So going back to the medical expenses, all the medical care that you have received, psychologist, psychiatrist, surgery that you've had, you've not paid a penny? A. No, sir."); Deposition of Daniel Flink 115:15-18 (excerpts attached as Exhibit 12) ("Q. All right. Have you ever paid any medical bills associated with medical care that you had relating to the incident aboard the Asgard? A. No."); Deposition of Craig Graham 54:9-12 (excerpts attached as Exhibit 16) ("Q. Have you paid for any of the medical care that you received for your injuries? A. No, not yet."); Deposition of Gewoski Hewitt 52:20-53:1 (excerpts attached as Exhibit 19) ("Q. Have you been required to pay for any of the medical treatment you have received from October 28th, 2020 to date? A. No. Q. You have no out-of-pocket medical expense to date. Correct? A. Not as of today, no."); Deposition of Stefan Mulyca 90:19-21 (excerpts attached as Exhibit 6) ("Q. Okay. Have you spent any dollars yourself on those medical bills? A. I have not at this time"); Deposition of Justin Nichols 61:14-18 (excerpts attached as Exhibit 13) ("Q. Have you actually paid any money to these providers is what I'm asking. A. Not that I'm aware of yet."); Deposition of Richard Rhodes 130:15-17 (excerpts attached as Exhibit 10) ("Q. The medical bills that you've incurred for the treatment that you've had, have you paid those yourself? A. No, sir."); Deposition of Hunter Voss 92:5-8 (excerpts attached as Exhibit 20) ("Q. Have you personally paid any medical bills for any injuries that may be related to what -- any -- the incident on the Asgard? A. I have not."); Deposition of Ethan Lambert part II 194:9-12 (excerpts attached as Exhibit 18) ("Q. Now, with regard to your medical bills, have you had to pay any outside medical bills? A. No, not yet, no, sir. I'll have to cross that whenever I cross it, man.").

providers. Plaintiffs also don't know if or how the bills are being paid and have no idea how much they are being charged, if anything.[19]

**The reason for this absurdity is simple: the "bills" from the providers were not created to procure payment. They were created to be shown in the courtroom.**

Specifically, the alleged payors of these manufactured "bills" are simply middleman affiliates associated with the providers themselves—CareCapital for Advanced Diagnostics and Access Healthcare for Elite Medical. Plaintiffs have attempted to suggest via written discovery that the middleman entities (CareCapital; Access Healthcare) are merely third parties that have purchased legitimate receivables from the providers to seek collection.[20] However, in reality these "collection" entities are far from arms-length.

---

[19] *See, e.g.*, Deposition of Glen Gill 158:10-12 (excerpts attached as Exhibit 21) ("Q. Do you have any medical providers that are sending you bills to your house? A. No, not that – none that I can recall."); Deposition of Bradford Glass 156:14-18 (excerpts attached as Exhibit 11) ("Q. So, they've sent invoices -- these doctors have sent invoices to you to pay? Is that what you're saying? A. I can't recall. I don't -- I don't know if I got them or not, to be honest with you."); Deposition of Stefan Mulyca 91:2-6 (excerpts attached as Exhibit 6) ("Q. Okay. What about at Allied Health? Have you paid any bills or have you been invoiced for any of your treatment? A. I have not been invoiced for any of my treatments there."); Deposition of Ethan Lambert part II 194:21-22 (excerpts attached as Exhibit 18) (" Q. Are you receiving any medical bills? A. No, sir, not -- not to my knowledge."); Deposition of Gregory Malveaux 105:18-21 (excerpts attached as Exhibit 22) ("Q. Okay. You're not getting bills from Elite Medical Wellness each month to say, "Hey, Mr. Malveaux, you owe us" – A. I haven't gotten a bill."); Deposition of Justin Nichols 61:19-21 (excerpts attached as Exhibit 13) ("Q. Okay. Do you have invoices from any of them that they've sent to you? A. If I do, I'd have to ask my wife at home."); Deposition of Drake Riggs 143:23-144:1 (excerpts attached as Exhibit 23) ("Q. Mr. Riggs, as we sit here today, do you have any medical bills to your knowledge that are outstanding? A. I don't know."); Deposition of Roffell Smith 136:17-19 (excerpts attached as Exhibit 24) ("Q. Do you know who paid for Dr. Sanders? A. No. I don't -- I didn't -- I don't know who paid for it. I don't get into all that."); Deposition of Joshua Stefanic 113:6-7  (excerpts attached as Exhibit 8) ("Q. Have you received any bills? A. No."); Deposition of Hunter Voss 91:24-92:2 (excerpts attached as Exhibit 20) ("Q. Have you received any medical bills since the incident, relating to any injuries that occurred on the Asgard? A. I have not."); Deposition of Montie Watkins 112:6-16 (excerpts attached as Exhibit 9) ("Q. As we sit here today, Mr. Watkins, do you know of any outstanding medical bills that you owe? . . . A. Not off the top of my head. I haven't seen any figures. Q. Do you get any notifications sent to your house by either email or mail, where a healthcare provider's asking for you to pay invoices that are outstanding? A. No, sir."); Deposition of Jeffrey Wright 220:2-8 (excerpts attached as Exhibit 17) ("Q. The bill is addressed to you at your house. Do you receive bills from Dr. Brennan at your house? A. I have not received any that I can recall.").

[20] *See, e.g.,* Drew Hudson's Amended Response to Defendants' Third Set of Discovery Requests ("Access Healthcare Management is a third-party company that purchases health care receivables from providers and then steps into the shoes of providers to collect those bills.").

For instance, the Houston-based providers that Plaintiffs see per their counsel's direction are part of the umbrella organization called Advanced Diagnostics Healthcare Systems ("Advanced Diagnostics"). CareCapital is allegedly the "funding company" that "purchases" the "receivables" of Advanced Diagnostics. CareCapital is owned by Lucky Chopra. **Mr. Chopra also owns Advanced Diagnostics**.[21]



Because of this, any alleged "receivables" that Advanced Diagnostics purportedly "sells" to CareCapital stay within the Chopra family of companies. Accordingly, the "receivables"—*i.e.* the alleged charges for Plaintiffs' claimed care—can be priced at ***any*** amount or created from whole cloth before being "sold" by Advanced Diagnostics to CareCapital, without any real-world impact to these companies.

The higher the "billed" amounts, the higher the alleged damages, with CareCapital in a position to recover as the alleged owner of the inflated "receivables." In this way, the downstream providers at Advanced Diagnostics have every incentive to inflate charges and bill for unnecessary or phantom treatments before "selling" those alleged receivables to their affiliate, CareCapital.

---

[21] Deposition of Mark Previty 10:8-13; 21:12-19 (from Cause No. 2021-17614 in 129th District Court of Harris County, Texas) (excerpts attached as Exhibit 25).

The providers are further incentivized to provide favorable testimony to Plaintiffs to increase their affiliates' chances of collection.

Similarly, the entity known as Access Healthcare is ostensibly the company Plaintiffs' counsel uses to coordinate Plaintiffs' mental health treatments.[22] Both in this case and beyond, Access Healthcare refers personal-injury plaintiffs to the providers at Elite Medical Wellness in Lake Charles.[23]



Like CareCapital, Access Healthcare's relationship with Elite Medical includes a funding component, where Access Healthcare purports to "purchase" the alleged "receivables" and seek collection upon successful litigation. Access Healthcare and Elite Medical are also further intertwined via obscure financial arrangements seemingly intended to mask kickbacks and referral fees via generic "case management" services.[24] Thus, for the same reasons described above for Advanced Diagnostics/Care Capital, and also because Elite Medical relies on Access Healthcare for much of its business, Elite Medical's practitioners have every incentive to inflate receivables

---

[22] Deposition of Dr. Hayes 44:20-45:3 (excerpts attached as Exhibit 14).

[23] *Id.*

[24] See Dr. Hayes Deposition 57:6-25 (excerpts attached as Exhibit 14).

and provide favorable diagnoses and testimony so its partner, Access Healthcare, can potentially cash in on the "receivables" via success in this litigation.

In short, it is no coincidence that the 20+ Plaintiffs who live across the country have seen the same sets of medical providers for their allegedly unique ailments. None see their own providers. None use their own insurance. Instead, they see providers who are part of an opaque scheme created to inflate medical bills, increase the Plaintiffs' alleged damages, and increase the incentive that the providers provide favorable testimony for Plaintiffs at trial.

Evidence of a witness's bias and motive is fundamental to a fair trial. Because the relationships between Plaintiffs providers' and the collection entities is relevant to the providers' credibility and whether the treatment is necessary and the charges are reasonable. Prohibiting Defendants from introducing this evidence and crossing Plaintiffs' witnesses on these issues would not only be profoundly prejudicial and unfair, it would be contrary to Texas law.

### III.    Argument and Authorities

Texas law expressly allows parties to examine witnesses regarding their bias and present evidence regarding such bias. *See* Tex. R. Civ. P. 613(b) ("Witness's Bias or Interest"); *In re Plains Marketing, L.P.*, 195 S.W.3d 780, 782 (Tex. App.— Beaumont 2006, orig. proceeding) ("proof of bias may be offered to impeach the credibility of a witness"). A defendant's liability for medical costs is "limited to a reasonable amount." *In re K&L Auto Crushers*, 627 S.W.3d at 254 ; *In re ExxonMobil Corp.*, 636 S.W.3d at 634-35 ("reasonableness is a well-settled common-law limitation on recoverable expenses"). The Texas Supreme Court has made clear that, whether a medical provider ***has secured a financial interest*** in the outcome of litigation is probative of the reasonableness of the charges. *See K&L Auto Crushers*, 627 S.W.3d at 254 (emphasis added).

The Texas Supreme Court has also held that a plaintiff cannot recover more than the ***actual expenses*** for its medical care. *Haygood v. De Escobedo*, 356 S.W.3d 390 (Tex. 2011). Texas law also limits a plaintiff's recovery to only the ***discounted amount*** of the medical care, and limits evidence of medical expenses to the amount paid. TEX. CIV. PRAC. & REM. CODE § 41.0105; *Haygood v. Garza de Escabedo*, 356 S.W.3d 390 (Tex. 2011). "To impose liability for medical expenses that a health care provider is not entitled to charge does not prevent a windfall to a tortfeasor; it creates one for a claimant. . . ." *Haygood*, 356 S.W.3d at 365.

A.    **CareCapital's funding of Plaintiffs' medical providers creates bias and calls into question the reasonableness and necessity of Plaintiffs' damages.**

As explained above, because CareCapital funds Advanced Diagnostics' providers from successful personal-injury claims, the medical providers have "invested themselves in the outcome of this case and the amount of damages recovered." *See K&L Auto Crushers*, 627 S.W.3d at 254. Moreover, because CareCapital effectively "purchases" Plaintiffs' medical bills from itself, the typical link between medical bills and the ***actual*** expenses (or discounted amounts) for Plaintiffs' medical care simply does not exist in this case.

1.    **CareCapital's funding creates bias for the Advanced Diagnostics medical providers.**

Plaintiffs have seen a variety of medical providers in the Advanced Diagnostics Healthcare System, including: AD Hospital East, River Oaks Hospital and Clinic, Advanced Surgeons & Physicians Network, Texas Brain Center, and Chopra Imaging.[25] When an Advanced Diagnostics

---

[25] Mark Previty Deposition 16:10-17:12 (excerpts attached as Exhibit 25); *see* Attachment A.

provider sees a personal-injury plaintiff, it does not work with the patient's insurance.[26] Instead, the patient signs an assignment of benefits to the provider "every time."[27]

However, the Advanced Diagnostics providers do not try and recover the receivables themselves. Instead, CareCapital "purchases" the personal-injury receivables from each Advanced Diagnostics provider.[28] Then, CareCapital uses the receivables as collateral to obtain a line of credit from a lender and parcels out portions to each Advanced Diagnostics provider on a monthly basis.[29] When a personal-injury case concludes by settlement or verdict, the payments then go to CareCapital, in part to satisfy the loans.[30]



In essence, CareCapital is the collection arm of the Lucky Chopra company group, of which Advanced Diagnostics is a part. And in this way, the Advanced Diagnostics providers depend on CareCapital—and successful personal-injury collections—to function.

---

[26] CareCapital Corporate Representative Deposition 69:22-70:1 (excerpts attached as Exhibit 15).

[27] Mark Previty Deposition 75:14-25 (excerpts attached as Exhibit 25).

[28] Mark Previty Deposition 123:9-24 (excerpts attached as Exhibit 25).

[29] Mark Previty Deposition 127:24-128:19; 134:7-135:8 (excerpts attached as Exhibit 25).

[30] Mark Previty Deposition 124:15-20 (excerpts attached as Exhibit 25).

This financial arrangement naturally incentivizes the providers to find "something wrong" with Plaintiffs to help obtain successful verdicts or settlements. And because CareCapital funds the providers, and likewise has pressure to pay off the providers' loans, the providers in turn are incentivized to offer favorable diagnoses and testimony. Otherwise, their funding company stands to recover nothing.[31]

### 2. CareCapital's funding inflates and obfuscates Plaintiffs' medical bills.

The details of CareCapital's funding of Advanced Diagnostics also allow and even encourage the providers to exaggerate the bills generated for Plaintiffs' care. As described above, CareCapital disburses a monthly payment to each Advanced Diagnostics provider in exchange for the receivables. But, critically, CareCapital's payments to the providers are not based on the amount of receivables it allegedly "purchases."[32] Instead, CareCapital determines how much to fund each Advanced Diagnostics provider "based on need."[33] In other words, as Advanced Diagnostics Healthcare System's former CFO confirmed, "there is no correlation" between a bill generated by Advanced Diagnostics and the amount it receives from CareCapital for the allegedly underlying care.[34] Accordingly, there is no way to discern the amount, if any, that was allegedly "paid" for the alleged medical services.

Moreover, this "need-based" funding setup allows for and encourages exaggerated and inaccurate billing. By way of example, if Plaintiff A goes to AD Hospital East for an office visit; AD Hospital East can freely add unnecessary or phantom procedures or treatments to the bills, or

---

[31] Corporate Representative of CareCapital Deposition 38:16-23 (excerpts attached as Exhibit 15).

[32] Mark Previty Deposition 136:5-25 (excerpts attached as Exhibit 25).

[33] *Id.*

[34] Mark Previty Deposition 134:7-135:8 (excerpts attached as Exhibit 25).

charge inflated amounts, knowing that CareCapital will "purchase" the billed amount regardless.[35] In fact, it is in AD Hospital East's interest to inflate those bills because then CareCapital will be better positioned to recover more funds in lawsuits and pay off the lines of credit AD Hospital East relies on. Therefore, this dynamic not only calls into question the necessity of Plaintiffs' alleged treatments, but also the reasonableness of the alleged bills.

To be clear, the above-described setup is believed to be the tip of the iceberg. Defendants have learned that CareCapital also has oral, under-the-table agreements with non-Advanced Diagnostics providers, e.g. Dr. Henry Small and Dr. Rubin Bashir. These "external" providers and CareCapital are careful to avoid putting agreements and fee schedules in writing to the extent possible, and their rates are allegedly determined by verbal agreement.[36] This arrangement of course allows CareCapital to arrange for off-the-books payments to these providers, despite the providers still "billing" Plaintiffs inflated amounts for the lawsuits.[37]

This intertwined relationship is why Plaintiffs' medical bills are routinely inflated by absurd amounts for the billed-for care, as Defendants' experts are prepared to explain at trial. As one example, on June 20, 2023, an AD Hospital billed Plaintiff Hudson $7,350 dollars for a nerve test and $4,000 for a needle test.[38] The Medicare Physician Fee Schedule lists the rates for those

---

[35] See Mark Previty Deposition pp.134-136 (excerpts attached as Exhibit 25).

[36] See CareCapital Corporate Representative Deposition 15:19-16:20 (excerpts attached as Exhibit 15).

[37] CareCapital Corporate Representative Deposition 25:18-26:4 (excerpts attached as Exhibit 15) ("Q. Okay. And the rates in Exhibit that CareCapital pays the providers, those are obviously less than what the providers are charging. Do you see that? A. Yes. Q. And so, for instance, Dr. Bashir charged $46,000 and some change, $46,413.90, CareCapital has paid him $10,000, correct? A. Yes. Q. Do you know why the providers have agreed to accept less than the charges? A. I do not.").

[38] See Exhibit 26, AD Hospital Invoice (Hudson R001016).

same treatments as $115.58 and $59.43 respectively.[39] And had Hudson used his UHC insurance,[40] Hudson would have been only charged $502.80 for the needle test.[41]

In another instance, on July 31, 2023, the River Oaks Hospital and Clinic charged Hudson $8,208.44 for OR Services (CPT Code 62323).[42] The Medicare Physician Fee Schedule lists the rates for that treatment as $115.58.[43] With insurance, Hudson would have only been charged $314.25.[44] Even more concerning, Advanced Diagnostics lists its own cash price for CPT Code 62323 as only $2,500.[45]

In a third example, on March 11, 2023, the River Oaks Hospital and Clinic charged Hudson $6,334.00 for a spinal cord MRI (CPT Code 72141 TC).[46] The Medicare Physician Fee Schedule lists the rates for that treatment as $132.30.[47] With insurance, Hudson would have only been charged $796.18.[48]

In sum, the relationship between the entity that stands to gain from this litigation (CareCapital) and Plaintiffs' Houston-based medical providers (Advanced Diagnostics) incentivizes the exact result found here: grossly inflated bills, questionable and unsupported treatments, and slanted diagnoses and biased testimony. It is critical that the jury be allowed to

---

[39] *See* Exhibit 27, CMS Medicare Physician Fee Schedule - CPT Code 95886.

[40] *See* Exhibit 28, Hudson - Cardiology Associates Billing Records.

[41] *See* Exhibit 29, Advanced Diagnostics Price Transparency Rates.

[42] *See* Exhibit 30, River Oaks Hospital and Clinic Invoice (S. Hudson R001019).

[43] *See* Exhibit 31, CMS Medicare Physician Fee Schedule - CPT Code 62323.

[44] *See* Exhibit 29, Advanced Diagnostics Price Transparency Rates.

[45] *See* Exhibit 29, Advanced Diagnostics Price Transparency Rates.

[46] *See* Exhibit 32, River Oaks Hospital and Clinic Invoice (S. Hudson R001010).

[47] *See* Exhibit 33, CMS Medicare Physician Fee Schedule - CPT Code 72141 TC.

[48] *See* Exhibit 29, Advanced Diagnostics Price Transparency Rates.

consider this evidence because it is directly relevant to an issue upon which Plaintiffs have the burden of proof—that their treatment was necessary and the charges for their treatment were reasonable. This evidence also directly speaks to the issue of whether the providers have an interest in the outcome and are biased.

**B.**    **Access Healthcare's control of Plaintiffs' psychological care via Elite Medical also incentivizes high bills, favorable diagnoses, and excessive treatments.**

As explained above, because Elite Medical is dependent on Access Healthcare (the collection entity) for business, its providers are incentivized to provide favorable diagnoses and unnecessary treatment to increase the potential value of Access Healthcare's recovery. Access Healthcare's other financial arrangements with these providers also hide the true amounts, if any, paid for the alleged care.

**1.**    **Access Healthcare's funding of the providers creates bias.**

Prior to purchasing Plaintiffs' alleged bills from Elite Medical, Access Healthcare referred Plaintiffs to Elite Medical.[49] Despite allegedly having no signed contracts with Plaintiffs,[50] Access Healthcare manages Plaintiffs' psychological care on behalf of A&I.[51] That role is also not specific to this case; when A&I has a case that needs a psychiatrist or cognitive doctor, Access Healthcare sends the patient to Elite Medical in Lake Charles.[52]

---

[49] Dr. Hayes Deposition 44:20-45:3 (excerpts attached as Exhibit 14).

[50] *See* Deposition of Roffell Smith 149:15-18 (excerpts attached as Exhibit 24).

[51] *See* Dr. Hayes Deposition 44:25-45:1 (excerpts attached as Exhibit 14).

[52] Dr. Hayes Deposition 44:25-45:3; 46:16-20 (excerpts attached as Exhibit 14).

Much of Elite Medical's business relies on these referrals from Access Healthcare.[53] In total, litigation plaintiff referrals account for half of Elite Medical's business.[54] And, Dr. Hayes, the owner of Elite Medical,[55] has "testified on behalf of Arnold and Itkin clients more than any other law firm."[56]

Because of this, if the providers at Elite Medical do not provide plaintiff-friendly diagnoses, it could upend their entire business model. Access Healthcare's collections of plaintiffs' receivables depend entirely on Elite Medical's diagnoses. If Elite Medical does not find issues with a referred plaintiff, Access Healthcare will be unable to collect. Moreover, Access Healthcare may begin to look elsewhere to find a provider that will help it collect.

Again, this *quid pro quo* financial relationship is not only probative of the providers' diagnoses and charges, but it also raises the question of whether the providers are biased.

### 2. Access Healthcare's funding also inflates Plaintiffs' healthcare costs.

Plaintiffs seemingly claim 100% of their Elite Medical "bills" as damages. However, as with CareCapital/Advanced Diagnostics, Elite Medical is not actually paid the billed amounts by Access Healthcare. Instead, Access Healthcare allegedly "pays" Elite Medical only a portion of those bills. Then, Access Healthcare's payments to Elite Medical are artificially and obscurely reduced by payments from **Elite Medical** to **Access Healthcare** for an undisclosed percentage of

---

[53] Dr. Hayes Deposition 59:19-60:2 (excerpts attached as Exhibit 14) ("I know this particular service line . . . we do about 875 visits per month across the board of all types."), 45:19-25 (" Q. What's the name of the group that you said has the relationship with Arnold & Itkin that is 21sending the clients? A Yeah, so it's my understanding that's Access Healthcare Management.").

[54] Dr. Hayes Deposition 33:11-35:8 (excerpts attached as Exhibit 14) ("Q Do you know what percentage of the patients at least are referred to you by attorneys? . . . A. I would say about -- by count, 75, 80 percent of those are plaintiff side; the rest of them would be defense side. .... Q. I know. But 70 to 85 percent is of what number? Seventy to 85 percent of the 2200? A No, ma'am. So of the two-thirds that are not simply coming in for anxiety management, depression management, PTSD management.")

[55] Dr. Hayes Deposition 60:5-7 (excerpts attached as Exhibit 14).

[56] Dr. Hayes Deposition 45:5-8 (excerpts attached as Exhibit 14).

the total fees as "case management services."[57] Through this arrangement, Access Healthcare can reduce the actual amounts provided to Elite Medical to whatever amount the parties separately agree on. So even though Elite Medical ostensibly charges "full rates" to the Plaintiffs, those rates are never realized or paid by anyone.

As with the above, it is paramount that the jury understand the financial relationships and incentives behind the medical providers and inflated bills that Plaintiffs intend to offer into evidence.

## CONCLUSION

Evidence of CareCapital and Access Healthcare's funding of Plaintiffs' medical bills is necessary to show bias by the medical providers and for the jury to properly assess Plaintiffs' and their physicians' credibility and the reasonableness and necessity of Plaintiffs' medical bills. Every decision Plaintiffs' facilities and doctors make—what to charge, what diagnoses, etc.—must be viewed in the proper context; specifically that they have "invested themselves in the outcome of this case and the amount of damages recovered." *See K&L Auto Crushers*, 627 S.W.3d at 254. Therefore, evidence of Plaintiffs' healthcare billing and funding entities is relevant and admissible. Its exclusion would be unfair, prejudicial, and contrary to Texas law.

Respectfully submitted,

*/s/ Shahmeer Halepota*
AHMAD ZAVITSANOS & MENSING, PLLC
**John Zavitsanos**
State Bar No. 22251650
jzavitsanos@azalaw.com
**Shahmeer Halepota**
State Bar No. 24109968
shalepota@azalaw.com
**Daryl Moore**
State Bar No. 14324720

---

[57] Dr. Hayes Deposition 57:6-25 (excerpts attached as Exhibit 14).

dmoore@azalaw.com
**Kevin Leyendecker**
State Bar No. 00784472
kleyendecker@azalaw.com
**Alfredo Montelongo**
State Bar No. 24098127
amontelongo@azalaw.com
**Michael Andrews**
State Bar No. 24126878
mandrews@azalaw.com
**Karina Sanchez-Peralta**
State Bar No. 24137177
ksanchez@azalaw.coom
**DJ Ringquist**
State Bar No. 24110280
dringquist@azalaw.com
**Taylor Freeman**
State Bar No. 24083025
tfreeman@azalaw.com
1221 McKinney, Suite 2500
Houston, Texas 77010
Tel: (713) 655-1101

HOGAN LOVELLS US LLP
**Bruce D. Oakley**
State Bar No. 15156900
Bruce.Oakley@hoganlovells.com
**S. Lee Whitesell**
State Bar No. 24093356
Lee.Whitesell@hoganlovells.com
609 Main Street, Suite 4200
Houston, TX 77002
Tel: (713) 632-1400

**COUNSEL FOR TRANSOCEAN**

## **CERTIFICATE OF SERVICE**

I certify that on September 3, 2024, the foregoing motion was served by on all counsel of record counsel of record via e-service.

*/s/ Shahmeer Halepota*

**Attachment A**
**MOST SEEN MEDICAL PROVIDERS**

| Name of Provider | Medical Service Provider | Location | How many Plaintiffs have seen |
|---|---|---|---|
| Patrick Hayes | Elite Medical Wellness | Lake Charles, Louisiana | 21 |
| Davis Woodward, LPC | Elite Medical Wellness | Lake Charles, Louisiana | 19 |
| Henry Johnson | Elite Medical Wellness | Lake Charles, Louisiana | 19 |
| Jean Hawks, PhD | N/A | Ridgeland, MS | 17 |
| Gina Armstrong | Advanced Diagnostics Healthcare System (Texas Brain Center) | Houston, Texas | 14 |
| Ramiro Hernandez | Advanced Diagnostics Healthcare System (River Oaks Hospital and Clinic; Advanced Surgeons & Physicians Network; and AHK Neurology) | Houston, Texas | 14 |
| Ravi Kalidindi | Advanced Diagnostics Healthcare System (AD Hospital East; River Oaks Hospital and Clinic; Advanced Surgeons & Physicians Network; and Chopra Imaging) | Houston, Texas | 14 |
| Sandeep Amesur | Advanced Diagnostics Healthcare System (AD Hospital East; River Oaks Hospital and Clinic; Advanced Surgeons & Physicians Network; and Chopra Imaging) | Houston, Texas | 13 |
| Erin Sanders, NP | Advanced Diagnostics Healthcare System (AD Hospital East; River Oaks Hospital and Clinic; and Advanced Surgeons & Physicians Network) | Houston, Texas | 11 |

| Girish Gidwani | Advanced Diagnostics Healthcare System (AD Hospital East; River Oaks Hospital and Clinic; Advanced Surgeons & Physicians Network; and Chopra Imaging) | Houston, Texas | 11 |
|---|---|---|---|
| Victoria Do | Advanced Diagnostics Healthcare System (River Oaks Hospital and Clinic; and Advanced Surgeons & Physicians Network) | Houston, Texas | 11 |
| Henry Small | Advanced Diagnostics Healthcare System (River Oaks Hospital and Clinic; and Advanced Surgeons & Physicians Network) | Houston, Texas | 10 |
| John Sebok | Advanced Diagnostics Healthcare System (AD Hospital East; River Oaks Hospital and Clinic; and Advanced Surgeons & Physicians Network) | Houston, Texas | 10 |
| Chand Mathur | Advanced Diagnostics Healthcare System (AD Hospital East; and Chopra Imaging) | Houston, Texas | 9 |
| Charles A. Popeney | Fort Bend Neurology | Sugar Land, Texas | 9 |
| Eugene Aguilar | Sinus Surgery, Throat, Allergy Clinic Zippo's Healthcare Services and Advanced Diagnostics Healthcare System (AD Hospital East) | Houston, Texas | 9 |
| Luis Ramos Duran | Advanced Diagnostics Healthcare System (AD Hospital East; and Chopra Imaging) | Houston, Texas | 9 |
| Zach Bailey | Advanced Diagnostics/Chopra Imaging Centers, Inc. (AD Hospital East LLC; Advanced Hospital East) | Houston, Texas | 9 |

| Laken Patin, PMHNP | Elite Medical Wellness | Lake Charles, Louisiana | 8 |
|---|---|---|---|
| Asha Dhuka | Advanced Diagnostics Healthcare System (AD Hospital East; River Oaks Hospital and Clinic; Advanced Surgeons & Physicians Network; and Texas Brain Center) | Houston, Texas | 7 |
| Brennan Bergeron | Elite Medical Wellness | Lake Charles, Louisiana | 7 |
| Irvin Tantuco | Advanced Diagnostics Healthcare System (River Oaks Hospital and Clinic; and Advanced Surgeons & Physicians Network) | Houston, Texas | 7 |
| Rachel Menges, NP | Advanced Diagnostics Healthcare System (River Oaks Hospital and Clinic; and Advanced Surgeons & Physicians Network) | Houston, Texas | 7 |
| Rubin Bashir | Advanced Diagnostics Healthcare System (AD Hospital East; and River Oaks Hospital and Clinic) | Houston, Texas | 7 |
| Aadam Quraishi | Advanced Diagnostics Healthcare System (Chopra Imaging) | Houston, Texas | 6 |

**Attachment B**
**PLAINTIFFS' RESIDENCES (IF/AS KNOWN)**

| Plaintiff | Residence |
|---|---|
| Baker, Timothy | Glenwood, Arkansas |
| Bates, Kent | Gulfport, Mississippi |
| Branton, Jerry | Foxworth, Mississippi |
| Enochs, Donald | Prospect, Maine |
| Flink, Daniel | Auburn, Massachusetts |
| Gill, Glen | Walnut Grove, Mississippi |
| Glass, Bradford | Madison, Mississippi |
| Graham, Craig | Angie, Louisiana |
| Griffin, Bryson | Grayson, Louisiana |
| Hewitt, Gewoski | Philadelphia, Mississippi |
| Hudson, Sterling Drew | Brantley, Alabama |
| Lambert, Ethan | Foxworth, Mississippi |
| Malveaux, Gregory | Youngsville, Louisiana |
| Mulyca, Stefan | Rayville, Louisiana |
| Nichols, Justin | Dixmont, Maine |
| Rhodes, Richard | Okmulgee, Oklahoma |
| Riggs, Drake | Clinton, Mississippi |
| Simmons, Demetrius | Mobile, Alabama |
| Smith, Roffell | McComb, Mississippi |
| Stefanic, Joshua | San Antonio, Texas |
| Voss, Hunter | Opelousas, Louisiana |
| Watkins, Montie | Smyrna, Tennessee |
| Wright, Jeff | Sumrall, Mississippi |

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Angela Keniston on behalf of Shahmeer Halepota
Bar No. 24109968
akeniston@azalaw.com
Envelope ID: 91606913
Filing Code Description: Motion (No Fee)
Filing Description: Transocean's Submission of Evidence and Authorities in Support of Permitting the Introduction of Evidence Concerning Plaintiffs' Healthcare Billing and Funding Entities
Status as of 9/4/2024 1:22 PM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Roland Christensen | | rchristensen@arnolditkin.com | 9/3/2024 9:31:22 PM | SENT |
| Caj Boatright | | cboatright@arnolditkin.com | 9/3/2024 9:31:22 PM | SENT |
| Kurt Arnold | | e-service@arnolditkin.com | 9/3/2024 9:31:22 PM | SENT |
| Cristal Becerra | | cbecerra@arnolditkin.com | 9/3/2024 9:31:22 PM | SENT |
| Macarena Palma | | mpalma@arnolditkin.com | 9/3/2024 9:31:22 PM | SENT |
| John Zavitsanos | | jzavitsanos@azalaw.com | 9/3/2024 9:31:22 PM | SENT |
| Lynette Peter | | lpeter@azalaw.com | 9/3/2024 9:31:22 PM | SENT |
| Taylor Freeman | | tfreeman@azalaw.com | 9/3/2024 9:31:22 PM | SENT |
| Patrick KevinLeyendecker | | kleyendecker@azalaw.com | 9/3/2024 9:31:22 PM | SENT |
| Linda Broocks | | linda.broocks@keanmiller.com | 9/3/2024 9:31:22 PM | SENT |
| Valerie Koinis | | vkoinis@azalaw.com | 9/3/2024 9:31:22 PM | SENT |
| Denise Leiva | | dleiva@lawla.com | 9/3/2024 9:31:22 PM | SENT |
| Corinne Gaillard | | cgaillard@lawla.com | 9/3/2024 9:31:22 PM | SENT |
| Tod Everage | | tod.everage@keanmiller.com | 9/3/2024 9:31:22 PM | SENT |
| Anne Marie Hamilton | | annemarie.hamilton@keanmiller.com | 9/3/2024 9:31:22 PM | SENT |
| Shahmeer Halepota | | shalepota@azalaw.com | 9/3/2024 9:31:22 PM | SENT |
| Amanda LYoran | | ayoran@lawla.com | 9/3/2024 9:31:22 PM | SENT |
| AZA Service Email Address | | service@azalaw.com | 9/3/2024 9:31:22 PM | SENT |
| Daniel JRingquist | | dringquist@azalaw.com | 9/3/2024 9:31:22 PM | SENT |
| Lynn Watson | | lwatson@lawla.com | 9/3/2024 9:31:22 PM | SENT |
| Daryl L.Moore | | dmoore@azalaw.com | 9/3/2024 9:31:22 PM | SENT |

## Automated Certificate of eService

This automated certificate of service was created by the efiling system.
The filer served this document via email generated by the efiling system
on the date and to the persons listed below. The rules governing
certificates of service have not changed. Filers must still provide a
certificate of service that complies with all applicable rules.

Angela Keniston on behalf of Shahmeer Halepota
Bar No. 24109968
akeniston@azalaw.com
Envelope ID: 91606913
Filing Code Description: Motion (No Fee)
Filing Description: Transocean's Submission of Evidence and Authorities
in Support of Permitting the Introduction of Evidence Concerning Plaintiffs'
Healthcare Billing and Funding Entities
Status as of 9/4/2024 1:22 PM CST

Case Contacts

| Daryl L.Moore | | dmoore@azalaw.com | 9/3/2024 9:31:22 PM | SENT |
|---|---|---|---|---|
| Delos EFlint | | dflint@lawla.com | 9/3/2024 9:31:22 PM | SENT |
| Timothy W.Strickland | | Tim.Strickland@keanmiller.com | 9/3/2024 9:31:22 PM | SENT |
| Todd GCrawford | | tcrawford@lawla.com | 9/3/2024 9:31:22 PM | SENT |
| Farnaz Alms | | Farnaz.Alms@keanmiller.com | 9/3/2024 9:31:22 PM | SENT |
| Todd GCrawford | | tcrawford@lawla.com | 9/3/2024 9:31:22 PM | SENT |
| Todd GCrawford | | tcrawford@lawla.com | 9/3/2024 9:31:22 PM | SENT |
| Adriane Landry | | alandry@mandllaw.com | 9/3/2024 9:31:22 PM | SENT |
| Pamela Benoit | | pbenoit@mandllaw.com | 9/3/2024 9:31:22 PM | SENT |
| Phyllis Tiner | | phyllis.tiner@keanmiller.com | 9/3/2024 9:31:22 PM | SENT |
| Richard Hymel | 24038190 | rhymel@mandllaw.com | 9/3/2024 9:31:22 PM | SENT |
| Charles AMouton | | cmouton@mandllaw.com | 9/3/2024 9:31:22 PM | SENT |
| Brianna DuBois | | bdubois@mandllaw.com | 9/3/2024 9:31:22 PM | SENT |
| Bruce Oakley | | Bruce.Oakley@hoganlovells.com | 9/3/2024 9:31:22 PM | SENT |
| Lee Whitesell | | Lee.Whitesell@hoganlovells.com | 9/3/2024 9:31:22 PM | SENT |
| Arielle Anderson | | Arielle.Anderson@hoganlovells.com | 9/3/2024 9:31:22 PM | SENT |
| Cristi Cavazos | | Cristi.Cavazos@hoganlovells.com | 9/3/2024 9:31:22 PM | ERROR |
| Ginger Ashcraft | | gashcraft@mandllaw.com | 9/3/2024 9:31:22 PM | SENT |
| Serena YLara | | serena.lara@keanmiller.com | 9/3/2024 9:31:22 PM | SENT |
| Shawn Wiebelt | | shawn.wiebelt@keanmiller.com | 9/3/2024 9:31:22 PM | SENT |
| Alyssa Payne | | alyssa.payne@keanmiller.com | 9/3/2024 9:31:22 PM | ERROR |
| Shahmeer Halepota | | shalepota@azalaw.com | 9/3/2024 9:31:22 PM | SENT |

## Automated Certificate of eService

This automated certificate of service was created by the efiling system.
The filer served this document via email generated by the efiling system
on the date and to the persons listed below. The rules governing
certificates of service have not changed. Filers must still provide a
certificate of service that complies with all applicable rules.

Angela Keniston on behalf of Shahmeer Halepota
Bar No. 24109968
akeniston@azalaw.com
Envelope ID: 91606913
Filing Code Description: Motion (No Fee)
Filing Description: Transocean's Submission of Evidence and Authorities
in Support of Permitting the Introduction of Evidence Concerning Plaintiffs'
Healthcare Billing and Funding Entities
Status as of 9/4/2024 1:22 PM CST

Case Contacts

| | | | | |
|---|---|---|---|---|
| Shahmeer Halepota | | shalepota@azalaw.com | 9/3/2024 9:31:22 PM | SENT |
| John J. Smither | | john.smither@keanmiller.com | 9/3/2024 9:31:22 PM | SENT |
| Joseph Canida | | joseph.canida@keanmiller.com | 9/3/2024 9:31:22 PM | SENT |
| Patsy Chavez | | pchavez@jw.com | 9/3/2024 9:31:22 PM | SENT |
| Ivannia Dejoie | | ivannia.dejoie@keanmiller.com | 9/3/2024 9:31:22 PM | SENT |
| Farahana Burke | | fburke@lawla.com | 9/3/2024 9:31:22 PM | ERROR |
| Carter Sayers | | csayers@lawla.com | 9/3/2024 9:31:22 PM | ERROR |
| Gary  Alfred | | Gary.Alfred@keanmiller.com | 9/3/2024 9:31:22 PM | SENT |
| Mandy Lennon | | Mandy.Lennon@keanmiller.com | 9/3/2024 9:31:22 PM | SENT |
| Laura Dumas | | laura.dumas@keanmiller.com | 9/3/2024 9:31:22 PM | SENT |
| Mutaal Sultan | | msultan@azalaw.com | 9/3/2024 9:31:22 PM | SENT |
| Karina Sanchez | | ksanchez@azalaw.com | 9/3/2024 9:31:22 PM | SENT |
| Bret Sparks | | Bret.Sparks@keanmiller.com | 9/3/2024 9:31:22 PM | SENT |
| Michael Andrews | | mandrews@azalaw.com | 9/3/2024 9:31:22 PM | SENT |
| Alfred Montelongo | | amontelongo@azalaw.com | 9/3/2024 9:31:22 PM | SENT |
| Valerie Koinis | | TOD002@azalaw.com | 9/3/2024 9:31:22 PM | SENT |