**Exhibit 4**

**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**LAKE CHARLES DIVISION**

| | |
|---|---|
| **IN RE: MOTION TO COMPEL COMPLIANCE WITH SUBPOENA DIRECTED TO ELITE MEDICAL WELLNESS** | **MISC. ACTION NO. 2:24-00011-TPL** |
| **TERRY BOUTTE, JR.** **VS.** **JACKSON OFFSHORE OPERATORS, LLC, AND CHEVRON U.S.A. INC.** | **CIVIL ACTION NO. 4:22-CV-00948** **CURRENTLY PENDING IN THE** **UNITED STATES DISTRICT COURT SOUTHERN DISTRICT OF TEXAS HOUSTON DIVISION** |

**MOVANTS' SUPPLEMENTAL MEMORANDUM IN SUPPORT OF MOTION TO COMPEL COMPLIANCE WITH SUBPOENA DIRECTED TO NON-PARTY ELITE MEDICAL WELLNESS**

Movants-Defendants, Jackson Offshore Operators, LLC and Chevron U.S.A. Inc. ("Movants"), respectfully file this supplemental memorandum in accordance with the Court's oral Order[1] during the March 6, 2024 hearing regarding Movants' Motion to Compel Compliance with Subpoena directed at Non-Party Elite Medical Wellness ("Elite") (Rec. Doc. 1) related to the ongoing litigation in *Terry Boutte, Jr. v. Jackson Offshore Operators, LLC & Chevron U.S.A. Inc.*, Civ. No. 4:22-CV-00948, which is currently pending in the United States District Court for the Southern District of Texas, Houston Division.

A.    **The Relationship Between Elite, Hays, and A&I's Plaintiffs is Undeniable**

Where there is smoke, there is fire. In this matter, the smoke is more like a nuclear mushroom cloud and Elite is denying that it helped Arnold and Itkin ("A&I") drop the bomb. To

---

[1]    Rec. Doc. 9, March 6 Motion Hearing Transcript, at pg. 53.

demonstrate this fact, Movants have created and attached a spreadsheet of A&I's plaintiffs that have been treated by Dr. Hayes and Elite.[2] Via personal involvement with the cases or by simple investigation via Westlaw, undersigned can identify thirty-seven (37) plaintiffs by name (and lawsuit) who are represented by A&I and who were also a patient of Dr. Hayes and Elite.[3] Including Boutte, these plaintiffs are involved in multiple lawsuits spanning six (6) different incidents or events.[4]

Twenty-one (21) of these plaintiffs are involved in the Transocean/ASGARD litigation,[5] and they live across nine (9) states including Alabama, Arkansas, Louisiana, Maine, Massachusetts, Mississippi, Oklahoma, Tennessee, and Texas.[6] It is simply not credible for Dr. Hayes to suggest that he evaluated and treated twenty-one different patients (1) arising from the precise same incident, (2) from states as far away as Maine and Massachusetts, (3) all of whom were represented by A&I, and yet (4) he never made the connection between twenty-one eerily familiar stories and their attorneys. Movants have also compiled and attached the medical reports written by Dr. Hayes regarding these plaintiffs, which are nearly identical in nature for every plaintiff and tend to prove that these medical reports are being created by Dr. Hayes to specifically support the litigation efforts of A&I.[7] It should be noted that the undersigned has attached only 16 of the 21 plaintiffs involved in the Transocean/ASGARD litigation. However, in every one of these

---

[2]     Spreadsheet of A&I Plaintiffs Treated by Dr. Hayes and Elite (submitted under seal to the Court and opposing counsel labeled as **Exhibit A**).

[3]     *Id.*

[4]     *Id.*

[5]     The Transocean/ASGARD litigation stems from an event caused by Hurricane Zeta. The litigation spans multiple individual lawsuits in Harris County, Texas and the Case Numbers for each suit are listed in Exhibit A.

[6]     *See* Exhibit A.

[7]     Compilation of Dr. Hayes' Medical Reports for A&I Plaintiffs (submitted under seal to the Court and opposing counsel labeled as **Exhibit B**) (HIPPA information redacted).

16 reports, Dr. Hayes has diagnosed all 16 plaintiffs with PTSD using the diagnosis and billing code "F43.10."[8] Notably, this is the same diagnosis code he uses for Mr. Boutte.

When allegedly interviewing the ASGARD plaintiffs, Dr. Hayes took notes about the same incident, namely Hurricane Zeta impacting the Deepwater ASGARD drilling ship, and noted that every patient was on board the ASGARD during the event. It should further be noted that the format of the reports are standardized and some sentences or phrases are copied verbatim; in the diagnosis section of ASGARD PLAINTIFF B, H, and C's reports, Dr. Hayes wrote his diagnosis description using a number of the **exact same** sentences and phrases "Posttraumatic Stress Disorder (PTSD; F43.10). Mr. [NAME] satisfies the following DSM-5 criteria for PTSD: A1 (he was working aboard the drilling ship, the Deepwater Asgard, which was hit by Hurricane Zeta; the vessel suffered significant damage during the event, . . . . and he believed, realistically, he could die; . . . . 2 (he saw the fear on his coworkers faces as the storm raged) . . . . The presently completed psychometric testing supports the PTSD diagnosis, and both the PCL-5 and the TSI-2 suggests formal PTSD."[9] It should be noted that these reports are dated months apart from one another: ASGARD PLAINTIFF B is dated 3/8/2021; ASGARD PLAINTIFF C is 6/4/2021; and ASGARD PLAINTIFF H is 9/7/2021.[10]

But the undeniable similarities do not end there. ASGARD PLAINTIFF F's report uses nearly identical phrases as well: "Posttraumatic Stress Disorder (PTSD; F43.10). Mr. [NAME] satisfies the following DSM-5 criteria for PTSD: A1 (he was working aboard the Deepwater Asgard, which was directly hit by Hurricane Zeta; the vessel suffered significant damage during the event, and when reviewing the event in his mind, he believed, realistically, he could have died),

---

[8]     *Id.*
[9]     Exhibit B, at ASGARD PLAINTIFF B R000164, ASGARD PLAINTIFF C R000092, and ASGARD PLAINTIFF H R000069 (pgs. 28, 41, and 104 of the Exhibit B pdf).
[10]    *Id.*

3

2 (he saw the fear on his coworkers faces as the storm raged)."[11] ASGARD PLAINTIFF K's report also uses nearly identical phrases: "<u>Posttraumatic Stress Disorder (PTSD; F43.10). Mr. [NAME] satisfies the following DSM-5 criteria for PTSD: A1 (he was working aboard the drilling ship, the Deepwater Asgard, which was hit by Hurricane Zeta; the vessel suffered significant damage during the event, and he believed, realistically, he could die</u>."[12] The reports of ASGARD PLAINTIFF P and J are also particularly interesting, as they use the same phrase that includes *the exact same typo*: "Posttraumatic Stress Disorder (PTSD; F43.10). . . . Mr. [Name] has developed clinically relevant trauma-induced symptoms. He meets the following DSM-5 PTSD criteria: A1 (he was working **<u>abroad</u>** the drilling ship, the Deepwater Asgard, which was hit by Hurricane Zeta . . . . he believed, realistically, the ship would capsize. . . . 2 (he witnessed the fear and injuries of his coworkers)."[13]

To reiterate, where there is smoke, there is fire. Dr. Hayes either has a form he uses for each of these patients or he uses one report to create another, only changing the individualized facts when necessary. Be that as it may, the only reasonable explanation for the striking similarities between the reports prepared by Dr. Hayes for patients referred to him by A&I is that they were prepared for purposes of litigation with full knowledge of A&I's trial strategy.  As the person allegedly writing these reports, Dr. Hayes would also have personal knowledge that each of these plaintiffs was involved in the same incident as soon as he interviewed them and would necessarily learn about their lawsuits when asked to testify or subpoenaed for records. Elite therefore undeniably has responsive documents about these plaintiffs, including their billing statements,

---

[11]   Exhibit B, at ASGARD PLAINTIFF F R000028 (pg. 77 of the Exhibit B pdf) (emphasis added to phrases that are identical to ASGARD PLAINTIFF B, H, and C's reports).

[12]   Exhibit B, at ASGARD PLAINTIFF K R000089 (pg. 143 of the Exhibit B pdf) (emphasis added to phrases that are identical to ASGARD PLAINTIFF B, H, and C's reports).

[13]   Exhibit B, at ASGARD PLAINTIFF P R000128 & ASGARD PLAINTIFF J R000048-49 (pgs. 213 & 129-130 of the Exhibit B pdf).

invoices, and communications regarding the subpoenas or other requests for documents. The instant motion to compel compliance is the only way to find the fire through the smoke.

Dr. Hayes also saw five plaintiffs represented by A&I in *Serrano et. al. v. ExxonMobil Corporation, et. al.*, Cause No. 2019-52989 in Harris County's 333RD Judicial District, and Dr. Hayes was listed as an expert witness on the Plaintiffs' Joint Exhibit and Witness list.[14] Dr. Hayes testified at the trial of the *Serrano* matter. There is no way for him not to know of the connection between those five patients and their attorneys.

Via a Westlaw search, Movants were able to identify another matter wherein at least 2 of the 9 plaintiffs represented by A&I were diagnosed by Dr. Hayes with PTSD: *Johnson et al v. Packaging Corporation of America et al*, Case No. 3:18-cv-00613, in the Middle District Court of Louisiana.[15] The Defendant's Trial Exhibit List in that matter reveals that at least 8 of the 9 plaintiffs have treated with Elite as Elite Medical Wellness records are listed for these plaintiffs.[16]

Via Westlaw, Movants were also able to identify another matter wherein an A&I plaintiff was diagnosed by Dr. Hayes with PTSD and various other ailments, but we do not have Hayes' report in that matter for further comparison.[17] Movants identified yet another matter wherein an A&I plaintiff was diagnosed by Dr. Hayes with PTSD, and the Court ordered that Hayes was not allowed to testify for plaintiff as he was disclosed too late and far too close to trial.[18]

---

[14]     ExxonMobil Litigation Documents (excerpts of which are attached hereto as **Exhibit F**).
[15]     *See* Johnson et al v. Packaging Corporation of America et al Litigation Documents (excerpts of which are attached hereto as **Exhibit I**).
[16]     *Id.* at 24-38.
[17]     *See In Re. Sea-Vista Newbuild I LLC, et. al. v. MGI Marine, LLC, et. al.*, Civ. Action No. 4:19-CV-1487 in S.D. TX (an Order from this matter mentioning Dr. Hayes is attached hereto as **Exhibit G**).
[18]     *See O'Daniel v. Arizona Hay and Feed, LLC*, Civil No. 2:20-cv-02224, D. AZ (a copy of the Order in this matter is attached hereto as **Exhibit J**).

Finally, A&I are also known to be representing multiple plaintiffs in the Astroworld lawsuits.[19] For background, the Astroworld lawsuits concern an incident wherein multiple people were injured or killed when they were trampled by the crowd attending the Astroworld Music Festival and Travis Scott concert at NRG Park on November 5, 2021. While Movers do not have documentation to establish Elite Medical Wellness' involvement in that matter, other legal and mental healthcare professionals have advised counsel for Movers that Dr. Hayes has advised that he is treating many of the plaintiffs in that matter, including those represented by A&I.

It is certainly curious that Elite's initial response was so concerned with the request for documents for other patients and communications related to those patients. Elite originally responded that most of the requests should be "directed to the patient's counsel because we, as the healthcare provider, do not know **what part of the communication with the patient's counsel may be legally protected from disclosures**."[20]

It is also curious that Elite Medical Wellness is repeatedly asked to treat patients who live hundreds of miles from Lake Charles, Louisiana, all of whom are involved in the same incident and who are represented by the same group of attorneys.  And yet, Elite supposedly is unaware of who is referring those cases to them or why.  That is simply not credible. At bare minimum, one would expect any business to ask how a client from such a distant location happened to come see them. If nothing else, Dr. Hayes' lack of curiosity demonstrates that he knows precisely how and where these out-of-state patients are referred to his office.

During the hearing, counsel for Elite insisted that his client does not know whether their patients are represented by a law firm and figuring out which patients are represented by counsel

---

[19]     *See Adams v. Live Nation Worldwide, Inc., et. al.,* Cause No. 2021-78689, 151ST Judicial District of Harris County, Texas (the petition of this matter is attached hereto as **Exhibit H**).

[20]     Rec. Doc. 1-12 at pg. 1 (emphasis added).

would be too difficult or overly burdensome.[21]  Respectfully, the high volume of cases in which Arnold & Itkin plaintiffs are referred to and treated by Dr. Hayes, the fact that a large number of these plaintiffs are involved or allegedly affected by the same incident, and Dr. Hayes' involvement in the litigation as an expert witness on behalf of those plaintiffs, demonstrates that is simply not credible.

The subpoena at issue in this matter is specifically aimed at discovering more concrete evidence of the exact nature of the relationship between Elite, Dr. Hayes and A&I in order to dispel Plaintiff's assertion that Dr. Hayes' is nothing more than an impartial treating physician. Despite Elite's evasiveness, non-responsiveness, and allusions to protections such as privileges and HIPAA, when you consider the sheer amount of plaintiffs represented by A&I and treated at Elite, it is profoundly disingenuous to continue to deny the existence of documents related to the extensive and highly profitable relationship between Elite and A&I.

During the hearing, Counsel represented to the Court that Elite Medical Wellness' initial response was prepared by Dr. Hayes without the assistance of counsel.[22] However, the initial response itself explicitly states that Elite Medical Wellness consulted with their healthcare attorneys about what was in the "scope of discovery" of Movant's subpoena.[23] Presumably under the advice of counsel, Elite responded that most of the requests should be "directed to the patient's counsel because we, as the healthcare provider, do not know **what part of the communication with the patient's counsel may be legally protected from disclosures**."[24] This sentence— supposedly written by Dr. Hayes himself—tends to prove that communications relevant to

---

[21]     *See* Rec. Doc. 9 at 15:12-16:4.
[22]     Rec. Doc. 9 at 17:8-10 (Counsel for Elite stated: "So bottom line, Your Honor, Dr. Hayes answered these on December 6th without the assistance of counsel or without counsel doing it for him.").
[23]     Rec. Doc. 1-12 at pg. 1 ("[W]e have consulted with our healthcare attorneys at Sullivan Stolier Schulze, LLC, Mr. Michael Schulze, and Mr. Matthew Brown.").
[24]     *Id.* (emphasis added).

Movants' subpoena **DO** exist and that Elite is withholding them on the basis of same vague privilege that they have not properly asserted. As the subpoena at issue is primarily seeking information and documents connecting other patients with A&I and Elite, communications and billing records for those individuals named in Exhibit A would certainly be responsive. However, Elite has never produced a privilege log or objected to Movants' requests on any basis in either their original response or their supposed "supplemental" response written by Elite's counsel and dated February 22, 2024.[25] At minimum, that sentence contradicts Elite's subsequent response of "none." If Elite had no responsive documents at all, as it now claims, why did Dr. Hayes need to know what part of the communications with patient's counsel were legally protected from disclosure?

**B.      No One Seems To Know Who is Paying Boutte's Medical Bills from Elite**

Undersigned deposed both Terry Boutte and his wife, April Boutte during the course of the underlying litigation. Mr. Boutte testified that he does not pay for his medical bills:

"Q. Okay. Are you aware of any medical bills that haven't been paid?

A. No. I get invoices all the time. We didn't pay the medical bills."[26]

Mrs. Boutte testified that she does not know pay the medical bills or know who is paying them:

Q. Who is paying for Terry's treatment at Elite Medical Wellness?

A. I assume Jackson would be.

Q. Okay. Do – do you send Jackson Offshore the invoices from Elite Medical Wellness?

A. No, I – I don't send anything for Jackson.

Q. And did you tell Elite Medical Wellness to send their invoices to Jackson Offshore?

---

[25]     *See* Rec. Doc. 1-12 and Rec. Doc. 6-1.
[26]     The Deposition of Terry Boutte, Jr., January 3, 2023, at 157:23-158:1 (excerpts of which are attached hereto as **Exhibit K**).

A. No, I did not.

Q. Okay. Then how do you think that Jackson Offshore is getting the invoices from Elite Medical Wellness?

A. At some point we signed some documentation to give Jackson all of the physicians that Terry was seeing. So, I would presume that they would be in contact; and if not, I guess we'll get a bill.

Q. Do you know who at Elite Medical Wellness sends their invoices to?

A. No, I mean, we get things in the mail; and Terry just stacks them up. So...[27]

…..

Q. Did Terry ever communicate with you how he thought that the medical treatment by Elite was going to be paid for?

A. No. Terry just ma- -- had made a statement in conversation that, you know, whatever medical bills we have, we will deal with them at some point if it is not paid for by Jackson. So, that's the most conversation that we have had about medical bills.

Q. Do you know if Elite Medical Wellness is sending their invoices over to Terry's attorneys?

A. Do I know if they are?

Q. Uh-huh.

A. No, I'm not aware of where any of the invoices are going.[28]

Movants are not making payments on behalf of Boutte to Elite Medical Wellness. It is therefore reasonable to request the checks or other proof of payment being made to Elite to determine who is paying for his medical bills there. According to Boutte's Billing Statement from Elite, Elite had been paid $8,700 by "Patient Check Pmt" prior to Terry Boutte's deposition on January 3, 2023.[29] By the time April Boutte's deposition was taken on December 13, 2023, Elite had already been

---

[27]   The Deposition of April Boutte, December 13, 2023, at 66:16-67:10 (excerpts of which are attached hereto as **Exhibit L**).

[28]   Dep. of April Boutte, at 68:10-23.

[29]   Terry Boutte's Billing Statement from Elite Medical Wellness (attached hereto as **Exhibit M**).

paid $18,400 by "Patient Check Pmt."[30] Elite has made it very clear that they do not take any form

of insurance or letters of protection. Therefore, the question of who is paying Elite and by what

means is Elite being paid is highly relevant and important to this litigation.

**C.      Movants' Subpoena Requests were Tailored to be Broad while also Attempting to be Highly Specific and Narrow so as to remain in Compliance with the Rules of Discovery**

Notably, the language of the subpoena issued to Elite Medical Wellness was based upon

the Texas Supreme Court decision in *In re ExxonMobil Corporation*, 635 S.W.3d 631 (2021).[31]

The language of this precise subpoena has been upheld by the Texas Supreme Court.  Elite Medical

Wellness has previously received and responded to a substantially similar subpoena in Texas state

court in the *Serrano* matter, referenced above.

Nevertheless, lawyers routinely attempt to draft requests that cast a wide net, i.e., broad

enough to ensure that all responsive documents in the possession of the responding party are

produced. But while attorneys attempt to use language that is intended *to broaden the scope of the

request,* responding attorneys then attempt to use that same language to limit or restrict the scope

of the request. That appears to be the case in this instance. For example, Request No. 1 to the

subpoena is properly read in simplified form as follows: "Any Document reflecting or describing

… the total amount of payments received by [Elite] from January 2016 through the present related

to medical services provided to patients referred to [Elite] by A&I."[32]  In this instance, the omitted

language of Request No. 1 is an alternative method of measuring the total amount of payments

received. Those alternatives are either a percentage or any other metric (measurement) utilized.

Importantly, the alternative method of measurement is identified with the disjunctive conjunction

---

30      *Id.*
31      It should be noted that this matter involved both Arnold & Itkin and Elite Medical Wellness.
32      Rec. Doc. 1-2 at pg. 2.

"or." In other words, while Request No. 1 includes a request for an alternative metric, that does not eliminate the need for Elite to provide documents that reflect or describe **the amount of payments** it has received from medical services provided to patients referred to it by A&I. Since Elite responded "none," the only conclusion to draw is that Elite is denying that it has ever received a payment from a patient referred to Elite by A&I. That contention is objectively false unless we are being asked to believe that Elite received no payment for treating the more than thirty-seven plaintiffs identified by Defendants in the attached spreadsheet and testifying at trial for the benefit of A&I plaintiffs.

Elite's counsel stated that if the Court wanted to "treat [Dr. Hayes] like an expert retained witness who would have to put together a Rule 26 expert report that lists your testimony cases, I think he could probably go and find those because **he knows where he's testified**."[33] That is precisely the point. Movers are aware and can confirm that Dr. Hayes testified at trial of the *Serrano et. al. v. ExxonMobil Corporation, et. al.*, Cause No. 2019-52989 in Harris County's 333RD Judicial District. Since Dr. Hayes knows where he has testified, he would obviously know what patient he was testifying for and should know who the counsel representing that patient is. Therefore, it would be reasonably easy for Dr. Hayes to locate the patient files that he has testified for and produce their medical billing documents (with HIPAA information redacted). For that reason, Elite's response to Request No. 1 is incomplete.

Request No. 2 can also be simplified as follows: "Any Document reflecting or describing … the total amount [Elite] have received from January 2016 through the present, as payment in full of any charges billed to patients referred to [Elite] by A&I, **and whose medical bills were paid in cash and/or as 'self-pay.'**"[34] The response indicates, "None other than the attached master

---

[33] Rec. Doc. 9 at 41:9-13.
[34] Rec. Doc. 1-2 at pg. 2.

clinic fee schedule." This response is replete with inconsistency. To begin, a response is necessary only for "patients referred to Elite by Arnold & Itkin." Since Elite refers to "the attached master clinic fee schedule," Elite is implicitly admitting that A&I has referred at least some patients for treatment. That necessarily means that the response to request numbers one and two are incomplete. Any invoice for any patient referred by A&I who paid in cash or as self-pay would be responsive to this request. This would include Mr. Boutte's invoice, since he was reportedly a self-payer. Additionally, the Court inquired whether the numbers next to the line "Patient Check Pmt:" on Boutte's billing statement could refer to invoice numbers rather than the number printed on the check used to pay for the services.[35] However, Elite did not produce any invoices sent to Mr. Boutte, or any other documents that contain matching identification numbers. These identification numbers must be related to some other documents, but Elite has not produced any such documents. Despite these obvious inconsistencies, Elite suggests it has no responsive documents other than the clinic fee schedule. For these reasons, Elite's response to Request No. 2 is incomplete.

Request No. 4 provides as follows: "Any Document reflecting or describing the medical services provided to patients referred to You by A&I from January 2016 through the present and including the date the medical services were provided, the name of the individual who provided the medical services, and the medical billing codes associated with the medical services provided."[36] Again, the billing statements, invoices, and medical records of every patient referred to Elite by A&I would be responsive to Request No. 4. Moreover, any email that "reflected" or "described" those documents or other medical services would be responsive, including any documents attached to those emails. Since Elite has responded "none," the only potentially limiting language in the request is "patients referred to you by A&I." And yet, as set out above, we know that the sheer volume of

---

[35] Rec. Doc. 9 at 35:4-12.
[36] Rec. Doc. 1-2 at pg. 2.

cases in which Elite provides medical treatment to patients who are also represented by A&I, from distant states, combined with the fact that A&I routinely designates Elite and Dr. Hayes to testify, greatly undercuts the credibility of that contention.

Furthermore, Elite asserted in their original response that Elite does not "use medical billing codes associated with the medical services provided."[37] However, Dr. Hayes routinely uses ICD-10-CM Diagnosis and Billable codes.[38] Based upon the medical records that movers have attached, it appears that Dr. Hayes diagnoses nearly every patient he sees with PTSD; Dr. Hayes often uses the ICD-10-CM code F43.10, which is used to code for "Post-traumatic stress disorder, unspecified."[39] "F43.10 is a billable/specific ICD-10-CM code that can be used to indicate a diagnosis for reimbursement purposes."[40] This makes it simple to search across Elite's various patient records to see which patients have been designated with the same diagnosis or billing code.  For example, one could search for F43.10 and find every patient who received the same diagnosis and therefore likely received similar treatment to Boutte. Therefore, Elite's assertion in their original response that Elite does not "use medical billing codes" is objectively incorrect and false. Their response is incomplete. At bare minimum, Elite would have to produce the Hayes reports attached to this supplemental memorandum and records related to every plaintiff named in Movants' Spreadsheet

Request No. 6 is similar to Request No. 2, but the operative qualifier is seeking documents reflecting the total amount Elite has "accepted since 2016 as full payment in **for the same categories of treatments/services as those provided to Terry Boutte, Jr.** for charges billed to Your patients whose medical bills were paid in cash and/or as 'self-pay.'"[41] Thus, this request

---

[37]    Rec. Doc. 1-12 at pg. 2.
[38]    *See generally* Exhibit B.
[39]    *See*  https://www.icd10data.com/ICD10CM/Codes/F01-F99/F40-F48/F43-/F43.10  ("ICD10Data.com is a free reference website designed for the fast lookup of all current American ICD-10-CM (diagnosis) and ICD-10-PCS (procedure) medical billing codes.")
[40]    *Id.*
[41]    *Id.* (emphasis added).

13

would not be limited to patients referred to A&I; it would be related to any and all patients who have received the same treatment as Boutte and paid by in cash or as self-pay. Therefore, even if Elite's assertion that it is completely unaware of what patients are referred to them by A&I, Elite has the medical and billing records necessary to identify patients whose documents would be responsive to this request. As Elite's responses suggest that they do not accept insurance, Medicaid, Medicare, letters of protection, or any other form of payment except for self-pay,[42] a proper response to this request would include the documents of **every** Elite patient who have received "**the same categories of treatments/services as those provided to Terry Boutte, Jr.**" since 2016. As outlined above, we know that Elite uses the ICD-10-CM code F43.10, which is used to code for "Post-traumatic stress disorder, unspecified." For these reasons, Elite's response to Request No. 6 is incomplete.

Request No. 9 states as follows: "Any Document *reflecting* or describing the highest and lowest percentage reduction (by way of adjustment, write-off, discount, or otherwise) applied by You to any patient's medical bill since 2016 for patients whose medical bills were paid in cash and/or as 'self-pay.'"[43] This request is not limited to patients referred to Elite by A&I, so that limitation is not applicable in this instance. The only way that Elite could respond with "none," is if there has never been an occasion when it has made any adjustment, write-off, discount or other reduction to any invoice for any reason whatsoever. That is simply not believable. Any invoice where there has ever been any adjustment of any kind for any self-paying patient would be responsive to this request because that invoice would "reflect" the percentage reduction applied by Elite. And as previously discussed, as Elite's responses suggest that they do not accept insurance, Medicaid, Medicare, letters of protection, or any other form of payment except for self-

---

[42] *See* generally Rec. Doc. 1-12.
[43] Rec. Doc. 1-2 at pg. 3.

pay,[44] a proper response to this request would include the relevant documents of **every** Elite patient whose bill has ever been adjusted. For these reasons, Elite's response to Request No. 9 is incomplete.  At the very least, Elite should have to verify that it has never made a single adjustment or discount to any invoice ever.

Request No. 10 is similar to Request No. 9, except that it pertains to medical bills that were paid by major health insurance plans, worker's compensation coverage, Medicaid and Medicare. During the hearing, Elite's counsel represented that Dr. Hayes and Elite receive "a number of" referrals for worker's compensation claims.[45] Consequently, any patient Elite has seen on behalf of a worker's compensation carrier or in connection with a worker's compensation claim would have a billing statement and invoices that would be responsive to Request No. 10, provided there had been any adjustment of any kind to that invoice. It is difficult to imagine any invoice submitted to any worker's compensation carrier would not have any adjustment at all, let alone that none of them would. For these reasons, Elite's response to Request No. 10 is likely incomplete.

Request No. 12 reads as follows: "Any Document reflecting or describing the highest and lowest amount You have accepted since 2016 as full payment for the same categories of treatments/services as those provided to Terry Boutte, Jr. for charges billed to its patients whose medical bills were paid in cash and/or as 'self-pay.'"[46] Elite responded "None."  Again, there are only two ways for Elite Medical Wellness to have no responsive documents. Either it has never provided services similar to those provided to Terry Boutte, Jr.—which we know is not true based upon the ICD-10-CM Codes—or it has no patients whose medical bills were paid in cash or identified as "self-pay."  The latter seems highly unlikely since Elite also maintains that it does not

---

[44]   *See* generally Rec. Doc. 1-12.
[45]   Rec. Doc. 9 at 14:19-24 (Elite's counsel stated Dr. Hayes "receives a number of referrals from worker's comp").
[46]   Rec. Doc. 1-2 at pg. 3.

accept any insurance. Elite's counsel maintained at the hearing that Elite charges all of its patients "the same thing" and "[e]veryone pays the same thing."[47] Counsel is unequivocally representing that Elite only accepts full payment for its services.  Thus, every invoice it has issued for treatment in the same categories as those provided to Terry Boutte, Jr. would be responsive to Request No. 12. Elite's response to Request No. 12 is necessarily incomplete.

Request No. 13 is similar to Request No. 12, except it is related to patients whose medical bills were paid by major health insurance plans, worker's compensation coverage, Medicaid, and Medicare.[48] Again, according to Elite's Counsel,[49] Dr. Hayes and Elite routinely accept referrals for worker's compensation claims. It is therefore difficult to see how there would be no responsive documents.

Request No. 14 sought, "Any Document reflecting or describing the dates when You have collected Your full chargemaster rate for the same categories of treatments/services as those provided to Terry Boutte, Jr."[50]  Given that Elite Medical Wellness responded, "None," there are only two possible conclusions. First, it has never received the full chargemaster rate. If that is true, however, than Elite Medical Wellness' responses to Request Nos. 9 and 10 could not also be true. Either Elite Medical Wellness received the full amount charged or there was some adjustment to the bills. Both cannot be true. Therefore, Elite Medical Wellness' response to Request Nos. 9, 10 and 14 are mutually exclusive. Any invoice that reflected collection of the full-charged amount would be responsive to Request No. 14. As Elite's counsel stated, Elite charges all of its patients "the same thing" and "[e]veryone pays the same thing."[51] Counsel has admitted the billing

---

[47]       Rec. Doc. 9 at 14:24-25.
[48]       *See* Rec. Doc. 1-2 at pg. 3.
[49]       Rec. Doc. 9 at 14:19-24.
[50]       Rec. Doc. 1-2 at pg. 3.
[51]       Rec. Doc. 9 at 14:24-25.

statements and invoices of **_every_** Elite patient who received the same treatment as Boutte would be responsive, as they all would have paid "the same thing," which would be the fees listed on Elite's master clinic fee schedule (at least according to Elite).

Request No. 15 is simplified as follows: "Any Document _reflecting_ or describing … the amount Elite Medical Wellness charges for medical treatment, the amount Elite Medical Wellness adjusts and/or writes off for its charges when accepting payment for its charges, and the amount(s) Elite Medical Wellness accepts as full payment of its charges billed to its patient."[52] Again, every invoice issued by Elite would be responsive to this request. Every invoice would reflect the amounts that Elite accepted or adjusts, including full payments made according to the master clinic fee schedule. The suggestion that Elite has no responsive documents other than a master clinic fee schedule is simply impossible. We know that Elite issues invoices and maintains billing statements. Those invoices and billing statements show the amount Elite charges, adjusts and writes-off. And of course, any correspondence or emails that forwarded those documents would also "reflect "or "describe" those same charges. Elite cannot legitimately answer "none" to this question.

Request No. 16 requests "Any Document reflecting or describing the billing policies, practices, or arrangements of Elite Medical Wellness for collecting on medical expenses incurred by its patients who are claimants in a lawsuit."[53] The response is "None other than the attached master clinic fee schedule."[54] However, as noted above, any invoice from any patient who was a claimant in a lawsuit would "reflect" the practice or arrangements of Elite Medical Wellness. At bare minimum, the invoices of all patients who were claimants in a lawsuit would be responsive

---

[52] Rec. Doc. 1-2 at pg. 3.
[53] _Id._ at pg. 4.
[54] Rec. Doc. 6-1 at. pg. 5.

to this request. And as asserted by Elite's counsel, Dr. Hayes knows where he has testified,[55] and therefore he would be able to identify at least those patients. And if Dr. Hayes needs a refresher, he can peruse the list of plaintiffs in Movants Spreadsheet or his own reports attached hereto as Exhibits A and B. "[A]ny document reflecting" those billing policies would absolutely include the invoices themselves. They would also include any correspondence, emails and texts relating to those practices or invoices. Otherwise, Elite is literally saying that it has never had any communications with any attorney that related to the resolution and final payment of its invoices upon settlement or other resolution of a claimant in a lawsuit. Request No. 16 is not specifically related to claims involving A&I, but it necessarily would include any email or other correspondence exchanged with A&I that in any way pertained to collection of medical expenses of a patient who was involved in a lawsuit. As Elite has provided treatment for many patients involved in lawsuits, it has also certainly been subject to multiple subpoenas and requests for documents, which would necessarily require Elite to send correspondence of some kind to the requesting party. It also certainly seems likely that Elite Medical Wellness has been compensated for appearing in response to depositions and at trial.  Those documents would also enable Elite to identify cases involving patients in litigation.

Request No. 19 addresses "Any correspondence or communication of any kind with any attorney, agent, representative, or an individual … outside of Elite Medical Wellness other than Elite Medical Wellness's counsel regarding this Subpoena Duces Tecum."[56] Given that Elite Medical Wellness has not retained local counsel in Lake Charles, Louisiana, but has instead engaged an attorney in Houston, Texas—a  former A&I attorney who regularly acts on behalf of

---

[55]       Rec. Doc. 9 at 41:9-13.
[56]       Rec. Doc. 1-2 at pg. 4.

non-party medical providers subject to a subpoena issued in cases involving Arnold & Itkin[57]—Movants are highly suspect of this response.

Additionally, counsel for Plaintiff Boutte attempted to quash or otherwise limit the subpoena on behalf of Elite in the Southern District of Texas before the Court advised them that they lacked standing to do so. Under these circumstances, it seems highly unlikely that no one at Elite communicated with Mr. Boutte's counsel, Arnold & Itkin. Additionally, we know that Elite's prior counsel communicated and exchanged emails with counsel for Movers, as documented in the exhibits to the initial motion.[58] Additionally, Elite's prior counsel were originally representing Elite during the initial discussions regarding discovery dispute in the Southern District of Texas,[59] until the conference was held before Magistrate Judge Edison, and Mr. Wynne made his first appearance in this matter. Frankly, we know there are responsive documents because we already have some of the communications.[60] However, we do not know how far the rabbit hole goes because Elite refuses to identify, object, or assert any privilege regarding these documents, and simply denies their existence.

Request No. 20 is "Any billing policies, practices, or arrangements of Elite Medical Wellness for collecting on medical expenses incurred by its patients who are claimants in a lawsuit

---

[57]   *See Redner v. Icicle Seafoods, Inc.*, 2010 WL 3976686, Case No. 210-CV-01589 in W.D. Wash (The Complaint in this cited matter (attached hereto as **Exhibit C**) is signed by Robert P. Wynne, Texas State Bar No. 24060861, an attorney working for Arnold & Itkin LLP as counsel for plaintiff. In the present matter, Elite's Response to the Motion to Compel (Rec. Doc. 6 at pg. 3.) is signed by Bob Wynne, Texas State Bar No. 24060861. It is a matter of public record that Robert "Bob" Wynne formerly worked for A&I before starting The Wynne Firm, P.C.).*See also In re ExxonMobil Corp.,* 635 S.W.3d 631, 633 (Tex. 2021) (attached hereto as **Exhibit D**) (Petitioner sought writ of mandamus to vacate denial of motion to enforce compliance with discovery requests (which included subpoenas to medical providers, including Elite Medical Wellness). **Most, if not all, of the plaintiffs in the underlying lawsuit were represented by Arnold & Itkin. At least three of the non-party medical providers were represented by Robert Wynne.** Elite is not listed as a party in interest as a fns. 1 & 2 note that Exxon was no longer seeking discovery from Elite at the time the decision was made).

[58]   *See* Rec. Doc. 1-8.

[59]   *See* Email Communications with Elite's Prior Counsel (attached hereto as **Exhibit E**).

[60]   *See Id.*

19

since January 1, 2016."[61]  Elite has responded with "None."[62]  While it is certainly conceivable that Elite has no specific billing policy or practice with respect to patients who are claimants in a lawsuit, it is not conceivable that there has never been any "arrangement" whereby Elite arranged for collecting on medical expenses from patients who were claimants in a lawsuit. Any documents exchanged with any patient or lawyer pertaining to the resolution and collection of medical expenses by a patient involved in a lawsuit since January 1, 2016 would be responsive to this request. Those "arrangements" would include, for example, simply sending invoices or otherwise ensuring those expenses are paid. Potentially responsive documents would include any correspondence, email or texts with the plaintiff, his counsel, the invoices and records of payments. Of course, the same documents would be responsive to many other requests. We simply note that the response to Request No. 20 is also necessarily incomplete.

Request No. 23 pertains to any price sheets or documents listing pricing, charges, reimbursement rate, accepted payment adjustments, discounts, etc. charged for the same categories of treatment as those provided to Terry Boutte, Jr. Request No. 23 can be simplified as "any documents listing pricing, … discounts, write-offs, or any reductions to rates charged for the same categories of treatments/services as those provided to Terry Boutte, Jr.[63] Elite's response is, yet again, "None."[64]  Yet, any invoice or billing statements for categories of treatment similar to those received by Terry Boutte, Jr. from December 5, 2021 to present would be responsive. Again, we know that Elite uses the ICD-10-CM code F43.10, which is used to code for "Post-traumatic stress disorder, unspecified." We also know that Mr. Boutte is not the only person who received that ICE-10-CM code.  Therefore, the response is necessarily incomplete. At bare minimum, we know

---

[61]    Rec. Doc. 1-2 at pg. 4.
[62]    Rec. Doc. 6-1 at pg. 6.
[63]    Rec. Doc. 1-2 at pgs. 4-5.
[64]    Rec. Doc. 6-1 at pg. 6.

that there are some invoices to patients who have had categories of treatments/services similar to Terry Boutte.[65] Any invoice issued to those individuals would reflect the pricing, the reimbursement rate, discounts, write-offs and reductions. The only alternative is to assume that Elite has never provided any treatment or services similar to those provided to Terry Boutte, Jr., and we know that is not the case from extrinsic evidence. Specifically, Dr. Hayes diagnosed at least sixteen plaintiffs represented in the ASGARD matter by Arnold & Itkin with Posttraumatic Stress Disorder all identified with diagnosis code F43.10, the identical diagnosis as Dr. Hayes assigned to Mr. Boutte in this matter.[66] Accordingly, Elite's response to Request No. 23 is incomplete.

Request No. 27 requests "Any and all policies **or other documents addressing financial arrangements** with uninsured patients and/or patients who do not file an insurance claim for services…"[67] The response indicates, "Non-payment of services results in an administrative hold on an individual's account. No further clinical actions are permitted."[68] Given that services are discontinued when a payment is not made, there must be some document that advises the patient of that understanding. At bare minimum, there is some email or written communication with a patient who did not pay for his treatment or services. There is a document somewhere that describes this policy. It is either included in the patient's initial information package or the patient is later advised of it once services are discontinued or no longer permitted. The suggestion that there are no responsive documents is therefore incomplete and evasive. "Other documents addressing financial arrangements" is very broad; this would include invoices that state when

---

[65]     *See* Exhibits A & B.
[66]     *See generally* Exhibit B.
[67]     Rec. Doc. 1-2 at pg. 5.
[68]     Rec. Doc. 6-1 at pg. 7.

payment is due or stating that they are overdue and requesting payment. The suggestion that there are no responsive documents is disingenuous.

Elite's response to Request No. 32 is demonstratively incomplete. At bare minimum, Elite has had communications with undersigned counsel relating to its response to this subpoena. The request reads as follows: "Any correspondence or communication of any kind with any attorney, agent, representative, or an individual or entity associated with a party in the above referenced lawsuit, regarding this discovery request, subpoena, any document or record related to or responsive to this discovery, this lawsuit, or plaintiff in this lawsuit, either individually, collectively, or generally."[69] The scope of this request is broad enough to encompass any communications or correspondence, including emails, between not only Elite and counsel for the Movants, but also any emails between counsel for Elite and counsel for Plaintiff Boutte. Such emails, correspondence and communications would not be protected from discovery. They are not privileged. We know that Elite's "none" response is incomplete because we know there were email communications between counsel for the Movants and Elite's prior counsel.[70] Thus, the response of "none" is incomplete and objectively incorrect. Further, for reasons stated above, it is certainly curious that Elite's current counsel is routinely engaged by other medical providers who are treating patients of Arnold & Itkin to resist subpoenas for evidence of bias.[71]

Elite's continued attempts at evasiveness, non-responsiveness, and allusions to protections such as privileges and HIPAA are nothing more than a snake eating its own tail. One assertion is made that contradicts another assertion already made, which then contradicts a third assertion

---

[69] Rec. Doc. 1-2 at pg. 5.
[70] *See* Exhibit E.
[71] *See* Exhibit D.

already made, and so on infinitum. Elite cannot continue to deny the existence of documents related to the extensive and highly profitable relationship between Elite and A&I.

Respectfully submitted,

LUGENBUHL, WHEATON, PECK, RANKIN & HUBBARD

By: /s/ Alec W. Szczechowski
    Todd G. Crawford
    LA Bar No. 20150
    Adelaida J. Ferchmin
    LA Bar No. 29859
    Alec W. Szczechowski
    LA Bar No. 38422
    tcrawford@lawla.com
    aferchmin@lawla.com
    aszczechowski@lawla.com
    601 Poydras St., Suite 2775
    New Orleans, LA 70130
    Telephone: 504-568-1990
    Facsimile: 504-310-9195
    *ATTORNEY FOR MOVANTS,*
    *JACKSON OFFSHORE OPERATORS, LLC*
    *& CHEVRON U.S.A., INC.*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 12th day of March, 2024, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

        /s/ Alec W. Szczechowski