### Lien and Receivables Purchase and Assignment Agreement

This Lien and Receivables Purchase and Assignment Agreement ("Agreement") is entered into as of the Effective Date (as such term is defined on the signature page attached hereto) by and between Access Healthcare Management, LLC, a Louisiana limited liability company with a principal office located at 751 E. Bayou Pines, Suite Q, Lake Charles, LA 70601 (referred to herein as "**AHM**"), and the party set forth on the signature page attached hereto (referred to herein as "Medical Provider").

### RECITALS

WHEREAS, Medical Provider has rendered and will continue to render medical services to patients who are otherwise unable to pay the out of pocket costs and expenses associated with such medical services;

WHEREAS, some of Medical Provider's patients are pursuing claims for compensation related to personal injuries allegedly sustained as a result of the fault or negligence of third parties;

WHEREAS, **AHM** directly and through its Affiliates (as defined below) is engaged in the business of purchasing accounts receivable from certain medical providers related to personal injury claims; and

WHEREAS, Medical Provider and **AHM** desire to establish a contractual relationship whereby **AHM** and its Affiliates may agree now, and in the future, in writing, to purchase certain accounts receivable from Medical Provider arising out of medical services provided to Patients with pending personal injury claims.

**NOW THEREFORE,** in consideration of the mutual covenants and promises contained herein, **AHM** and Medical Provider agree as follows:

1. **Agreement to Purchase Accounts Receivable; Definition of Liens.**

    (a.) Medical Provider and **AHM** mutually agree that **AHM**, at its discretion, will purchase from Medical Provider certain accounts receivables. If **AHM** transmits to Provider by electronic or other written means a purchase order ("Purchase Order") then Medical Provider agrees that this agreement shall be applicable to all treatment by the Medical Provider for the injuries (or illness directly associated with injuries) to that patient until **AHM** transmits a written termination notice to Medical Provider. With respect to each Purchase Order, the term (i) "Patient" shall mean the individual identified on the applicable Purchase Order; and (ii) "Receivables" shall mean the account receivables identified on the applicable Purchase Order. Along with the first Purchase Order executed hereunder for each Patient, Medical Provider will provide executed copies of the Required Documents (as defined in Section 5). For purposes of this Agreement, the term "Lien" or "Liens" means all Healthcare Provider's Liens/Privileges as provided for by Louisiana Revised Statute 9:4751, et seq., associated with the Receivables purchased by **AHM** hereunder. Medical Provider hereby appoints **AHM** as its agent for the purpose of filing and perfecting Liens, as to each individual payment and the aggregate of all payments for each Patient with regard to any Patient, Patient's attorney, or third-party payor liable to Patient for the treatment covered by this agreement. Medical Provider agrees to cooperate with and assist Company as necessary in billing and collection of any amounts due for the services rendered by Medical Provider to a Patient pursuant to this agreement. Medical Provider hereby agrees to provide **AHM** all necessary documentation

Exhibit 6

evidencing the perfected Lien, or necessary to perfect the Lien, and hereby assigns, transfers, and grants **AHM** all rights under the Lien, including in any Lien to be perfected hereafter. Upon request of **AHM**, Medical Provider shall execute a short form Assignment Agreement in a form provided by **AHM** to reflect each transfer.

(b). Affiliates (as defined below) of **AHM** may purchase Receivables from Medical Provider pursuant to the terms and conditions of this Agreement and in accordance with the process set forth in Section 1(a) above, provided that each such Affiliate enters into a Purchase Order (along with any other forms required Pursuant to Section 5 hereof) for such Receivables. Any Affiliate that enters into such a Purchase Order with Medical Provider will be deemed to be "**AHM**" hereunder for purposes thereof; provided that such Purchase Order, together with this Agreement, will constitute a separate contract solely between Medical Provider and the Affiliate with respect to Receivables purchased by such Affiliate, and Medical Provider will look solely to such Affiliate (and not to **AHM**) for satisfaction of any liability arising under or relating to the relationship between Medical Provider, and such Affiliate, including without limitation, any liability arising under or relating to the purchase of Receivables by such Affiliate. For purposes of this Agreement, the term "Affiliate" means any entity that directly or indirectly (through one or more intermediaries) controls, is controlled by, or is under common control with **AHM**.

(c). If **AHM**, or Medical Legal Solutions, LLC ("MLS"), heretofore or hereafter pays an invoice or account (hereinafter a "Bill") submitted by Medical Provider for any Patient then this agreement shall be deemed to apply to the Bill or Bills actually paid by **AHM** (or MLS) in the same manner as if a written Purchase Order were transmitted for that Patient and treatment. If **AHM** (or MLS) agrees in writing to serve as the responsible party for a particular Patient and treatment then the provisions of this agreement shall be deemed to apply to the Bill for that Patient and treatment in the same manner as if a written Purchase Order were transmitted for that Patient and treatment. For any Patient and treatment for which **AHM** (or MLS) has agreed in writing to serve as the responsible party, Medical Provider shall invoice **AHM** for Services provided at 100% of Medical Provider's usual and customary billed charges (subject to the provisions of Section 4, the "Full Billed Charges"). Medical Provider agrees to provide professional medical services to Patient and to assign the related receivable to **AHM** for payment by **AHM** at the Percentage (as that term is defined in Section 3) of the Full Billed Charges as the full payment to Medical Provider for services rendered under this agreement and further agrees to assign to **AHM** the right to receive the Full Billed Charges as to any Patient and treatment paid by **AHM**, all as more specifically provided for hereinafter. The provisions of this subsection reflect the original intent of the Medical Provider and apply to all payments made by **AHM** or by Medical Legal Solutions, LLC ("MLS") for services of the Medical Provider irrespective of the date of the payment or of the provision of services. Its provisions shall be interpretive and retroactively applicable to the pre-existing relationship, as may be applicable, between MLS and Medical Provider.

2. **Assignment of Receivables.** Subject to the terms of this Agreement, Medical Provider hereby assigns, sells, transfers, conveys and delivers to **AHM** all of its right, title and interest in and to the Receivables and Lien(s). In exchange for the assignment of the Receivables and Lien(s) by Medical Provider, **AHM** agrees to pay to Medical Provider the amounts set forth in Section 3 hereof.

3. **Reimbursement of Medical Provider.** **AHM** shall pay Medical Provider an amount equal to (i) fifty percent (50%) multiplied by (ii) Full Billed Charges, with respect to each service listed as 'SERVICES INCLUDING DIRECT CLINICAL CARE' on attached 'Exhibit A', with respect to each 'other' service ("Service") listed on each Purchase Order or otherwise

2

provided to a Patient for which **AHM** (or MLS) agrees to act as Guarantor or elects to pay (such amount, the "Reimbursement"). All other services listed on Exhibit A and for which **AHM** has agreed to act as guarantor shall be reimbursed at one-hundred percent (100%) of the charge listed in Exhibit A. Reimbursements shall be paid to Medical Provider by **AHM** within thirty (30) days after **AHM** receives all Required Documents ("Deliverable Date"). In the event that the invoiced charges exceed any charge provided on 'Exhibit A' by twenty-five (25%) percent or more, **AHM** may at its discretion either: (i) limit the Reimbursement to the Percentage multiplied by 1.25 multiplied by the written estimate supplied prior to Service, or (ii) pay Reimbursement to the Medical Provider as normally provided for under this Agreement.

4. **Billing Practices of Medical Provider.** With respect to the services rendered, Medical Provider shall bill the Patient in accordance with its standard billing policies and consistent with all applicable regulations, codes, and/or laws of the United States and/or of state within which the Services are provided to Patients as follows: (i) in the event Medical Provider files its billing schedules with applicable state government authorities, Medical Provider will bill the Patient for the Services in the amount set forth in such billing schedules; (ii) in the event Medical Provider does not file its billing schedules with applicable state government authorities, Medical Provider will bill all of its Full Billed Charges to the Patient. In no event will Medical Provider discount (a) any bill or invoice provided to the Patient associated with the Services; or (b) the Lien amount. All such bills and/or invoices shall reflect that all amounts are still owed by the Patient. Bills and invoices sent to Patients will not reflect **AHM**'s purchase of the Receivables in any manner, including without limitation, listing them as payments, credits, offsets, contractual write-offs, or adjustments. For the avoidance of doubt, the amount of the Lien shall be equal to the Full Billed Charges for the Services.

5. **Required Documents.** With respect to the first Purchase Order executed hereunder for each Patient and/or with respect to the first Purchase Order executed hereunder by an Affiliate for an existing Patient, Medical Provider shall upon request deliver to **AHM** (i) an executed Assignment Agreement as provided by **AHM**, and billing instrument indicating Full Billed Charges related to the services provided to Patient ("Billing Instrument"), and (iii) medical records for services rendered (together with the Assignment Agreement and Billing Instrument the "Required Documents"), and upon separate written request shall also submit to **AHM** (iv) a fully executed sworn affidavit which fully satisfies the standard for admissibility for such records pursuant to any applicable Federal rules of Evidence and/or the state laws and/or regulations within which the services are provided to Patients, which shall include, where necessary, an attestation as to the authenticity of the records provided by Medical Provider, that the charges for the services are usual and customary for the services provided to patients (if applicable: of the same type of patient as Patient, ie., litigation patients), that the services provided were necessary and the amount charged for the services was reasonable at the time and place that the services were provided, and that the total amount unpaid and owed by the Patient for the services is that total amount reflected in the Purchase Order, or the total amount of the Full Billed Charges in those instances where payment by **AHM** occurred under Section 1(c) without a Purchase Order.

With respect to each Purchase Order executed hereunder (i.e. regardless of whether such Purchase Order relates to a Patient covered by an existing Purchase Order), Medical Provider shall deliver to **AHM** an HCFA Form UB -04, 1500, UB-92, or other similar billing instrument indicating Full Billed charges related to the services provided to Patient. **AHM's** payment obligations pursuant to Section 3 hereof are expressly conditioned on its receipt of the Required Documents. The Medical Provider shall deliver to **AHM** all documentation necessary to support the Lien.

6. **Cooperation.** In addition to executing and delivering all required instruments and notices, Medical Provider covenants and promises that following its execution and delivery of this Agreement, it will:

   (a) cooperate with all reasonable requests of **AHM** to advise Patient and Patient's attorneys as to the transfer and assignment of such Receivables to **AHM** in order to ensure that payment is directly remitted to **AHM** on a timely basis. Upon request, Medical Provider will deliver to **AHM** or, upon the request of **AHM**, the attorney for Patient, any then existing documents necessary to enforce the collections of the Receivables, including without limitation, Bills, medical reports, payment records, copies of the Assignment Agreement and/or correspondence;

   (b) immediately contact **AHM** and advise **AHM** as to the receipt of any check or other form of payment received by Medical Provider on account of the Receivables owed by patients, and as instructed by **AHM**, endorse, deliver and/or transfer such payment to **AHM, or** its designee, or in the inadvertent default thereof pay the same amount to **AHM** within five (5) days;

   (c) immediately forward to **AHM** any correspondence, or notice relating to the balance due, payment, or other information related to the Receivables, report to **AHM** any communication received in any other form (e.g. mail, telephone, email or facsimile transmissions), and Medical Provider, shall advise the communicating party to communicate directly and solely with **AHM**; it shall not grant any lien, encumbrance, sale or assignment of the Receivables and/or Lien(s) to any third party that in any way interferes with the rights of AHM under this agreement;

   (d) assign, transfer and grant **AHM** the right to perfect the Lien;

   (e) coordinate with **AHM** if it receives any request for an itemized statement pursuant to La. R.S. 9:4755, including delivery of a copy of the request to **AHM** within five (5) business days and ensure that it timely delivers a statement reflecting the gross Full Billed Charges assigned to **AHM** following written receipt of a request from either **AHM** or the applicable third party, the parties recognize that payments from **AHM** (or MLS, as applicable) are payments for the purchase of the receivable(s), and the statement generated for the purposes of the Lien shall be the Full Billed Charges without any reduction for the purchase price paid by **AHM** (or MLS, as applicable); and

   (f) comply with all applicable federal, state and local laws, rules and regulations governing like providers and their provision of services. Evidence of such current licensing, certification and/or accreditation shall be submitted promptly upon request. The Provider represents and warrants that it and each of its employees and contracted service providers has obtained, and shall maintain throughout the term of this Agreement, all necessary registrations, certifications, licenses, permits and approvals as are required for the lawful provision of services. The Medical Provider will not balance bill on a Full Bill charge assigned to **AHM** under this agreement.

7. **Representations and Warranties of Medical Provider:** Medical Provider represents and warrants as follows:

   (a) There are no known claims, actions, suits, or judgments pending against Medical Provider related to the Services and/or Patient;

   (b) There have been no disciplinary actions brought against Medical Provider that would disrupt or prevent collection of the Receivables;

4

(c) There are no known allegations or claims of improper billing, false billing or insurance fraud against Medical Provider;

(d) The Receivables and Liens to be transferred under this agreement are valid, unencumbered, due and owing, and Provider has notified the Patient of the Patient's financial responsibility for the charges;

(e) All Bills and invoices which were the basis for the Receivables are true and accurate in all respects and were generated with usual and customary charges for the Services;

(f) All Services rendered and billed are believed to be related to injuries sustained in accidents or other occurrences which may form the basis of claims or litigation against third parties, the proceeds from which are believed to be subject to Liens securing the Receivables;

(g) Medical Provider has billed Patient in accordance with its standard billing practices for the Services, and consistent with all applicable regulations, codes, and/or laws of the United States and/or of state within which the Services were provided.

(h) Medical Provider has not received payment from any source for the Receivables;

(i) Medical Provider has made no statement or representation to **AHM** prior to the execution and delivery of the Agreement which was misleading or untrue as to any material fact, or omitted or failed to disclose any material fact related to this Agreement;

(j) This Agreement was duly authorized by Medical Provider;

(k) Medical Provider is not bound by any existing agreements, arrangements or options restricting in any manner the transfer of any rights or interests in the Receivables;

(l) Medical Provider is not a party to any Agreement which would in any way impair or limit its Power to enter into this Agreement; and

(m) Medical Provider warrants that none of the Receivables to be transferred under this agreement are prescribed under Louisiana law as of the date of transfer.

8. **Receivable/Full Bill Charge Reduction.** Medical Provider understands and agrees that a primary consideration for reimbursement to Medical Provider as specifically outlined under paragraph 3 above, is Medical Provider's representations and warranties contained within this Agreement, including those representations and warranties under paragraph 7 above.

Medical Provider further acknowledges that the amount paid by **AHM** under paragraph 3 above is contingent upon, and **AHM** has specifically agreed to reimburse Medical Provider in said amount based upon the representations and warranties of Medical Provider contained herein.

Medical Provider further agrees that, should a court of competent jurisdiction find that the amount billed and/or invoiced for the Services is an amount less than the amount indicated in the Full Billed Charges reflected in the Purchase Order as a result of any breach of Medical Provider's representations and warranties contained within this Agreement, including, but not limited to 7. (e) and 7 (k), above, **AHM** shall be entitled to an amount equal to the difference between the proportionate reduction of the Full Billed Charges as reflected in the Purchase Order, and the amount which the court of competent jurisdiction finds the Services to be, in addition to any and all attorneys' fees and cost incurred by **AHM**, and any and all other remedies which may be available to the **AHM** at law or in

equity for such material breach by Medical Provider, **AHM** shall have the right to enforce such agreements by action for injunctive relief and specific performance to the extent permitted by law.

In the event of Medical Provider being obligated to reimburse **AHM** under this paragraph, Medical Provider agrees to repay **AHM** the amounts Medical Provider is so obligated to pay under this paragraph within thirty (30) days of written demand for payment by **AHM**. The remedies set forth in this section shall be in addition to any and all other remedies at law and equity.

9. **Indemnification and Release.** Medical Provider shall indemnify, defend, and hold harmless **AHM** and its affiliates, officers, directors, employees, assigns, and agents from and against any and all liabilities, judgments, damages, costs, and expenses for any claim brought by Patient related to the medical services rendered by Medical Provider.

10. **Attorney's Fees.** In the event a dispute arises under this Agreement, the prevailing party seeking enforcement of the Agreement in such dispute will be entitled to recover from the other party reasonable attorney's fees incurred in connection with such dispute.

11. **Severability of Provisions.** The provisions contained in this Agreement will be deemed to be severable, and the invalidity of any provision will not affect the validity or enforceability of any other provision.

12. **Binding Effect.** All of the terms and provisions of this Agreement are binding upon, inure to the benefit of, and are enforceable by **AHM** and the Medical Provider and their respective administrators, executors, legal representatives, heirs, successors and permitted assigns.

13. **Waiver.** The failure of **AHM** or the Medical Provider to insist upon the performance of any of the terms and conditions of this Agreement, or the waiver of any breach of the terms and conditions of this Agreement, shall not be construed as thereafter waiving any such terms and conditions, but the same shall continue and remain in full force and effect as if no such forbearance or waiver had occurred.

14. **Headings.** The headings contained in this Agreement are for convenience only and do not limit or otherwise affect the meaning or interpretations of this Agreement.

15. **Counterparts.** This Agreement may be executed in any number of counterparts, each of which, when executed and delivered, shall be deemed to be an original, and all of which, when taken together, shall constitute the Agreement. Delivery of an executed counterpart of this Agreement by facsimile transmission shall be equally as effective as delivery of an original executed counterpart of this Agreement.

16. **Choice of Law & Venue.** The validity, interpretation, and performance of this Agreement shall be controlled by and construed under the laws of the State of Louisiana, with venue in Calcasieu Parish, and shall be enforced in the Fourteenth Judicial District Court, Parish of Calcasieu, State of Louisiana.

17. **Confidentiality.** Each of **AHM** and the Medical Provider may be given access to the other party's Confidential Information (as defined below) hereunder. "Confidential Information" shall mean, the terms of this Agreement, and the non-public business and technical information of the disclosing party. Medical Provider shall not disclose to any third party, including without limitation lawyers or other professionals, the terms of this Agreement without the prior written consent of **AHM**. Neither Medical Provider nor **AHM** will (a) disclose the Confidential Information of the other party to any third party; or (b) use the Confidential Information of the other party except as necessary to perform its obligations hereunder. Notwithstanding the foregoing, the receiving party

23. **Entire Agreement.** This Agreement represents the entire understanding and agreement between **AHM** and the Medical Provider as to the subject matter herein and supersedes all other negotiations, understandings, and representations made by and between **AHM** and the Medical Provider. The terms of this Agreement shall be construed in order to give full effect to the provisions contained herein and any ambiguity in the terms of this Agreement shall not be construed against the maker hereof, it is declared as drafted under joint effort. This Agreement may not be amended or modified except in a writing signed by **AHM** and the Medical Provider. Upon request of **AHM** the authorized signor below, who personally warrants their authority to execute this Agreement on behalf of Medical Provider, will execute an Affidavit as to the authenticity of this Agreement.

**IN WITNESS WHEREOF**, the parties have executed this Agreement of eight (8) pages as of the date set forth below.

**Effective Date:** 27th day of September, 2018

**Medical Provider (print):**

_____   **Federal ID #:**

Address of Medical Provider:

540 Alamo St.

Lake Charles, LA 70601

Telephone Number of Medical Provider: 337-513-0037  Facsimile: 377-814-4260

**MEDICAL PROVIDER:**        **ACCESS HEALTHCARE MANAGEMENT, LLC:**

By: _____   By: _____
                              John Condos, Managing Member
Title: _____

8